THOMAS E. MOSS
United States Attorney
JOANNE P. RODRIGUEZ
ID Bar #2996
Assistant U.S. Attorney
District of Idaho
800 Park Blvd., Ste 600
Boise, ID 83712

IGNACIA S. MORENO
Assistant Attorney General, ENRD
BRIAN M. COLLINS
TX Bar #24038827
Trial Attorney
U.S. Department of Justice, ENRD
P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 305-0428
Facsimile: (202) 305-0267
Email: brian.m.collins@usdoj.gov

ATTORNEYS FOR DEFENDANTS FRANK V. GUZMAN
AND UNITED STATES FOREST SERVICE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **IDAHO CONSERVATION LEAGUE** | ) | |
| **and THE WILDERNESS SOCIETY,** | ) | **CIV No. 10-26** |
| | ) | |
| **Plaintiffs,** | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANTS' CROSS-MOTION FOR** |
| **v.** | ) | **SUMMARY JUDGMENT  AND** |
| | ) | **RESPONSE TO PLAINTIFFS' MOTION** |
| **FRANK  V. GUZMAN and the U.S.** | ) | **FOR SUMMARY JUDGMENT FILED** |
| **FOREST SERVICE,** | ) | **ON JULY 30, 2010 (DKT. #38)** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

Table of Contents

I.      INTRODUCTION ............................................................................................1

II.     LEGAL BACKGROUND ..............................................................................2
        A.    NEPA ................................................................................................2
        B.    The Travel Management Rule  – 36 C.F.R. Part 212 .................3
        C.    Standards of Review ........................................................................4
              1.Summary Judgment ..............................................................4
              2. The Administrative Procedure Act ("APA") ........................4

III.    ARGUMENT ..................................................................................................7

        A.    The Forest Service's NEPA Analysis Is Sound ..........................7
              1.The FEIS properly analyzed cumulative impacts of the proposed alternatives in
        IRAs and RWAs ...........................................................................................8
              a. Plaintiffs misconstrue the cumulative impacts analysis...........................8
              b. The reliance on a half-mile threshold was reasonable, supported by the
        Administrative Record and is entitled to deference ............................................13

              2. The Forest Service considered a broad range of alternatives in full compliance
        with NEPA .................................................................................................16
              a.The Forest Service appropriately analyzed a reasonable range of alternative ..........18
              b.Plaintiffs' arguments fail to consider the existing motorized routes in the IRAs
              and RWA ........................................................................................................20
        B.    The Forest Service Has Fully Complied With Statutory and Regulatory Obligation...22
              1.      Plaintiffs' reliance on Center for Biological Diversity v. BLM is
                      misplaced  ................................................................................. 23
              2.      The Forest Service considered Plaintiffs comments on specific routes and
                      altered the route designations where appropriate to minimize impacts….27
        C.    The Salmon-Challis National Forest has not yet undertaken to identify the
              Minimum Road System required under 36 C.F.R. Part 212 Subpart A……….. .32
        D.    Remedy……………………………………………………………………34

IV.     CONCLUSION……………………………………………………………35

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

Table of Authorities

*Cases*

*Bar MK Ranches v. Yuetter*, 994 F.2d 735 (10th Cir. 1993)..........................................7

*Bova v. Medford*, 564 F.3d 1093 (9th cir. 2009)...................................................... 34

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974) ...................... 5

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .......................................................... 35

*Camp v. Pitts*, 411 U.S. 138 (1973) ................................................................. 7

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)..................................... 5

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985)............................................... 7

*Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976 (9th Cir. 1985) ....................... 5

*Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986) ........................................ 5

*Fund for Animals, Inc. v. Rice*, 85 F.3d 535 (11th Cir. 1996) ....................................... 5

*Gardner v. United States Bureau of Land Mgmt.*, 633 F. Supp. 2d 1212 (D. Or. 2009).. 23, 28, 31

*High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 638 (9th Cir. 2004)................................. 35

*Idaho Watersheds Proj. v. Hahn*, 307 F.3d 815 (9th Cir. 2002)..................................... 35

*Inland Empire Pub. Lands Council v. Schultz*, 807 F. Supp. 6492 (E.D. Wash. 1992)................. 6

*Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517 (9th Cir.1994) ...................... 17, 20

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) (en banc)...................................... passim

*League of Wilderness Defenders Blue Mountain Biodiversity Project v. United States Forest Serv.*, 549 F.3d 1211 (9th Cir. 2008)................................................................. 5

*Marsh v. Or. Natural Res. Council*, 490 U.S. 360 (1989) ..................................................... passim

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)....................... 4

*Native Ecosystems Council v. Dombeck*, 304 F.3d 886 (9th Cir. 2002) ........................................ 4

*Nat'l Parks & Conservation Ass'n v. United States Dep't of Transp.*, 222 F.3d 677 (9th Cir. 2000) ................................................................................................ 2

*Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849 (9th Cir. 1989) ........................................ 5

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

*NW Envtl. Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125 (9th Cir. 2006) ................. 2

*Nw. Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468 (9th Cir. 1994).................. 4

*Occidental Eng'g Co. v. Immigration & Naturalization Serv.*, 753 F.2d 766 (9th Cir. 1985)........ 4

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989) ............................................. 2

*Sierra Club v. Clark*, 756 F.2d 686 (9th Cir. 1985).................................................... 23, 28, 31, 32

*Swanson v. United States Forest Serv.*, 87 F.3d 339 (9th Cir. 1996) ............................................ 2

*United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963) ......................................................... 7

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519 (1978)....... 2, 6

*Westlands Water Dist. v. United States Dept. of Interior*, 376 F.3d 853 (9th Cir. 2004) ....... 17, 22

### Rules

5 U.S.C. § 706 ................................................................................................................................ 7

42 U.S.C. § 4321 ............................................................................................................................ 3

42 U.S.C. § 4332(2)(C) ............................................................................................................... 17

42 U.S.C. § 4332(C) ...................................................................................................................... 3

### Regulations

36 C.F.R. § 212.5 ........................................................................................................................ 33

36 C.F.R. § 212.5(b)(1).............................................................................................. 4, 32, 33, 34

36 C.F.R. § 212.50 .................................................................................................................. 4, 33

36 CFR § 212.50(b) ............................................................................................................... 10, 11

36 C.F.R. § 212.52(a)................................................................................................................... 28

36 C.F.R. § 212.52(b)(2).............................................................................................................. 23

36 C.F.R. § 212.55(a).............................................................................................................. 4, 25

36 C.F.R. § 212.55(b) ............................................................................................................. 5, 24

36 C.F.R. §§ 212.1 - 212.21 .......................................................................................................... 4

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

36 C.F.R. §§ 212.50 - 212.57 ........................................................................... 4

36 C.F.R. §§ 212.80-81 ................................................................................... 4

36 C.F.R. 212.50 ............................................................................................ 33

36 C.F.R. Part 212 ........................................................................ 3, 4, 10, 32, 33

40 C.F.R. § 1500.3 ........................................................................................... 3

40 C.F.R. § 1501.1 ........................................................................................... 3

40 C.F.R. § 1502.14 ......................................................................................... 17

40 C.F.R. § 1508.25 ......................................................................................... 9

40 C.F.R. § 1508.7 ........................................................................................... 9

43 C.F.R. § 8341.2(a) ...................................................................................... 23

43 C.F.R. § 8342.1 ...................................................................................... 23, 24

43 C.F.R. § 8342.1(a) ...................................................................................... 24

70 Fed. Reg. 68 ............................................................................................... 25

73 Fed. Reg. 55842 ......................................................................................... 33

72 Fed. Reg. 43223 ......................................................................................... 33

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 7.1, and the Court's

Amended Case Management Order dated June 23, 2010 [Dkt. #32], Defendants respectfully

submit this Cross-Motion for Summary Judgment and Response to Plaintiffs' Motion for

Summary Judgment and request that the Court deny Plaintiffs' Motion for Summary Judgment

and grant summary judgment in favor of Defendants on all claims.

## I.   INTRODUCTION

Through its travel planning and off-highway vehicle ("OHV") route designation process

for the Salmon-Challis National Forest ("SCNF" or "Forest"), the Forest Service has undertaken

a comprehensive analysis to balance competing recreational, access, and environmental

protection interests in the SCNF in accordance with the agency's statutory and regulatory

mandates.  As a result of that analysis, the Forest Service decided to drastically reduce the

impacts of motor vehicle use in the SCNF by eliminating unregulated cross-country motor

vehicle use in 980,423 acres of the Forest and by implementing a nearly 75 percent decrease

(from 401,589 acres to 116,748 acres) in motor vehicle use for purposes of dispersed camping.

Nevertheless, Plaintiffs claim the Salmon-Challis National Forest Travel Management Plan

("Travel Plan") fails to properly manage motor vehicle use and threatens to diminish

permanently the natural resources within the SCNF.  Although it is clear that Plaintiffs,

conservation groups whose members use the Forest for almost exclusively non-motorized

recreation (*see* Pls.' Compl. at ¶ 9), would prefer even stricter limits on motor vehicle use in the

SCNF to enhance their narrower recreational interests, the Forest Service must balance broader

statutory and regulatory criteria for the benefit of the public, and has successfully done so here.[1]

---

[1] In this Memorandum Defendants will cite to documents in the Administrative Record as "AR" followed by the administrative record page number appended in the lower right corner of the administrative record documents.  Citations to the Final Environmental Impact Statement

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

II.     **LEGAL BACKGROUND**

A.     **NEPA**

NEPA is intended to foster better decision-making and informed public participation for actions that affect the environment.  See 42 U.S.C. § 4321; 40 C.F.R. § 1501.1.  NEPA provides that when a federal agency proposes a "major Federal action[ ] significantly affecting the quality of the human environment," the agency must prepare an Environmental Impacts Statement ("EIS") analyzing the potential impacts of the proposed action and possible alternatives.  42 U.S.C. § 4332(C).  To meet this obligation, all federal agencies must follow NEPA regulations promulgated by the Council on Environmental Quality ("CEQ").  40 C.F.R. § 1500.3; *see also Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 354 (1989).  "NEPA imposes procedural requirements on agencies and does not mandate substantive outcomes."  *NW Envtl. Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1133 (9th Cir. 2006) (citing *Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 811 (9th Cir. 2005)); *see also  Robertson*, 490 U.S. at 350; *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978) (stating that NEPA's mandate is "essentially procedural").

Judicial review of an EIS is "extremely limited."  *Nat'l Parks & Conservation Ass'n v. United States Dep't of Transp.*, 222 F.3d 677, 680 (9th Cir. 2000).  A court evaluates an EIS only to determine whether it "contains a reasonably thorough discussion of the significant aspects of the probable environmental consequences" of a challenged action.  *NW Envtl. Advocates*, 460 F.3d at 1133 (internal quotations omitted).  A court "need not fly-speck the document and hold it insufficient on the basis of inconsequential, technical deficiencies, but will instead employ a rule

("FEIS"), Record of Decision ("ROD"), and Draft Environmental Impact Statement ("DEIS") refer to the internal pagination of the documents for ease of reference.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

of reason." *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996) (internal quotations omitted).

### B.      The Travel Management Rule – 36 C.F.R. Part 212

Forest Service Travel Management regulations at 36 C.F.R. Part 212 are divided into Subparts A and B.[2]  Subpart A governs the administration of the forest transportation system and covers issues such as the inventorying of roads in administrative units of the National Forest System, as well as maintenance, construction, traffic rules, and other administrative components of the forest transportation system.  36 C.F.R. §§ 212.1 – 212.21.  Subpart A also requires the Forest to identify the minimum road system needed for safe and efficient travel and for administration, utilization, and protection of National Forest System lands.  36 C.F.R. § 212.5(b)(1).

By contrast, Subpart B governs the specific designation of National Forest System roads, National Forest System trails, and areas on National Forest System lands for motor vehicle use by vehicle type and time of year.  36 C.F.R. §§ 212.50 – 212.57.  Once the roads, trails and areas are designated for motor vehicle use, all motor vehicle uses inconsistent with those designations are prohibited.  36 C.F.R. § 212.50.  Responsible officials are to designate roads, trails and areas for motor vehicle use "consider[ing] effects on National Forest System natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails, and areas that would arise if the uses under consideration are designated; and the availability of resources for that maintenance and administration."  36 C.F.R. § 212.55(a).  More

---

[2] The Travel Management regulations also contain Subpart C, which governs over-snow vehicles, but those are not relevant for purposes of the issue in this litigation.  *See* 36 C.F.R. §§ 212.80-81.

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

specifically, in designating trails and areas, the responsible official "shall consider effects…with the objective of minimizing" (1) damage to soil, watershed, vegetation and other forest resources; (2) harassment of wildlife and significant disruption of wildlife habitats; and (3) conflicts between motor vehicle use and existing or proposed recreational uses of National Forest System lands or neighboring Federal lands.  36 C.F.R. § 212.55(b).

## C.   Standards of Review

### 1.   Summary Judgment

The Ninth Circuit has endorsed the use of summary judgment motions under Rule 56 of the Federal Rules of Civil Procedure for review of agency actions under the Administrative Procedure Act ("APA").  *See, e.g., NW. Motorcycle Ass'n v. U.S. Dep''t of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  The court's role in cases involving decisions of an administrative agency is not to resolve facts, but to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *Occidental Eng'g Co. v. Immigration & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985).  The administrative agency itself is the fact-finder; summary judgment is appropriate for determining the legal question of "whether the agency could reasonably have found the facts as it did."  *Id.* at 770.

### 2.   The Administrative Procedure Act ("APA")

"Judicial review of agency decisions under NEPA . . . is governed by the [APA], which specifies that an agency action may be overturned only where it is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002) (quoting 5 U.S.C. § 706(2)(A)).  "[T]he scope of review under the [APA] is narrow and a court is not to substitute its judgment for that of

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  A court may only reverse a decision as arbitrary and capricious if an agency "relied on factors Congress did not intend it to consider, 'entirely failed to consider an important aspect of the problem,' or offered an explanation 'that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *League of Wilderness Defenders Blue Mountain Biodiversity Project v. U.S.  Forest Serv.*, 549 F.3d 1211, 1215 (9th Cir. 2008) (internal quotations omitted).  "In other words, there must be "'a clear error of judgment.'"  *Id.* (quoting *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989).  Under Section 706(2) of the APA, "administrative action is upheld if the agency has 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'"  *Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 982 (9th Cir. 1985) (quoting *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)).  The court's role is solely to determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).

This standard is "exceedingly deferential."  *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996); *see The Lands Council v. McNair*, 537 F.3d 981, 992-94 (9th Cir. 2008) (en banc).  "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (internal citations omitted); *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986) ("The court may not set aside agency action as arbitrary or capricious unless there is no rational basis for the action.").  "The [agency's] action . . . need be only a

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

reasonable, not the best or most reasonable, decision." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989).  The APA does not require–or even allow–a court to overturn an agency action because it disagrees with the agency's decision or even with its conclusions about the scope, breadth or effect of the environmental impacts of the project at issue.  *Vt. Yankee*, 435 U.S. at 553.  The reviewing court's task is simply "to insure a fully informed and well-considered decision, not necessarily a decision [the court] would have reached had [it] been [a] member[] of the decisionmaking unit of the agency."  *Id*. at 558.

In deciding disputes that involve primarily issues of fact that "'require[] a high level of technical expertise,' [the court] must defer to 'the informed discretion of the responsible federal agencies.'"  *Marsh*, 490 U.S. at 377 (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)); *see also Baltimore Gas*, 462 U.S. at 103 ("When examining this kind of scientific determination . . . a reviewing court must generally be at its most deferential").  "Forest management is fairly viewed as the sort of technical field where courts should defer to the findings of specialized administrative agencies."  *Inland Empire Pub. Lands Council v. Schultz*, 807 F. Supp. 649, 652 (E.D. Wash. 1992) (citing *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir. 1990)).  Thus, when dealing with public lands management issues, a federal agency such as the Forest Service "must have discretion to rely on the reasonable opinions of its own qualified experts."  *Marsh*, 490 U.S. at 378.  "We are to conduct a particularly deferential review of [the Forest Service's] predictive judgments about areas that are within the agency's field of discretion and expertise . . . as long as they are reasonable."  *McNair*, 537 F.3d at 993 (quotation marks and citations omitted) (en banc).

Judicial review of federal agency actions under the APA is restricted, with limited exceptions, to the administrative record lodged by the agency.  5 U.S.C. § 706.  "The complete

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

administrative record consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). The Supreme Court has held that "in cases where Congress has simply provided for review [under the APA], . . . [judicial] consideration is to be confined to the administrative record and . . . no de novo proceeding may be held." *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) (citations omitted). *See also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (holding that the "focal point for judicial review [of an agency decision] should be the administrative record already in existence, not some new record made initially in the reviewing court").

## III.   ARGUMENT

The Forest Service's Final EIS ("FEIS") for travel planning and route designation in the SCNF fully complies with NEPA's requirements, and the route designations are entirely consistent with all applicable statutory and regulatory mandates. At their core, Plaintiffs' claims amount to little more than a policy disagreement with the Forest Service over how many miles of roads and trails in the SCNF should be open to motorized use. Plaintiffs are not entitled, however, to substitute their judgment for that of the agency's experts, and the Forest Service's conclusions are to be upheld unless there is a clear error in judgment. *Marsh*, 490 U.S. at 378; *McNair*, 537 F.3d at 993. Here, Defendants' NEPA analysis is sound, and the Forest Service decision is fully compliant with the relevant Executive Orders and regulations.

### A.   The Forest Service's NEPA Analysis Is Sound

Plaintiffs make two arguments under NEPA. First, Plaintiffs argue that the Forest Service failed to analyze the cumulative impacts of the Travel Plan on Inventoried Roadless Areas ("IRAs") and Recommended Wilderness Areas ("RWAs"), and failed to analyze the

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

cumulative impacts of micro-routes shorter than a half-mile long.  Pls.' MSJ at 4-10.  Second,

Plaintiffs claim the Forest Service failed to analyze a reasonable range of alternatives.  Pls.' MSJ

at 10-13.  A review of the FEIS reveals, however, that the Forest Service analyzed cumulative

impacts and did so in compliance with both the NEPA regulations and Ninth Circuit precedent.

Moreover, the Forest Service analyzed a reasonable range of alternatives.

> ### 1.    *The FEIS properly analyzed cumulative impacts of the proposed alternatives in IRAs and RWAs*

NEPA regulations provide that an agency shall consider cumulative impacts in an EIS.

40 C.F.R. § 1508.25 (c)(3).  Cumulative impacts are defined as "the impact on the environment

which results from the incremental impact of the action when added to other past, present, and

reasonably foreseeable future actions regardless of what agency (Federal or Non-Federal) or

person undertakes such other actions."  40 C.F.R. § 1508.7.  The CEQ's NEPA guidance states

> CEQ interprets NEPA and CEQ's NEPA regulations on cumulative effects as requiring analysis and a concise description of the identifiable present effects of past actions to the extent that they are relevant and useful in analyzing whether the reasonably foreseeable effects of the agency proposal for action and its alternatives may have a continuing, <u>additive and significant relationship</u> to those effects…Agencies are not required to list or analyze the effects of individual past actions unless such information is necessary to describe the cumulative effect of all past actions combined. Agencies retain substantial discretion as to the extent of such inquiry and the appropriate level of explanation. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 376-77 (1989). Generally, agencies can conduct an adequate cumulative effects analysis by focusing on the current aggregate effects of past actions without delving into the historical details of individual past actions.

Guidance on Consideration of Past Action in Cumulative Effects Analysis, CEQ Guidance, June

24, 2005 (available at http://ceq.hss.doe.gov/nepa/regs/Guidance_on_CE.pdf) (emphasis added).

> ### a.  *Plaintiffs misconstrue the cumulative impacts analysis*

Plaintiffs' argument with regard to the cumulative effects analysis in IRAs and RWAs

simply misconstrues the nature of the Travel Plan and the cumulative impacts analysis in the

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

FEIS.  First, in alleging the agency failed to consider cumulative impacts, Plaintiffs focus solely on the section of Chapter 3 of the FEIS, which is directed at analyzing impacts only to the roadless character of IRAs and the wilderness attributes of RWAs.  FEIS at 3-16 (identifying the two issues being analyzed in Section 3.3).  The impacts on other aspects of the Forest environment (both within and outside of IRAs and RWAs), such as, soil, wildlife, and water, are examined in the other chapters of the FEIS.  *See*, *e.g.*, FEIS at 3-26 (analyzing impacts to water resources); AR031889-032080 (Specialist Report on water resources); FEIS at 3-48 (analyzing impacts to soil resources); AR033192-033284 (Specialist Report on soil resources); FEIS at 3-64 (analyzing impacts to fisheries); AR036969-037058 (Specialist Report on fisheries).  In short, the analysis of impacts in IRAs and RWAs is not limited only to Section 3.3 of the FEIS, but that section addresses the impacts to the roadless characteristics and wilderness attributes in those areas only.  The environmental impacts that are common to all areas of the Forest are addressed in separate sections of Chapter 3.

The crux of Plaintiffs' argument is that the Forest Service analyzed only "<u>new</u> motorized routes" and "<u>newly</u> <u>authorized</u> motorized routes" and therefore failed to analyze the cumulative impacts of the previously authorized motorized routes.  Pls.' MSJ at 5 (emphasis added).[3]  This

---

[3] To support its crabbed analysis of the FEIS cumulative impacts analysis, Plaintiffs rely on the Declaration of Mr. Wilmer and the exhibits to his declaration.  Pls.' MSJ at 6-7.  The declaration testimony and maps generated by Mr. Wilmer are improper extra-record evidence that should be struck from the record and disregarded by the Court.  Plaintiffs have not even attempted to satisfy any of the established exceptions for supplementation of the administrative record, and the Wilmer declaration and exhibits are clearly improper under Ninth Circuit law.  *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988).  Moreover, the exhibits to Mr. Wilmer's declaration are inaccurate.  For example, Ex. A-5 to Mr. Wilmer's Declaration shows the North Fork Ranger District with only a handful of closed motorized routes.  *See* Ex. A-5 to Wilmer Decl.  Even a cursory review of FEIS App. H for the North Fork Ranger District (pp. H-86 to H-109; AR046954 - 977) shows that there are large numbers of routes being closed.  *Compare* Column Alt 0 (the existing condition) column *with* Column Alt  5 (the Preferred

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

argument, however misconstrued the nature of the Travel Management Plan.  Contrary to

Plaintiffs' assertion, the Travel Plan does not <u>create</u> new routes in the Forest.  FEIS Appendix C,

p. C.1 n. 3 ("the routes being designated already exist on the landscape").  Rather the Forest

Service has catalogued existing routes in the Forest, and through the Travel Management Plan is

determining which ones should be formally recognized as authorized for motor vehicle use

pursuant to 36 C.F.R. Part 212 Subpart B.  FEIS at 1.5. [4]

This is an important distinction because, under the prior Travel Plans, over 900,000 acres

of the Forest were open to cross-country travel, which means that motor vehicle use was allowed

off designated roads and trails.  FEIS 1.1; *see also* AR000671 ("The SCNF currently has 980,700

acres open to motorized cross-country travel.").  As a result of repeated motor vehicle use in

these areas open to cross-country travel, the Forest contains hundreds of miles of user-created,

unauthorized motorized routes.  *See* AR000671 (Notice of Intent explaining that the "Forest

---

Alternative) at pp. H-106 to H-107 (the blanks in Column alt 5 indicate routes that will not be
open under the Preferred Alternative).  AR046973-975.  In any event this improper attempt to
supplement the Administrative Record should be permitted and the Wilmer declaration and
exhibits should not be considered by this Court.

[4] With regard to cumulative effects, the travel management rule at 36 C.F.R. Part 212, Subpart B,
does not require reconsideration of existing travel management decisions.  *See* 70 Fed. Reg.
68,268 (Nov. 9, 2005).  Rather, the rule at 36 CFR § 212.50(b) provides for incorporation of
previous travel management decisions made under other authorities, including designations and
prohibitions of motor vehicle use, in designating routes.  Therefore, any National Forest System
routes that are covered by a previous travel management decision made before promulgation of
the travel management rule may be incorporated in a designation decision without further
environmental analysis.  The baseline for travel analysis supporting route and area designations
is the existing forest transportation system, i.e., the current inventory of National Forest System
roads, National Forest System trails, and areas on National Forest System lands that are managed
or proposed for motor vehicle use.  36 CFR § 212.50(b); *see also* Forest Service Manual (FSM)
7715.1, para. 3, and 7715.4, para. 2; Forest Service Handbook (FSH) 7709.55, sec. 11, and sec.
14, para. 1.  *Id.*  In making route and area designations, the responsible official analyzes impacts
and cumulative effects from changes to the existing forest transportation system, not from
establishment of the existing forest transportation system.  FSH 7709.55, sec. 13, para. 3.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Service will designate some previously unauthorized (or user-created) routes for public motor vehicle use and assign the type of use(s) and season of use allowed"). Table 2 of the Roadless and Recommended Wilderness Specialist Report (AR037111) explains that under the No-Action Alternative there are 1,380 miles of existing motorized routes in Inventoried Roadless Areas across all Ranger Districts in the SCNF. AR037104. Alternative 1 denotes the routes currently authorized, totaling 783 miles of motorized routes in IRAs. AR037112 (Table 4). The difference between those two alternatives is 597 miles of routes that currently exist in the IRAs (presumably as a result of cross-country motor vehicle use under the prior Travel Plans), but that are not currently designated for motor vehicle use. Alternative 5, the Preferred Alternative, would adopt the existing designated routes from Alternative 1 and would designate 109.4 additional miles in IRAs out of the existing 597 miles of unauthorized routes. AR037119. In other words, Alternative 5 (the Preferred Alternative) is eliminating approximately 487 miles of motorized routes within the IRAs.

Moreover, as explained in the proposal to develop the cumulative impacts analysis for the DEIS, "the current condition in the analysis areas reflects the aggregate effects of all past natural events and other past or present human actions that occurred there." AR 012064. With regard to IRAs and RWAs specifically, the existing condition description explains that unmanaged motor vehicle travel creates impacts to the solitude or undeveloped nature of the land as well as to the soil and water resources in the region. FEIS at 3.17. The routes at issue are already on the land, and the Preferred Alternative will reduce the number of miles of motorized routes in IRAs and RWAs from 1,380 existing miles to a total of 892 miles under the Preferred Alternative, as a result the Forest Service properly concluded that there were no cumulative impacts to the roadless and wilderness attributes.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Finally, Plaintiffs' reliance on *Lands Council v. Powell*, 395 F.3d 1019, 1027 (9th Cir. 2005), is unavailing.  That case involved consideration of specific timber projects.  The court required a catalog of past projects and an assessment of their effects to satisfy NEPA.  Here, with respect to the roadless and wilderness attributes of the IRAs and RWAs, there are no discrete past "projects" to consider.  *See* FEIS App. F (cataloguing projects and demonstrating that none impacted the Roadless/Wilderness attributes).  With respect to the other aspects such as fish, wildlife, soil, and water, the FEIS catalogs of past, present, and future actions and their cumulative effects are analyzed thoroughly in the FEIS.  *See* Appendix F (cataloguing all past, present and future projects and their projected impacts); FEIS Chapter 3.  Plaintiffs' argument that the FEIS "inexplicably sets aside <u>any</u> consideration at all of impacts from past motorized use of these areas, and any assessment of the cumulative impacts from them" (Pls.' MSJ at 8), ignores the extensive discussion of past impacts from motor vehicle use contained in the FEIS. For example, in discussing the cumulative impacts on fisheries, the FEIS states

> In addition to the spread of motorized trails throughout the landscape, the increased development of on-forest road systems in support of forest management activities during the past 50 years has led to widespread ecological fragmentation of many streams and watersheds, due to the installation of thousands of culvert stream crossings.  Typically these installations impede or totally block upstream migration for most aquatic organisms, especially in regards to their requirements to access headwater areas for thermal refuge and spawning and for migration between watersheds following catastrophic events like wildfires.

FEIS at 3-82.  This is precisely the type of analysis that is contemplated in *Lands Council*, and the Forest Service has repeated this exact type of cumulative impacts analysis throughout the other sections of the FEIS.  *See* FEIS at 3.62 (detailing past, present, and future impacts to soil resources throughout the Forest); 3.88 - 3.91 (cumulative effects regarding noxious weeds); AR0029272-29302 (Specialist Report for noxious weed); 3.107 (cumulative effects on cultural resources); AR025587-25714 (Specialist Report for cultural resources); 3.130 (cumulative

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

effects on wildlife species); AR041868-042007 (Specialist Report for wildlife resources); 3.154 (cumulative effects on sensitive plant species).  All of these cumulative effects analyses encompass effects both within and outside the IRAs and RWAs.  As a result, Plaintiffs' claim that there is no discussion of cumulative effects in the IRAs and RWAs is without merit.

> ### b.   The reliance on a half-mile threshold was reasonable, supported by the Administrative Record and is entitled to deference

Plaintiffs' claim that the Forest Service improperly excluded trail segments shorter than a half-mile from the cumulative impacts analysis.  The agency, however, explained in the FEIS that "[o]nly routes longer than a half-mile were selected for analysis because intrusions into roadless areas of zero to less than a half-mile were considered to be minimally intrusive and not likely to affect wilderness values."  FEIS at 3.17.  This conclusion, based on the Forest Service's experience and expertise managing National Forest System lands is exactly the type of rational decision-making that Plaintiffs are not permitted to second-guess.[5]

A closer look at the Administrative Record supports the Forest Service's determination that routes less than a half-mile long were not likely to affect wilderness values.  The Travel Plan lists the routes that were newly designated in Inventoried Roadless Areas under Alternative 5 in Appendix C.  FEIS App. C at C.15-C.19.  The first 11 rows of the table list all of the new routes being contemplated for designation under Alternative 5 for the Challis Yankee Fork Ranger District.  FEIS at C.15.  The maps in the Administrative Record at AR047052 – 047057 show the

---

[5] Plaintiffs attempt to cast doubt on the Forest Service's conclusion that these routes would not significantly affect wilderness values by quoting excerpts from an email in the Administrative Record.  Pls.' MSJ at 9-10.  Those email discussions simply prove that the Forest Service considered the possibility that these micro-routes "would not individually impact an IRA, but collectively they might."  AR047515.  The Forest Service ultimately concluded that they would not.  FEIS at 3.17.  As explained more fully below, this conclusion was reasonable in light of the evidence available to the agency, and Plaintiffs are not entitled to substitute their judgment for that of the Forest Service.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

physical location of the route designations under Alternative 5 for each Ranger District.  Below

is an excerpt from the map for the Challis-Yankee Fork Ranger District (AR047052) with arrows

highlighting each of the micro-routes proposed to be designated in the various roadless areas.

The map makes clear that these nine routes are all located at the outermost edges of the IRAs and

are clearly minimally intrusive when considered in the context of the overall size of the IRAs

(the gray shaded areas are the IRAs).  In fact, in several cases, the routes are nearly

indistinguishable from the boundary line marking the edge of the ranger district and IRA.  *See*

routes U132010; U132009A; U141-09I; U161836C; AR047052.



Micro-Routes in the Challis Yankee Fork Ranger District (excerpted from AR047052)

        A review of the other maps further reinforces the Forest Service's conclusion that, even

taken cumulatively, these micro-routes were not likely to affect wilderness values in the IRAs

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

and RWAs.  *See* FEIS at 3.17(AR046399); AR047052 – 047057.  For example, Appendix C of

the FEIS shows that for the King Mountain IRA, located in the Lost River Ranger District, there

are six newly designated routes, four of which are micro-routes less than a half-mile long.  FEIS

App. C, at C.18 (rows 23-28 of the Table)(.  Route U072609A is the longest of the four micro-

routes, and it is 0.19 miles long.  The excerpt below from the map for the Lost River Ranger

District at AR 047054 reveals that micro-route U072609A is a miniscule spur off of a road

(designated as route 40273) barely crossing over the roadless area boundary.  *See* AR047054

(with legend explaining the map graphics).  Similarly, micro-routes U-LR-F-102 and U-LR-F-

103 lead off a road open to all vehicles, and includes in its designation limited use of motor

vehicles for a specified distance for purposes of dispersed camping, and these micro-routes are

nearly imperceptible along the boundary of the IRA.



As shown below, these micro-routes total 0.28 miles on the fringes of an 87,000-acre roadless

area and the Forest Service reasonably concluded that they are not likely to affect wilderness

values in these areas:

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**



Micro-Routes located in King Mountain IRA  *See* AR047054.

The Forest Service's conclusion that micro-routes of less than one-half mile at the periphery of IRAs or RWAs will not impact wilderness values is sound, well-supported by the Administrative Record, and entitled to deference.  *Marsh*, 490 U.S. at 378; *McNair*, 537 F.3d at 993; ROD at 7; AR037104 (Roadless and Recommended Wilderness Specialist Report). Plaintiffs' fly-specking of the FEIS, on the other hand, is not supported by the evidence, runs counter to the Forest Service's informed conclusion, and provides no basis for invalidating the agency's reasonable decision.

> **2.    The Forest Service considered a broad range of alternatives in full compliance with NEPA**

An EIS must include an evaluation of alternatives to the proposed action.  42 U.S.C. § 4332(2)(C)(iii).  The agency must rigorously explore and objectively evaluate all reasonable alternatives, and, for alternatives which were eliminated from detailed study, briefly discuss the

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

reasons for eliminating them.  40 C.F.R. § 1502.14.  "The touchstone for [the Court's] inquiry is whether an EIS's selection and discussion of alternatives fosters informed decision-making and informed public participation." *Westlands Water Dist. v. U.S. Dept. of Interior*, 376 F.3d 853, 868 (9th Cir. 2004) (citing *State of California v. Block*, 690 F.2d 753, 767 (9th Cir. 1982)).  The selected range of alternatives is limited to those "reasonably related to the purposes of the project.'" *Westlands Water Dist.*, 376 F.3d at 868 (quoting *Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517, 524 (9th Cir.1994).

 In their arguments regarding the range of alternatives in the FEIS, Plaintiffs wholly ignore the stated purpose and need for the Salmon Challis Travel Plan:

> The purposes of this action…is to designate a system of roads, trails, and areas open for public motor vehicle use that addresses <u>current and anticipated recreation needs</u>, provides a <u>variety of recreation access opportunities</u>, considers management concerns (such as public safety, maintenance costs, and consistency with adjoining public lands), reduces impacts to forest resources, recognizes reserved or outstanding rights, and reduces conflicts between recreational uses on the SCNF.

FEIS at 1.3 (emphasis added).  This statement of purpose highlights the competing interests that the Forest Service was obligated to balance in developing the proposed alternatives for the Travel Plan.  Plaintiffs, on the other hand, have a singular focus; – they enjoy using the Forest for hiking, backpacking, hunting and other activities through almost exclusively non-motorized means.  *See, e.g.,* Dkt. #24, Decl. of Brad Brooks at ¶ 8 ("I enjoy the peace and serenity of being away from the city and away from motor vehicles."); Dkt. #25, Decl. of John McCarthy at ¶ 9 ("Whenever possible, I recreate in areas that are not open to motorized use because such use detracts from my ability to enjoy the natural world."); Dkt. #26 Decl. of Brad Smith at ¶ 5 ("when I spend time outdoors, I enjoy being in undeveloped, natural, wilderness quality lands…I like to be away from the hustle and bustle and noise of the human-influenced environment that I

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

encounter in my daily life."). Naturally, given their preferences for use of the Forest, Plaintiffs favor Travel Plan alternatives that would minimize the areas available to motor vehicle use so as to maximize the National Forest System lands available for the types of activities that Plaintiffs enjoy, to the exclusion of those who enjoy motorized recreational activities in the SCNF. The Forest Service properly accounted for these competing interests in its development of alternatives for the SCNF Travel Plan, and its selection of alternatives was reasonable.

### a. *The Forest Service appropriately analyzed a reasonable range of alternatives*

First, in the Draft EIS, the Forest Service analyzed a No Action alternative and four additional alternatives. FEIS at 2.1. The four alternatives covered a spectrum of approaches to designating motorized access routes in the SCNF: (1) Designated System Routes, which would have opened all existing designated system motorized routes while closing all unauthorized routes; (2) Revised Proposed Action – this alternative sought to balance competing public interests regarding motorized and non-motorized uses on the SCNF and was used as the basis for the Preferred Alternative (FEIS at 2.2); (3) Recommended Wilderness/Roadless Values emphasis, which would eliminate access in the Recommended Wilderness Areas and would not designate any new routes in the IRAs; (4) Maximum Motorized Emphasis, which would have opened the greatest number of motorized access routes to the Forest. FEIS at 2.1-2.2. The DEIS generated a number of "strongly divided" public comments, with many advocating for even more motorized access than proposed under alternative 4 (the Maximum Motorized Emphasis Alternative), while others sought even less motorized access (especially in IRAs and RWAs) than was proposed in Alternative 3 (the Wilderness/Roadless Values Emphasis Alternative). FEIS at 2.2; Appendix E at E.1.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

In response to public comments, the Forest Service modified the alternatives from the DEIS, and analyzed the Existing Condition and four alternatives in the FEIS:[6] 1) Alternative 0 – the No Action Alternative; 2) Alternative 1 – Designated System Routes, which would designate existing system roads and motorized trails displayed on current Travel Plan maps and travel management decisions made through other NEPA analyses; 3) Alternative 3[7] – the Recommended Wilderness/Roadless Area Emphasis, which would designate a total of 2,905 miles of motorized routes and increase seasonal and vehicle type restrictions relative to other alternatives; 4) Alternative 4 – the Maximum Motorized Emphasis Alternative, which would designate a total of 4,351 miles of designated routes; 5) Alternative 5 – the Preferred Alternative, which would designate 3,534 miles of motorized routes.   Analyzing simply the total miles of routes under the various alternatives, the Forest Service considered alternatives ranging from a low of 2,905 miles of motorized access routes (Under Alternative 3) to a high of 5,147 miles of routes (under the No Action alternative).  FEIS at 2.29-2.30, Table 2-13.  The various subcategories of motorized routes further illustrate the wide range of alternatives analyzed.  For example, with regard to the miles of system trails open to yearlong OHV use, the alternatives ranged from 6 miles to 833 miles.  *Id.*  Similarly, system trails open yearlong to two-wheeled vehicles, but closed to ATVs ranged from 33 miles (No Action Alternative) to 574 miles (Alternative 4).  *Id.*

---

[6] The Forest Service also explained that it considered but did not study in detail two additional alternatives because they were impractical or did not meet resource protection objectives.  *See* FEIS Sec. 2.2 (Alternatives Considered but Eliminated from Detailed Study).

[7] Alternative 2 was the Revised Proposed Action in the DEIS, but it was not carried forward in the FEIS.  FEIS at 2.17.  Alternative 2 was used as the starting point for Alternative 5 in the FEIS.  *Id.*

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Aside from the mileage factors, other measurements also indicate the true breadth of the alternatives considered by the Forest Service.  For example, when measured by the acres of motorized access open to limited motor vehicle use for dispersed camping, the alternatives ranged from 67,881 acres (Alt. 3) to 401,589 acres (No Action).  *Id.*  Tables 2-14 through 2-19 in the FEIS show the "Motorized Influence Zone Acres" and "Non-Motorized Acres" for each Ranger District under each alternative, and show that the Forest Service considered a number of different allocations within each Ranger District.  *See, e.g.,* Table 2-14 (showing motorized influence zone acres for the Challis-Yankee Fork Ranger District ranging from 313,718 acres (Alt. 3) to 420,750 (No Action), and non-motorized acres ranging from 383,442 (No Action) to 490,474 (Alt. 3).  Finally, viewing the Alternatives in light of the density of routes on the Forest also underscores the reasonableness of the range of the various alternatives.[8]  Table 2-30 shows that the route densities of the various alternatives range from .64 miles/sq. mile (Alt. 3) to 1.06 miles/sq. mile (No Action).  By any measure, it is clear that the alternatives analyzed by the Forest Service in the DEIS and FEIS covered a wide variety of possible approaches to travel management in order to balance the competing use interests, safety concerns, resource protection, and the agency's management objectives.

> **b.    *Plaintiffs' arguments fail to consider the existing motorized routes in the IRAs and RWAs***

Plaintiffs disregard this overwhelming evidence of the breath of the alternatives, and argue that the evidence reflects only "superficial differences" and presents the public with "false choices."  Pls.' MSJ at 11-13.  Plaintiffs' arguments regarding the alternatives lay bare their single-issue focus on maximizing their own enjoyment of non-motorized recreation in the SCNF.

---

[8] Notably, ICL,  in its comments to the DEIS, recommended that the Forest Service use route density as a means of measuring effects on wildlife for the various alternatives.  AR 010296 (comments from ICL on DEIS).

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

According to Plaintiffs, the Forest Service should be forced to construct yet another alternative that would provide less motorized access within the IRAs and RWAs. Pls.' MSJ at 12 (suggesting the Forest Service should have constructed an alternative that closed 30%, 45%, or 75% of the IRAs and RWAs to motorized use). Plaintiffs fail to acknowledge that the Travel Plan covers the entire Salmon-Challis National Forest System, not just the IRAs and RWAs. *See* FEIS at 1.3-1.4 (Purpose and Need).

More importantly, Plaintiffs disregard the reduction in designated routes in the IRAs and RWAs under the alternatives, and erroneously argue that Alternatives 3, 4, and 5 augment motor vehicle use in these areas with only minimal provision for closing routes to motor vehicles. Pls.' MSJ at 12 ("either all (or virtually all) existing motorized routes in IRAs would remain open…or none of these routes would be open").[9] Plaintiffs fail to acknowledge the on-the-ground reality presented by the No Action Alternative – namely, there are currently approximately 1,380 miles of existing motorized routes in the IRAs. AR037111, Table 2. Alternative 1, the "Designated Routes Alternative" that Plaintiffs characterize as the "all open" alternative, actually represents a reduction of 597 miles, or a roughly 44% reduction of motorized routes in the IRAs as compared to the No Action Alternative. *Compare* AR037111, Table 2 *with* AR037114, Table 4. Using the proper baseline, it is clear that the Alternatives encompass a reasonable range of approaches to motorized access in the IRAs and RWAs ranging from 783 miles (across 2,271,088 acres of IRAs) to 1,380 miles under the No Action Alternative. *Id.*

---

[9] Plaintiffs rely on the declaration of Mr. Wilmer and the exhibits thereto in support of their analysis of the alternatives. Pls.' MSJ at 12. As explained in note 2, above, however, that declaration and exhibits represent improper extra-record material and should be struck from the record and not be considered by the Court. *See Asarco v. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980).

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Far from a "false choice," this is precisely the type of reasonable alternatives analysis that NEPA requires and that the Ninth Circuit has upheld. *See Westlands Water Dist. v. U.S. Dept. of Interior*, 376 F.3d 853, 871 (9th Cir. 2004) (reversing district court's decision and explaining that "[t]he EIS was not required to consider more mid-range alternatives to comply with NEPA. NEPA does not require the EIS to have considered every conceivable permutation of flow and non-flow measures."). Here, the Forest Service considered a broad range of alternatives, and the simple fact that Plaintiffs would have preferred that the Forest Service analyze alternatives that close more routes to motor vehicles in the IRAs and RWAs does not render the agency's range of alternatives unreasonable.

### B. The Forest Service Has Fully Complied With Statutory and Regulatory Obligations

Plaintiffs' claims that the SCNF Travel Plan fails to comply with the Forest Service's Travel Management Regulations and Executive Orders 11644 and 11989 is a thinly-veiled attempt to usurp the role of the Forest Service in interpreting and administering its own regulations. Pls.' MSJ at 13-22.[10]  The Ninth Circuit has long recognized that, under the regulations implementing EO 11644, "the responsibility for closing particular areas rests with responsible federal officials in the field [b]ased on their practical experience in the management of the public lands, and their first-hand knowledge of conditions on-the-ground." *Sierra Club v. Clark*, 756 F.2d 686, 690 (9th Cir. 1985) (citing CEQ memorandum interpreting EO 11644) (internal citations and quotations omitted).  Executive Order 11644 provides the Secretary with

---

[10] Although Plaintiffs assert that a failure to comply with the terms of an Executive Order is itself reviewable under the APA, they properly recognized that the Forest Service has issued regulations implementing EO11644 and 11989. Pls.' MSJ at 14-15.  Accordingly, the regulations, and not the Executive Orders are the proper focus of Plaintiffs' claims. *See Sierra Club*, 756 at 690-93 (identifying EO 11644 and 11989, but focusing analysis on the regulations and statutes implementing the Executive Orders).

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

the authority to promulgate regulations to provide for "administrative designation of the specific areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted."  Ex. Ord. at § 3(a); *see also Sierra Club*, 756 F.2d at 690.  "Discretion rests with the Secretary, therefore, to determine whether and to what extent specific areas should be closed to ORV use[, and] it is the Secretary's interpretation which is entitled to our deference."  *Sierra Club*, 756 F.2d at 690.  More recently, in a similar challenge to the Bureau of Land Management ("BLM") regulation implementing EO11644 and 11989, the District of Oregon held:

> Section 8341.2(a) supplies BLM the discretion to decide when and how a determination of "considerable adverse effects" will be made.  In this court's view, that regulation does not mandate, with the clarity necessary to support judicial action under § 706(1), the total exclusion of ORV use.  For example, section 8341.2(a) does not direct an agency to make a determination under certain conditions or instances or at particular intervals or triggering events.  Rather, the regulation simply provides that where such a determination is made, with both process and timing left entirely to an agency's discretion, closure is mandated. *See* 43 C.F.R. § 8341.2(a).  BLM has not determined that ORV use is causing considerable adverse effects to the enumerated resources and this court lacks authority either to mandate such a finding or to close LCM to ORV use.

*Gardner v. U.S. Bureau of Land Mgmt.*, 633 F. Supp. 2d 1212, 1227 (D. Or. 2009); *compare* 43 C.F.R. § 8341.2(a) *with* 36 C.F.R. § 212.52(b)(2).

## 1.     Plaintiffs' reliance on Center for Biological Diversity v. BLM is misplaced

The unpublished slip opinion in *Center for Biological Diversity v. BLM*, Case No. C06-4884-SI, slip op. (N.D. Cal. Sept. 28, 2009), on which Plaintiffs rely, is inapposite to the facts of this case.  The BLM regulation at issue in that case was 43 C.F.R. § 8342.1 (a different regulation than 8341.2, discussed above), which provides that "all designations shall be based on the protection of the resources of the public lands, the promotion of the safety of all the users of the public lands, and the minimization of conflicts among various uses of the public lands; and in

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

accordance with the following criteria."  43 C.F.R. § 8342.1 (emphasis added).  The specific

criteria require, for example, that "trails <u>shall be located to minimize damage</u> to soil, watershed,

vegetation, air, or other resources of the public lands."  43 C.F.R. § 8342.1(a) (emphasis added).

This language stands in stark contrast with the language of the Forest Service regulation

applicable in this case, 36 C.F.R. § 212.55(b).  That regulation states "in designating [routes], the

responsible official <u>shall consider effects on the following, with the objective of minimizing</u>: (1)

damage to soil, watershed, vegetation, and other forest resources...."  *Id.* (emphasis added).

The Forest Service's travel management regulation is fully consistent with EO 11644.

Section 3(a) of EO 11644 does not require the Forest Service to minimize the impacts iterated.

Rather, section 3(a) states that regulations implementing the EO shall be in accordance with the

listed criteria.  These criteria provide for locating designated trails and areas to minimize the

iterated impacts.  The Forest Service's travel management rule provides that in designating trails

and areas (not roads), the responsible official shall consider, with the objective of minimizing,

the iterated impacts.  36 C.F.R. § 212.55(b).  Thus, in implementing section 3(a) of EO 11644,

the travel management rule does not require the Forest Service to minimize these impacts.

Rather, the travel management rule requires the Forest Service to consider, with the objective of

minimizing, these impacts.  As stated in the preamble to the final travel management rule:

> The Department believes this language is consistent with E.O. 11644 and better
> expresses its intent.  It is the intent of E.O. 11644 that motor vehicle use of trails
> and areas on Federal lands be managed to address environmental and other
> impacts, but that motor vehicle use on Federal lands continue in appropriate
> locations.  An extreme interpretation of ''minimize'' would preclude any use at
> all, since impacts always can be reduced further by preventing them altogether.
> Such an interpretation would not reflect the full context of E.O. 11644 or other
> laws and policies related to multiple use of NFS lands. Neither E.O. 11644, nor
> these other laws and policies, establish the primacy of any particular use of trails
> and areas over any other.  The Department believes ''shall consider * * * with the
> objective of minimizing * * *'' will assure that environmental impacts are
> properly taken into account, without categorically precluding motor vehicle use.

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

70 Fed. Reg. 68,281 (Nov. 9, 2005).

In other words, the Forest Service regulation requires the <u>consideration</u> of effects, with the <u>objective</u> of minimizing damage to various Forest Resources.  Plaintiffs' contention that the court's conclusion in *Center for Biological Diversity* is controlling in this case disregards the fact that the BLM regulations are entirely prescriptive, while the Forest Service regulations require consideration of effects without mandating a particular outcome.  The requirements of the Forest Service regulations are fully satisfied in the FEIS for the Travel Management Plan, which provides detailed consideration of the effects on soil, water, fisheries, wildlife, and numerous other potential impacts.  *See* FEIS Chap. 3.  The Forest Service's Preferred Alternative has the objective of minimizing effects from motor vehicle use on the Forest, while also remaining consistent with the requirements in 36 C.F.R. § 212.55(a), which requires the Forest Service to also consider, among other factors: public safety, provision of recreational opportunities, access needs, and conflicts among uses of National Forest System lands.  36 C.F.R. § 212.55(a).  As explained more fully below, the SCNF Travel Plan addresses all of these issues in developing the Preferred Alternative, and the Forest Service's consideration of these factors was well-reasoned and complied with the APA.  Plaintiffs' claim that the Forest Service failed to comply with its regulations and relevant Executive Orders should be denied.

The Forest Service complied with its obligations to consider the effects and minimize the impacts of motorized recreation in the Forest.  For all of the Forest resources, "Issue Indicators" were selected to analyze and compare the effects of motor vehicle uses for each alternative.  For example, indicators used to analyze the effects to fisheries resources included: 1) miles of roads and trails within 300 feet of perennial streams; 2) miles of designated roads and trails within 100 feet of intermittent streams; and 3) number of crossings on designated roads and trails on both

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

perennial and intermittent streams.  FEIS at 3.65-66 (AR046446-447); Table 2-26 (FEIS at p. 2.44).  For example, the number of stream crossings on perennial streams decreased by 33%, from 2,542 under the No-Action Alternative to 1,708 under Alternative 5 (the Preferred Alternative).  FEIS at 2.44; AR037005 (Fisheries Specialist Report).

Similarly, indicators to analyze the effects of motor vehicle use on soil resources included miles of routes on lands with high surface erosion potential.  AR046310.  The Preferred Alternative reduces the miles of motor vehicle routes (for vehicles greater than 50 inches wide) on lands with high surface erosion hazard from 1,748 miles (No Action Alternative) to 956 miles; a 45% reduction of route miles on soil types with high surface erosion hazard which in kind reduces the risk for road and slope failure, and accelerated erosion (AR046360-046370, AR046432-046444).

With regard to watershed impacts, vulnerability ratings characterize the natural inherent sensitivity of a subwatershed to disturbance. In highly vulnerable subwatersheds, disturbance poses a higher risk of degrading soil-hydrologic, stream dynamic equilibrium, and riparian functions.  AR031892.  The Preferred Alternative would reduce the miles of designated routes in sub-watersheds with high vulnerability ratings by 32%, from 2,208 miles under the No-Action Alternative to 1,509 miles under the Preferred Alternative.  Therefore this reduction of miles within vulnerable watersheds reduces the potential for degradation of these resources. AR046367.  The Preferred Alternative would also reduce the density of routes authorized for motor vehicle use by about 30 percent and would reduce the miles of routes within 300 feet of water-quality-limited stream segments from 245 miles to 208 miles decreasing the potential for adverse impacts including sedimentation, and cumulative watershed impacts related to road density. AR046368; AR046413-AR046429.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

The Preferred Alternative would increase the number of acres of security habitat available to wildlife during critical life stages (fawning or calving) and during hunting season from 41 to 58 percent, from 1,288,408 acres (No Action Alternative) to 1,816,009 acres (Preferred Alternative).   This increases the amount of acres of cover available for security, and reduces impacts from motor vehicle use on wildlife.  AR046375-046376; AR046504-46512.

Extensive coordination occurred between both the Salmon and Challis Bureau of Land Management field offices during the entire SCNF travel planning process to minimize "conflicts between motor vehicle use and existing or proposed recreational uses of neighboring Federal lands; and to minimize conflicts among different classes of motor vehicle uses.  AR046578-046628, AR046631-046653. These comments are addressed by the agency at AR010688-AR010693. Coordination with BLM to minimize conflicts during the entire planning process is further reflected in documents AR000320, AR000359, AR000653, AR001966, AR010459, AR010466, AR010490, AR10570, AR 10688, and AR020074.

> **2.** **The Forest Service considered Plaintiffs comments on specific routes and altered the route designations where appropriate to minimize impacts**

Attempting to stand in the shoes of the Forest Service, Plaintiffs have provided this Court with their own conclusions regarding resource impacts in the Forest.  Plaintiffs argue that route closure is required because, in their view, those impacts are "considerable adverse effects" under the relevant Executive Orders and regulations.  Pls.' MSJ at 17-22.

As an initial matter, the authority in section 9(a) of EO 11644 and 36 C.F.R. § 212.52(b)(2) to impose a temporary, emergency closure based on considerable adverse effects is separate from the authority to designate routes and areas under section 3 of EO 11644 and 36 C.F.R. § 212.51.  In contrast to route and area designations, temporary, emergency closures

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

based on considerable adverse effects are not subject to public involvement requirements under NEPA.  *Compare* 36 C.F.R. § 212.52(a) *with* § 212.52(b)(2).  A challenge to NEPA compliance for a route and area designation cannot therefore include a claim involving failure to impose an immediate closure based on considerable adverse effects.

Moreover, Plaintiffs' claim that the Forest Service failed to impose a temporary emergency closure of the certain routes based on considerable adverse effects, is directly contrary to the law of this Circuit, as explained in *Gardner v. U.S. Bureau of Land Management*

> Gardner simply asks this court to accept his interpretation of the evidence over the interpretation of the agency and its experts. Such action by the court would violate clearly established law. *See, e.g., Clark*, 756 F.2d at 690-92 (Secretary's not Sierra Club's interpretation of the phrase "no considerable adverse effects" controlled).  It is clear from the Ninth Circuit's decision in *Clark*, that the BLM has substantial discretion when managing public lands and its determination regarding insufficient evidence of "considerable adverse effects" to one or more of the referenced resources must be upheld.

633 F. Supp. 2d at 1226-1227.  It is a well established tenet of Administrative Law that, in the context of the APA, a plaintiff is not entitled to substitute its judgment for that of the Forest Service.  *Marsh*, 490 U.S. at 378; *McNair*, 537 F.3d at 993.

Notwithstanding these clear rules of law, Plaintiffs have provided the Court with a set of photographs and associated briefing that purport to depict impacts of motor vehicle use on certain trails within the SCNF.  Based on their assessment of the photographs, and trail conditions, Plaintiffs conclude that "motorized use…has, in fact, caused substantial adverse effects to soil, water quality, streams, vegetation and other forest resources that could be minimized by limiting motorized use."  Pls.' MSJ. at 16-17.  Plaintiffs begin with their assessment of the Hay Creek-Knapp Creek Trail #4032 in the Middle Fork Ranger District, and determine that drainage is inadequate, and motorized use is causing rutting and erosion and sediment delivery problems.  In response to Plaintiffs' public comments on the DEIS, the Forest

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Service modified its designation for this trail from the Draft EIS to the ROD. In the Draft EIS, the agency proposed that Trail #4032 would be open year-round to vehicles less than 50 inches (code ATV1). AR044883 (DEIS App. H, at p. H-50).[11] After consideration of comments, the FEIS Alternative 5 (the Preferred Alternative) designated Trail #4032 as open only to two-wheel vehicles along nearly half the nine-mile trail, and along the rest of the trail, the Forest Service imposed seasonal restrictions so that it is open for motorized use only between May 22 and September 30 (code ATVD). AR046818-819 (FEIS App. E); AR047128 (ROD Appendix B).

In short, for the express purpose of mitigating potential effects of motorized use on Trail #4032, the Forest Service banned larger vehicles along half of the trail, and shut down the other half of the trail for nearly eight months out of the year. As a result, however, of Plaintiffs' singular focus on banning motor vehicle uses of the Forest, Plaintiffs claim that in their judgment, shutting down half the trail for eight months per year, and banning larger vehicles from the other half of the trail entirely is not sufficient to minimize the resource impacts to the Forest. This is precisely the type of management decision that is the exclusive purview of the agency under the APA. The Forest Service's conclusions regarding Trail 4032 were reasonable and well-supported in the Administrative Record.

As to the Beaver Creek Trail (#4033), and Winnemucca Creek Trail (#4035.03), the Forest Service designated these trails for seasonal use only between May 22 and September 30 to reduce impacts on the trails. Both of these trails had previously been open all year long to all vehicles. AR044883 (DEIS App. H, at p. H-50 showing the ALL1 designation under the existing condition for both trails). The alternatives in the DEIS called either for yearlong access for two-wheeled vehicles or yearlong access for vehicles less than 50 inches wide. AR044883.

---

[11] Of course, the Forest Service also relied on the effects analyses to inform their route designation decisions. *See generally* FEIS Chap. 3.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

As a result of the information gathered throughout the travel planning process (including comments received from Plaintiffs and others), the Forest Service excluded all vehicles on both trails except two-wheeled vehicles and limited access to May 22 through September 30. AR047128.  Thus, the Forest Service considered the effects of motor vehicle use and worked diligently to minimize those effects through restrictions on vehicle types and seasons of use.[12]

On trail #4032 in the Challis-Yankee Fork Ranger District, the agency also implemented restrictions in order to minimize impacts to the trails.  Trail 4032 in the Challis-Yankee Fork Ranger District is comprised of two segments, one approximately 14 miles long and another approximately 5 miles long.  AR044846 (DEIS App. H at p. H-13).  The longer segment was previously open to all vehicles all year long.  *Id*.  The shorter segment was open all year long but only to vehicles less than 50 inches wide.  *Id*.  The longer segment is now only open to two-wheel vehicles while the shorter segment remains open to vehicles of 50 inches or less.  FEIS, App. H at H-16.  With respect to the Valley Creek Trail (#4039), the Forest Service concluded that the current restriction to vehicles less than 50 inches wide is sufficient to minimize impacts to the Forest resources.  Finally, Plaintiffs make similar claims about the Swauger Lakes Trail #4091 in the Lost River Ranger District.  Pls.' MSJ at 20.  Again, the Forest Service evaluated the information available to it, and implemented vehicle restrictions to minimize the impacts on the Forest.  *Compare* AR 044874 (DEIS App. H showing current authorized motor vehicle use on the Swauger Lake Trail as "ALL1" meaning the trail is open year-round to all vehicles) *with* ROD at p. 53 (showing Swauger Lake Trail designation as "2WL1" meaning it is open only to two-wheeled vehicles year round).  Plaintiffs present no evidence questioning that conclusion,

---

[12] In addition, the Forest Service is pursuing cooperative agreements and grants with the Idaho Department of Parks and Recreation to maintain motorized and non-motorized trails throughout the SCNF.  AR046333.  Better trail maintenance will further mitigate impacts of motor vehicle use on the Forest.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

but ask this Court to accept their interpretation of the evidence over the Forest Service's – a result that is not permitted under the law of this Circuit.  *See Sierra Club*, 756 F.2d at 691; *Gardner*, 633 F. Supp. 2d at 1227.

The fact that Plaintiffs would prefer to see wholesale closures of these routes is not a basis for concluding that the Forest Service's decisions were arbitrary and capricious.  The Ninth Circuit's decision in *Sierra Club v. Clark* underscores this point.  In that case, the Sierra Club sought an order forcing the BLM to shut down certain areas of the Dove Springs Canyon (located in the California Desert Conservation Area) and prevent off-road vehicle ("ORV") use, pursuant to Executive Order 11644 and 43 C.F.R. § 8341.2.  *Sierra Club*, 756 F.2d at 688.   The Sierra Club claimed that ORV use in the Canyon had led to severe environmental impacts and asked the Secretary of Interior to close the area to ORV activities as a result of "substantial adverse effects" pursuant to its authority under EO11644 and the relevant regulations.  *Id.* In its management plan, the Secretary called for 3000 of the 5500 acres in the Canyon to be closed to ORV use.  *Id.*  Not satisfied with the closure of 60% of the Canyon, Sierra Club sued to force a complete ban on ORV use in any part of the Canyon.  *Id.* at 688-689.  The Ninth Circuit recognized some of the impacts of ORV use in the Canyon, but concluded that the Secretary's decision not to close the area entirely was due substantial deference:

> Although all parties recognize that the environmental impact of ORV use at Dove Springs is severe, the Secretary's determination that these effects were not "considerable" in the context of the Desert Area as a whole is not arbitrary, capricious, or an abuse of the broad discretion committed to him by an obliging Congress.

*Sierra Club*, 756 F.2d at 691.

The argument for deference is even stronger in this case, where the Forest Service has developed a Travel Plan that will dramatically reduce the areas available for motorized

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

recreation, will reduce overall route density on the Forest, will reduce motor vehicle use to access dispersed camping, and will eliminate all unregulated cross-country travel.  The Forest Service's FEIS demonstrates that the Preferred Alternative will lessen the impacts of motor vehicle use on soil, water, wildlife, and fisheries across the Forest.  Plaintiffs, however, insist that, based on their assessment of the existing condition, even more drastic measures to further choke off motorized access to the Forest is necessary.  The Ninth Circuit's *Sierra Club* decision makes clear, however, that it is the Forest Service's reasoned determination based on their analysis that is due deference, not Plaintiffs'.  Accordingly, the Court should disregard Plaintiffs' claims that the Forest Service has failed to minimize impacts.

### C.   The Salmon-Challis National Forest has not yet undertaken to identify the Minimum Road System required under 36 C.F.R. Part 212 Subpart A.

Plaintiffs' claims regarding the designation of the Minimum Road System ("MRS") misinterpret the scope of the decision in the FEIS and are premised on the false notion that the SCNF designated its Minimum Road System pursuant to 36 C.F.R. § 212.5(b)(1).  (Pls.' MSJ at 24-35), the Administrative Record is clear that the SCNF has not yet designated the MRS required by 36 C.F.R. § 212.5(b)(1).  First, the MRS was never part of the Purpose and Need for the decision.[13]  FEIS at pp. 1.3 – 1.6.  Nor was designation of the MRS among the "Decisions to Be Made" enumerated in the FEIS.  FESI at 1.5-1.6.  Plaintiffs are correct in noting that neither

---

[13] Indeed, the requirement to identify the minimum road system needed for safe and efficient travel and for administration, utilization, and protection of National Forest System ("NFS") lands under 36 C.F.R. § 212.5(b) is separate from designation of routes and areas under 36 C.F.R. § 212.51.  The requirement to identify the minimum road system was established in regulations (the roads rule) and directives (the roads policy) published on January 12, 2001 (66 Fed. Reg. 3216), before promulgation of the travel management rule in November 2005.  Identification of the minimum road system focuses on the need for roads in the forest transportation system, rather than on appropriate motor vehicle use on routes in the forest transportation system and in areas on NFS lands.  *Compare* 36 C.F.R. § 212.5(b)-(d) *with* 36 C.F.R. §§ 212.50; 212.51; 212.55.  Therefore, the designation process, rather than identification of the minimum road system, determines where and when motor vehicles may be operated.

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

the Notice of Intent (72 Fed. Reg. 43223) nor the Notice of Availability for the Draft EIS (73

Fed. Reg. 55842) indicated in any way that the SCNF would be undertaking the MRS analysis

pursuant to 36 C.F.R. § 212.5.

The only mention of the Minimum Road System in the FEIS occurs in the Section titled

"Legal Requirements and Required Disclosures" in which the Forest Service explains that the

designation of roads (under 36 C.F.R. 212.50 et seq.) has been carried out consistent with the

requirements of 36 C.F.R. § 212.5(b)(1), not in satisfaction of those requirements.  FEIS at 1.28.

Finally, in the parallel section of the Record of Decision, titled "Findings Required by Other

Laws," the ROD explains that "numerous laws, regulations and agency directives require that my

decision be consistent with their provisions…my decision is consistent with all laws, regulations,

and agency policy[,and] [t]he following summarizes findings required by major environmental

laws."  ROD.19.  The ROD then lists 24 separate laws, regulations and policies and describes

how the decision is consistent with those laws.  ROD.19 – ROD.26.  The discussion of the MRS

was intended as nothing more than an indication that the completion of the travel planning

process for 36 C.F.R. § 212.50 (Subpart B) was consistent with the requirements of, and did not

violate, 36 C.F.R. § 212.5 (Subpart A).  The discussion did not make any determination with

regard to the MRS requirement in 36 C.F.R. Part 212, Subpart A.

In fact, documents in the Administrative Record point out that identification of the

Minimum Road System has not been completed for the SCNF.  *See* AR047570.  The email at

AR047570 includes a response to a request for information for a report to Congress which states

that "The Salmon-Challis has not identified a 'minimum road system' that would serve the

various resource objectives and public use of the road system."  AR 047570.  In a later email,

dated December 15, 2009, SCNF employees circulate a chart containing a description for the

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

SCNF at  AR047586, and indicates that "[t]he Salmon-Challis completed what was intended to be a [Tavel Analysis Process] as part of the travel planning process and included all routes proposed for public travel in the travel plan alternatives. The analysis did not however provide management recommendations or assess these routes as part of a 'minimum system'." AR047576 – AR047588.   That same document also states that "[t]he Salmon-Challis has not identified a 'minimum road system'" and "[t]he Salmon-Challis has not developed a strategy [for completion of the Minimum Road System designation] at this time."  *Id*.

In short, the Forest Service did not intend to complete the MRS determination in the SCNF in conjunction with the designation process at issue in this litigation.  In fact, the SCNF is devising a strategy for completing the MRS determination in accordance with 36 C.F.R. § 212.5(b)(1).  When the SCNF undertakes that process, Plaintiffs' will have the opportunities for public input consistent with the statutory and regulatory requirements for that process.  Plaintiffs' claims regarding the MRS are therefore not ripe, and there is no justiciable case or controversy to be decided by the Court with regard to this issue.  *Bova v. Medford*, 564 F.3d 1093, 1096 (9th cir. 2009) (dismissing claim as unripe where Plaintiffs' alleged injury had not yet occurred). Defendants respectfully request that summary judgment be granted against Plaintiffs' claims regarding the Minimum Road System.

### D.      Remedy

Plaintiffs ask this Court to "enjoin the Forest Service from allowing motor vehicle uses in the Salmon-Challis National Forest that are contrary to law as specifically requested by plaintiffs in the course of these proceedings."  Pls.' Compl. at 25.  Such broad and invasive relief is not justified.  Defendants address the question of remedy briefly below, but respectfully submit that,

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

should this Court find any legal defect in the SCNF Travel Management Plan, it should hold

separate proceedings on remedy to insure that any relief is properly narrowly tailored.

While Defendants do not believe any equitable relief is appropriate, if the Court finds to

the contrary, any such relief must be carefully tailored to "be no more burdensome to the

defendant than necessary to provide complete relief to the plaintiffs." *See Califano v. Yamasaki*,

442 U.S. 682, 702 (1979).  Courts commonly leave regulations or program-level decisions in

place pending the agency's correction of legal errors.  *See High Sierra Hikers Ass'n v. Blackwell*,

390 F.3d 630, 638, 642-43 (9th Cir. 2004) (allowing limited access by commercial outfitters and

guides to wilderness areas pending completion of further NEPA review); *Idaho Watersheds Proj.*

*v. Hahn*, 307 F.3d 815, 833-34 (9th Cir. 2002) (allowing grazing activities to continue under

conditions proposed by agency pending further NEPA review); *Idaho Farm Bureau Fed'n*, 58

F.3d 1392, 1405-06 (9th Cir. 1995) (remanding without vacating rule).  While further

proceedings would be necessary to craft proper injunctive relief, it is clear that even if the Court

were to find merit in Plaintiffs' claims of discrete legal errors, those errors could not, either

singly or in combination, justify a request for an injunction against the Travel Management Plan.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary

judgment in favor of Defendants on all claims, and that Plaintiffs Motion for Summary Judgment

be denied.

Dated:  September 10, 2010

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Div.

/s/  Brian Collins
BRIAN M. COLLINS (TX Bar #24038827)
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 305-0428
Facsimile: (202) 305-0267
Email: brian.m.collins@usdoj.gov

THOMAS E. MOSS
United States Attorney
JOANNE P. RODRIGUEZ
ID Bar #2996
Assistant U.S. Attorney
District of Idaho
800 Park Blvd., Ste 600
Boise, ID 83712

ATTORNEYS FOR DEFENDANTS

**DEFENDANTS' RESPONSE AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2010, I caused a copy of the foregoing Defendants'

Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary

Judgment to be served through the Court's CM/ECF System on the following attorneys for

Plaintiffs:


Todd True
Kevin Regan
Earthjustice
705 Second Ave., Suite 203
Seattle, WA 98104
(206)343-7340
ttrue@earthjustice.org
kregan@earthjustice.org

Lauren M. Rule
Advocates for the West
PO Box 1612
Boise, ID 83701
(208)342-7024
lrule@advocateswest.org



/s/  Brian Collins
Brian M. Collins
Attorney for Defendants

**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**