TODD D. TRUE (WSB #12864)
KEVIN E. REGAN (OSB #044825)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
(206) 343-1526 *[FAX]*
ttrue@earthjustice.org
kregan@earthjustice.org

LAUREN M. RULE (IB #6863)
Advocates for the West
P.O. Box 1612
Boise, ID  83701
(208) 342-7024
(208) 342-8286 *[FAX]*
lrule@advocateswest.org

*Attorneys for Plaintiffs Idaho Conservation
League and The Wilderness Society*

THE HONORABLE RONALD E. BUSH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO CONSERVATION LEAGUE and THE WILDERNESS SOCIETY | ) ) ) Civ. No.  10-26-REB |
| Plaintiffs, | ) ) ) |
| v. | ) ) PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR |
| FRANK V. GUZMAN[1], Forest Supervisor of the Salmon-Challis National Forest, in his official capacity, and the U.S. FOREST SERVICE, an agency of the Department of Agriculture, | ) SUMMARY JUDGMENT FILED ON ) SEPTEMBER 10, 2010 (DKT. #45) AND ) REPLY IN SUPPORT OF PLAINTIFFS' ) MOTION FOR SUMMARY JUDGMENT ) FILED ON JULY 30, 2010 (DKT. #38) ) |
| Defendants. | ) ) ) |

---

[1] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), Frank V. Guzman, Forest Supervisor of the Salmon-Challis National Forest, is substituted as a defendant for Lyle Powers, Acting Forest Supervisor of the Salmon-Challis National Forest.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STANDARD OF REVIEW ................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.     THE FEIS FOR THE SALMON-CHALLIS TRAVEL PLAN VIOLATES
     NEPA. ........................................................................................................ 2

     A.   The FEIS Fails to Address the Cumulative Impacts of Newly-
         Authorized and Existing Motorized Routes on Inventoried Roadless
         Areas and Recommended Wilderness Areas. ...................................2

     B.   The FEIS Fails to Address the Cumulative Impacts of Numerous
         Short Motorized Routes on IRAs and RWAs. ...................................5

     C.   The FEIS Fails to Consider an Adequate Range of Alternatives. ...................6

II.    THE SALMON-CHALLIS TRAVEL PLAN IS CONTRARY TO THE
     PLAIN LANGUAGE OF THE TRAVEL MANAGEMENT
     REGULATIONS AND IS ARBITRARY AND CAPRICIOUS........................... 8

     A.   Forest Service Regulations Require the Agency to Minimize the
         Adverse Effects of Motor Vehicle Use.........................................................9

         1.   The Forest Service interpretation of the travel management
             regulations conflicts with the plain language of the
             regulations...............................................................................9

         2.   *Center for Biological Diversity v. BLM* confirms that the
             Forest Service  must explain how its travel management plan
             meets the minimization criteria. .........................................................12

         3.   Executive Order 11644, as amended, independently requires
             the Forest Service to minimize adverse effects of motor
             vehicle use. ........................................................................13

     B.   The Forest Service Has Not Shown How the Salmon-Challis Travel
         Plan Meets the Minimization Requirements.................................................15

         1.   The APA requires the Forest Service to explain how its
             decision meets the minimization criteria of the travel
             management regulations. ...................................................................16

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - i -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

2.   The Forest Service has failed to explain its route designation decisions in light of the available evidence of resource damage from motor vehicle use. ....................................................................17

C.   The Court Should Affirmatively Set Aside the Minimum Road System Determination in the Salmon-Challis Travel Plan ROD....................19

CONCLUSION ............................................................................................................ 20

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

TABLE OF AUTHORITIES

CASES

American Motorcyclist Association v. Watt,
    543 F. Supp. 789 (C.D. Cal. 1984) ..................................................................15

Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc.,
    419 U.S. 281 (1974)........................................................................................16

Burlington Truck Lines v. United States,
    371 U.S. 156 (1962)...........................................................................16, 17, 18

California v. Block,
    690 F.2d 753 (9th Cir. 1982) .............................................................................8

Center for Biological Diversity v. Bureau of Land Management,
    No. C06-4884-SI, slip op. (N.D. Cal. Sept. 28, 2009)..........................12, 13, 16

Center for Biological Diversity v. U.S. Department of Interior,
    581 F.3d 1063 (9th Cir. 2009) ...........................................................................8

Christensen v. Harris County,
    529 U.S. 576 (2000)...........................................................................................9

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971)...........................................................................................1

City of Albuquerque v. U.S. Department of Interior,
    379 F.3d 901 (10th Cir. 2004) .........................................................................14

City of Carmel-by-the-Sea v. U.S. Department of Transportation,
    123 F.3d 1142 (9th Cir. 1997) .........................................................................14

Conservation Law Foundation v. Clark,
    590 F. Supp. 1467 (D. Mass. 1984), aff'd 864 F.2d 954 (1st Cir. 1989) ...........14

Entergy Corp. v. Riverkeeper, Inc.,
    129 S. Ct. 1498 (2009)......................................................................................12

Federal Election Commission v. Rose,
    806 F.2d 1081 (D.C. Cir. 1986) .......................................................................16

Gardner v. Bureau of Land Management,
    633 F. Supp. 2d 1212 (D. Or. 2009) ...........................................................12, 18

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - iii -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Gifford Pinchot Task Force v. U.S. Fish & Wildlife Service,
    378 F.3d 1059 (9th Cir. 2004) ......................................................................1

Greater Boston Television Corp. v. FCC,
    444 F.2d 841 (D.C. Cir. 1971)....................................................................16

Independent Meat Packers Association v. Butz,
    526 F.2d 228 (8th Cir. 1975), cert. den., 424 U.S. 966 (1976).........................14

Lands Council v. McNair,
    57 F.3d 981 (9th Cir. 2008) ......................................................................19

Lands Council v. Powell,
    395 F.3d 1019 (9th Cir. 2005) ...............................................................4, 5, 6

League of Wilderness Defenders v. Forest Service,
    549 F.3d 1211 (9th Cir. 2008) ....................................................................1

National Audubon Society v. Forest Service,
    4 F.3d 832 (9th Cir. 1993) ........................................................................3

National Wildlife Federation v. Morton,
    393 F. Supp. 1286 (D.D.C. 1975)................................................................14

Native Ecosystems Council v. Forest Service,
    418 F.3d 953 (9th Cir. 2005) ....................................................................16

Romero-Barcelo v. Brown,
    643 F.2d 835 (1st Cir. 1981)......................................................................14

Sierra Club v. Clark,
    756 F.2d 686 (9th Cir. 1985) ................................................................12, 15

Smith v. Forest Service,
    33 F.3d 1072 (9th Cir. 1994) .....................................................................3

Westlands Water District v. U.S. Department of Interior,
    376 F.3d 853 (9th Cir. 2004) ...................................................................8, 9

## REGULATIONS

36 C.F.R. § 212.5(b)(1)............................................................................19, 20

36 C.F.R. § 212.52(b)(2)...............................................................................19

36 C.F.R. § 212.55(b)(1)........................................................................10, 11, 15

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

40 C.F.R. § 1507.8 ...................................................................................................6

43 C.F.R. § 8342.1(a) .............................................................................................10

## MISCELLANEOUS

Fed. R. Civ. P. 25(d)(1) ...........................................................................................1

70 Fed. Reg. 68264 (Nov. 9, 2005) .......................................................................11

72 Fed. Reg. 43223 (Aug. 3, 2007) ........................................................................19

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

INTRODUCTION

Plaintiffs, Idaho Conservation League and The Wilderness Society ("ICL"), seek judicial review of the Record of Decision ("ROD") and Final Environmental Impact Statement ("FEIS") for the Travel Management Plan for the Salmon-Challis National Forest because the Plan fails to comply with the National Environmental Policy Act ("NEPA"), Forest Service travel management regulations, and governing Executive Orders.  ICL has moved for summary judgment on these claims; the Forest Service has opposed and filed a cross-motion.  For the reasons described below, the Court should deny the Forest Service's motion and grant ICL's motion.

STANDARD OF REVIEW

There is no real dispute between ICL and the Forest Service regarding the standard of review.  The parties agree that summary judgment is appropriate and that the Court's review is based on the administrative record (with limited exceptions), employing the standard courts have articulated for review of final agency action under the Administrative Procedure Act.  The Forest Service emphasizes the deferential nature of this review, see Forest Service Summary Judgment Memorandum ("FS SJ Mem.") at 2 (citing a case from the Eleventh Circuit for the proposition that this review is "extremely limited").  ICL emphasizes that even though the Court's review is deferential, it is still a "thorough, probing, in depth review," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), in which the Court must determine whether the agency has articulated a "rational connection between the facts found and the decision made," Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv., 378 F.3d 1059, 1065 (9th Cir. 2004), and must reject the agency decision if it is based on an erroneous interpretation of law or "'entirely failed to consider an important aspect of the problem or offered an explanation 'that runs counter to the evidence before the agency,'" League of Wilderness Defenders v. Forest Serv., 549 F.3d 1211,

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1215 (9th Cir. 2008).[2]

## ARGUMENT

I.    THE FEIS FOR THE SALMON-CHALLIS TRAVEL PLAN VIOLATES NEPA.

A.    <u>The FEIS Fails to Address the Cumulative Impacts of Newly-Authorized and
      Existing Motorized Routes on Inventoried Roadless Areas and Recommended
      Wilderness Areas.</u>

ICL has explained that the FEIS for the Salmon-Challis Travel Plan fails to address the

cumulative impacts of newly-authorized motorized routes in inventoried roadless areas ("IRAs")

and recommended wilderness areas ("RWAs"), in combination with the effects of existing

authorized routes in these areas, on the areas' roadless and wilderness values.  <u>See</u> ICL Summary

Judgment Memorandum ("ICL SJ Mem.") at 4-8.  The Forest Service does not dispute that the

FEIS says there are no cumulative effects to the roadless and wilderness character of these areas

from adoption of the Travel Plan.  <u>See</u> FS SJ Mem. at 11; <u>see also</u> AR046408 (FEIS at 3-26).

Nor can it dispute that there are literally hundreds of miles of previously-authorized motorized

routes in these areas that will continue to receive motorized use and have and will affect the

roadless and wilderness character of these areas, in combination with the impacts of the newly-

authorized routes.  FS SJ Mem. at 11 (explaining how to derive the total number of miles of new

and existing authorized routes in these areas).[3]

---

[2] Both the Forest Service and *amici* make a point of repeatedly describing their view of ICL's
interests that support its standing to pursue this case and inferring that the nature of these
interests somehow affects the merits of ICL's claims.  <u>See</u> FS SJ Mem. at 1 (asserting that ICL's
"members use the Forest for almost exclusively non-motorized recreation" and concluding that
ICL "would prefer even stricter limits on motor vehicle use" of the Forest), 17 (same), 31
(same); <u>see also</u> *Amicus* Mem. at 16 (similar statements).  Apart from establishing standing, the
nature of ICL's interests in the Salmon-Challis Forest and the characterization of ICL's
preferences by the Forest Service and *amici* are not relevant.  The relevant issue is whether, as
ICL asserts, the agency has failed to comply with the requirements of NEPA and failed to meet
its responsibilities under the forest management regulations and Executive Orders.

[3] The Forest Service asserts that the Court should disregard as improper extra-record evidence
the Declaration of Henry Wilmer.  FS SJ Mem. at 9-10 & n.3; 21 & n.9.  As ICL has explained,
the Wilmer declaration and maps illustrate information that is in the record and now illustrate a
point that is not in dispute – that there are hundreds of miles of existing, authorized motorized

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 2 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Instead, the agency seeks to divert the Court's attention, first by asserting that the FEIS adequately addressed the effects of all motorized use throughout the Forest, including in IRAs and RWAs, because it considered the combined effects of all routes across the Forest on other resources like soil, water, and wildlife.  FS SJ Mem. at 9.  This is a red herring; the agency specifically identified the impacts of motorized use on the character and value of IRAs and RWAs as separate issues from impacts to soil, water, wildlife and similar resources.  See AR046276 to AR046277 (FEIS at S.3 to S.4) (listing issues analyzed in depth and identifying "roadless character" and "wilderness" separately from water, soil, fisheries, and wildlife); AR046309 to AR046316 (FEIS at 1-17 to 1-20) (also identifying these distinct issues).  It cannot now claim that one particular aspect of this separate, significant issue – the cumulative impacts of motorized use on the character and value of IRAs and RWAs – is somehow addressed sub silentio in its consideration of impacts to other resources such as soil, water and wildlife.[4] Moreover, Ninth Circuit case law makes clear that an assessment of the environmental effects of a proposed action on the roadless character and value of IRAs is a distinct assessment.  See Smith v. Forest Serv., 33 F.3d 1072, 1077-79 (9th Cir. 1994) (rejecting NEPA documents that failed to consider effects of action on roadless character of an area); see also Nat'l Audubon Soc'y v. Forest Serv., 4 F.3d 832, 836 (9th Cir. 1993) (concluding that prohibition on consideration of area for wilderness did not excuse failure to address impacts to roadless character).  As a matter of both fact and law, the agency cannot plausibly rescue its failure to

---

routes in IRAs and RWAs that have been and will continue to be open to motorized use, in addition to the 109.4 miles of newly-authorized routes under the preferred alternative.  See FS SJ Mem. at 11 (acknowledging that there are nearly 800 miles of previously-authorized motorized routes in these areas in addition to the newly-authorized routes) but see AR046398 to AR046405 (FEIS at 3-16 to 3-26) (assessing exclusively the effects of the newly-authorized routes under each alternative on IRAs and RWAs).

[4] Nor can the agency rely on whatever discretion it may possess to shape a cumulative impact assessment, see FS SJ Mem. at 8 (quoting CEQ NEPA Guidance), to excuse a failure to provide an assessment of cumulative impacts for IRA and RWA at all.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

address the cumulative effects of new and existing motorized routes on the wilderness and roadless character of IRAs and RWAs by pointing to analyses of other issues.[5]

Nor is the elimination of most cross-country motorized travel as required by the travel management regulations, or the closure to motorized use of some existing routes, see FS SJ Mem. at 10-11 (describing these closures), relevant to whether the agency has provided an assessment of the combined impacts on IRAs and RWAs of all of the routes in these areas that have been, and will be, open to motorized use.  The agency cannot dispute that it took affirmative action in the Travel Plan and authorized motorized use of 109.4 miles of routes in IRAs and RWAs where such use had not previously been authorized.  That is the action the FEIS identifies.  See AR046400 (FEIS at 3-18).  The issue then, for purposes of a cumulative effects analysis, is not what other actions the agency did not take, but how the impacts of the newly-authorized routes it did approve will combine with the existing effects of past use (both authorized and unauthorized) and the continuing impacts of use of existing authorized routes on the roadless and wilderness character of IRAs and RWAs.[6]  The Forest Service acknowledges that there are a total of 892 miles of newly-authorized routes together with existing motorized routes in IRAs and RWAs under the preferred alternative.  FS SJ Mem. at 11.  Yet the FEIS

---

[5] Indeed, the recognition that it is the cumulative effects of both new and existing routes that will impact other resources like water quality and wildlife, see, e.g., AR046410 to AR046430 (FEIS at 3-28 to 3-48) (analyzing cumulative effects of all authorized routes on water quality), highlights the agency's failure to address the cumulative effects of new and existing routes on IRAs and RWAs.  For no other resource does the agency separate and single out for analysis only the newly-authorized routes.

[6] As ICL predicted, see ICL SJ Mem. at 8 & n.4, the Forest Service argues that because the travel management regulations do not require it to make a new decision to re-authorize previously authorized routes, it does not need to consider the cumulative impacts of these existing routes together with newly-authorized routes, FS SJ Mem. at 10 & n.4.  This argument confuses the scope of a decision with the scope of impacts that must be considered before making that decision.  See ICL SJ Mem. at 8 & n.4.  If the agency were correct that decisions already made need not be addressed in a cumulative impacts assessment, there would be no need to assess the impacts of past timber sales together with those of a new sale.  But see Lands Council v. Powell, 395 F.3d 1019, 1027-28 (9th Cir. 2005) (discussing the need for a detailed and rigorous assessment of cumulative impacts of current and past actions).

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

addresses the effects on roadless and wilderness values of only the 109.4 miles of newly-authorized routes in order to conclude – improperly – that there will be no cumulative impacts to the roadless and wilderness character of these areas.[7]

The agency cannot satisfy NEPA's requirements to fully describe and evaluate the cumulative impacts of all past and reasonably foreseeable future action by, in effect, describing only the portion of the "iceberg" of environmental effects that is above the waterline (the 109.4 miles of newly-authorized routes in IRAs and RWAs) while ignoring the nine-tenths of that "iceberg" below the waterline (the several hundred miles of existing, authorized routes in these areas).

> B.   The FEIS Fails to Address the Cumulative Impacts of Numerous Short Motorized Routes on IRAs and RWAs.

The Forest Service has no better response for its failure to consider the cumulative impacts of multiple, short motorized routes on IRAs and RWAs.  See ICL SJ Mem. at 8-10 (describing this failure).  Rather than acknowledge that the FEIS fails to address these cumulative effects, the agency asserts that each individual short route – standing alone – has no potential environmental effects.  FS SJ Mem. at 13-16.

As the agency's own record demonstrates, this position misses the point: the combined effects of multiple short motorized routes may significantly erode the roadless and wilderness character of these areas, ICL SJ Mem. at 10 (citing and quoting AR047515), but these potential

_____

[7] The agency's attempt to distinguish Lands Council v. Powell, 395 F.3d 1019 (9th Cir. 2005), is both irrelevant and wrong.  It is irrelevant because the issue in this case is the agency's failure to provide any cumulative impacts analysis for the effects on roadless and wilderness character from newly-authorized and existing motorized routes, not the sufficiency of the analysis.  It is wrong because, just as in Lands Council, there are hundreds of miles of routes previously authorized for motorized use in IRAs and RWAs, more in some of these areas and fewer in others, that will combine in particular ways with the impacts of the new routes in each area to affect roadless and wilderness values and it is these combined effects that must be fully disclosed and identified.  Generally describing effects on fisheries, FS SJ Mem. at 12 (citing discussion of cumulative effect to fisheries), is no substitute for a required assessment of the cumulative effects of motorized use on individual IRAs and RWAs and their roadless and wilderness values.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

combined effects were never described or considered. The agency simply repeats in its brief the statement from the FEIS that each individual route of less than one-half mile was "considered to be minimally intrusive and not likely to affect wilderness values," FS SJ Mem. at 13 (quoting AR046399 (FEIS at 3-17)), and seeks to dismiss as immaterial its own expert's response to this narrow focus on each individual half-mile segment, see id. at 13 & n.5 but see AR047515 (agency email of July 6, 2009) ("[w]hen you add ten of those half-mile segments together, however, then you might begin to impact [the wilderness potential of an IRA or RWA]"). What the agency cannot do is point to any evidence in the record where it evaluates the cumulative effects of multiple short routes in an IRA or RWA and concludes that these are not significant. See 40 C.F.R. § 1507.8 (CEQ NEPA regulations defining cumulative impacts as those arising from actions that are "individually minor but collectively significant").

The omission of any analysis of these combined effects is fatal to the agency's position and it cannot be cured by an attempt to argue in its brief that the combined effects of these short routes must be insignificant because there are so few of them. See FS SJ Mem. at 13-16. Even if this analysis were adequate (and it is not),[8] it is in the agency's brief, not the FEIS or the administrative record. The FEIS simply fails to address the cumulative impacts of multiple short routes on IRAs and RWAs.

      C.     The FEIS Fails to Consider an Adequate Range of Alternatives.

ICL has explained that the FEIS also fails to consider an adequate range of alternatives as required by NEPA. See ICL SJ Mem. at 10-13. Again, the Forest Service seeks to distract the

---

[8] The agency also falls prey to its own misguided view of how to assess cumulative effects: in its brief it asserts that there are only a few such routes in IRAs and RWAs on each district, but its calculation of these numbers is based only on the newly-authorized short routes in these areas, see FS SJ Mem. at 13 (citing FEIS App. C, which lists only newly-authorized routes in IRAs and RWAs). This approach ignores the overall combination of new and existing short routes in each IRA or RWA and so would be inadequate even if it were in the FEIS or record, see generally AR046872 to AR047027 (FEIS, App. H at H-4 to H-159, listing all routes for preferred alternative which includes literally dozens and dozens of short routes, many of which undoubtedly are in IRAs or RWAs).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Court's attention from the central issue by arguing that all of the alternatives reduce the total number of miles of motorized routes (roads and trails) across the Forest, and in IRAs and RWAs, from the total number of miles of motorized routes under the "no action" alternative.  See FS SJ Mem. at 19-21.  ICL's point, however, is that in IRAs and RWAs – which constitute over 70% of the Forest and where the extent of motorized use was specifically identified as a significant issue – there is very little difference among the action alternatives in terms of the number of miles of such routes that remain open to motorized use, the factor that will most affect the environment in these areas.  In fact, by the agency's own admission, none of the action alternatives considers closing more than 43% of the existing total of 1,380 miles of motorized routes in these areas, FS SJ Mem. at 21, leaving more than half the spectrum of available alternatives for balancing motorized use and other uses unexamined.[9]

The agency's only explanation in the record for this less-than-half-the-spectrum range of alternatives is that it considered and rejected as unworkable an alternative that would have closed all motorized routes in IRAs.  See AR046329 (FEIS at 2-2).[10]  This straw-man, however, fails to address the critical issue: why the agency did not consider as reasonable any alternative that

_____

[9] Nor can the agency claim it had no specific information from which to develop additional reasonable alternatives.  In its comments, ICL noted for each trail segment it addressed whether the segment was considered for closure or other protective measures in one or more of the existing alternatives or whether none of the alternatives addressed the particular evidence of resource damage.  See AR043587 to AR043602 (ICL spreadsheet, entries in column labeled "per alternative").  Even granted that the purpose of the Travel Plan is, in part, to "address[] current and anticipated recreation needs" and "provide[] a variety of recreation opportunities," FS SJ Mem. at 17 (quoting FEIS), its purpose also is to protect forest resources.  The agency has failed to explain in the FEIS or the record why it did not consider reasonable any alternative that would limit motorized use on any more than 43% of the 1,380 miles of motorized routes in IRAs and RWAs.

[10] The agency's brief claims that the range of route densities across the entire Forest shows its alternatives are reasonable, FS SJ Mem. at 20 (citing FEIS Table 2-30), also fails.  First, this table addresses wildlife impacts.  Second, for the four action alternatives, the range is quite narrow with route densities of .64, .64, .89, and .73 miles per square mile.  Finally, route densities across the entire forest reveal nothing about the range of alternatives (or route densities) for motorized use of IRAs and RWAs, a significant issue in the FEIS.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 7 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

would have closed as much as half or even more of the motorized routes in these areas.  See Ctr. for Biological Diversity v. Interior, 581 F.3d 1063 (9th Cir. 2009) ("'The existence of reasonable but unexamined alternatives renders an EIS inadequate.'") (quoting Friends of Southeast's Future v. Morrison, 153 F.3d 1059, 1065 (9th Cir. 1998)).  In similar circumstances, the Ninth Circuit has rejected as inadequate a range of alternatives that failed to consider limiting development activities, including road-building, in any more than 35% of roadless areas.  See California v. Block, 690 F.2d 753, 765-69 (9th Cir. 1982).[11]  The shift upward in the Salmon-Challis Travel Plan from 35% to 43% hardly converts the range of alternatives for motorized use of IRAs and RWAs in the Travel Plan into a reasonable one.  The point is that neither the FEIS in Block nor the FEIS here actually examined a balanced or full range of reasonable alternatives as NEPA and the relevant case law require.[12]

II.   THE SALMON-CHALLIS TRAVEL PLAN IS CONTRARY TO THE PLAIN LANGUAGE OF THE TRAVEL MANAGEMENT REGULATIONS AND IS ARBITRARY AND CAPRICIOUS.

ICL does not seek to "usurp" the Forest Service's role in travel management planning.

---

[11] The agency's comparison of the total miles of motorized routes, including roads, and the total acres closed to cross-country travel, across all of the Salmon-Challis National Forest, FS SJ Mem. at 18-20, is also irrelevant.  The range in number of miles of motorized routes, including roads, both in and outside IRAs and RWAs does nothing to show that the range of alternatives for motorized use within these areas is reasonable, especially where the agency admits that IRAs and RWAs are unique resources, constitute over 70% of the Forest, and by definition exclude motorized routes that are roads.  Likewise, the total number of acres on the Forest closed to cross-country motorized travel is simply an artifact of the off-route corridor widths of the travel regulations and the Travel Plan multiplied by the miles of motorized routes for each alternative.

[12] Westlands Water Dist. v. Interior, 376 F.3d 853, 870-72 (9th Cir. 2004) (cited in FS SJ Mem. at 22), is not to the contrary.  What is missing in the FEIS here is not more "mid-range" alternatives, id. at 871, but any alternatives that even reach the mid-range or any explanation to show why such alternatives are not reasonable.  Even if closing all motorized routes in IRAs and RWAs is not reasonable, that does not explain why closing 45%, 60%, or even 72% of them is unreasonable.  Likewise, the Ctr. for Sierra Nevada Conservation v. Berry case amici cite, see Amicus Mem. at 9-10, is inapposite.  ICL does not challenge the FEIS because it failed to adopt the alternative with the fewest roads, but because it failed to consider a full and reasonable range of alternatives, one of which the agency might have adopted to meet its substantive duties.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 8 -

Earthjustice
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

FS SJ Mem. at 22.  Rather, ICL asks the Court to ensure that the agency complies with the unambiguous requirements of its own regulations and the Executive Orders that govern off-road vehicle use.  The Forest Service attempts to obscure these requirements – and its actions – behind a shield of deference.  But the agency is not entitled to deference when its interpretation of its own regulations is contrary to the plain language of those regulations and at odds with governing Executive Orders.  Further, the administrative record shows that the agency failed to consider available and relevant evidence of resource damage from motor vehicle use and failed to explain its actions in light of this evidence and the applicable legal standards.

> A.    <u>Forest Service Regulations Require the Agency to Minimize the Adverse Effects of Motor Vehicle Use.</u>

The Forest Service attempts to support the Salmon-Challis Travel Plan and ROD by drawing a distinction between the Bureau of Land Management's ("BLM") regulations establishing criteria for motor vehicle use and those of the Forest Service.  FS SJ Mem. at 23-25.  At bottom, the agency argues that its regulations are less protective of federal lands than those of the BLM, asserting that the BLM regulations "are entirely prescriptive, while the Forest Service regulations require consideration of effects without mandating a particular outcome."  <u>Id.</u> at 25.  This watered-down reading is contrary to the plain language of the Forest Service travel management rules and is not entitled to deference.  <u>See</u> <u>Christensen v. Harris County</u>, 529 U.S. 576, 588 (2000) ("[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation").  Moreover, even if the Court concludes that the agency interpretation of its regulations deserves deference, Executive Orders 11644 and 11989 establish clear, independent, and enforceable requirements to actually minimize resource damage from motorized use.

> 1.    *The Forest Service interpretation of the travel management regulations conflicts with the plain language of the regulations.*

The Forest Service travel management regulations state that "in designating National

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Forest System trails and areas . . . the responsible official <u>shall consider effects on the following,</u> <u>with the objective of minimizing</u>: (1) Damage to soil, watershed, vegetation, and other forest resources."  36 C.F.R. § 212.55(b)(1) (emphasis added).  The parallel BLM regulations state that "[a]reas and trails <u>shall be located to minimize damage</u> to soil, watershed, vegetation, air, or other resources of the public lands, and to prevent impairment of wilderness suitability." 43 C.F.R. § 8342.1(a).  The Forest Service reads the addition of the words "consider" and "objective" to its regulation to make the duty to minimize impacts from motorized use either optional or, at best, a duty to simply reduce those impacts to some degree.

The plain language of the Forest Service regulation, like the BLM regulation, however, sets forth a mandatory, substantive duty for the Forest Service to <u>minimize</u> damage to soil, watershed, vegetation, and other forest resources when it authorizes routes for motorized use. The word "consider" in the Forest Service regulation refers to the effects of motorized use on specific resources and mandates a procedure – consideration – but does not modify the substance of the agency's duty.  Likewise, the addition of the word "objective" does not make the substantive duty – to minimize impacts to "soil, watershed, vegetation, and other forest resources" – optional.  An objective is a goal to be achieved unless it cannot be accomplished. <u>See</u> The American Heritage College Dictionary (3d ed. Houghton Mifflin Co. 2000) (defining "objective" as "something that actually exists" or "[s]omething worked toward or striven for; a goal").  The agency is not relieved of the duty to minimize impacts by the word "objective;" rather, the plain language of the regulation requires the agency to actually accomplish precisely that "objective" unless it can articulate a rational, substantive, and legally sufficient reason it cannot do so.  In short, as to each specific resource criterion, both the Forest Service and BLM regulations, consistent with the express terms of Executive Order 11644, set forth a mandatory duty to <u>minimize</u> the negative impacts of motor vehicle use on the federal public lands.

This interpretation of the Forest Service regulation, based on its plain language, is

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

reinforced by a separate provision of the regulations pertaining to motor vehicle use in populated areas.  See 36 C.F.R. § 212.55(b)(5).  Unlike the criteria discussed in subparts (1) through (4) of 36 C.F.R § 212.55(b) and addressed above, under subsection (b)(5), the responsible official "shall consider," but is not required to "consider, with the objective of minimizing" the compatibility of motor vehicle use with existing conditions in populated areas.  While this compatibility provision has its own substantive requirements, the separation of the compatibility provisions in 36 C.F.R § 212.55(b)(5) from the enumerated minimization criteria in § 212.55(b)(1)-(4) demonstrates that the Forest Service chose, after notice and comment, to promulgate regulations that require it to consider and address certain impacts in one way and consider and minimize impacts to other enumerated resources, not merely show that the impacts have been acknowledged in some way but to no particular end.

Forest Service statements in response to public comments accompanying publication of its final travel management rules (described by the agency as the "preamble" to the Travel Management Regulations, FS SJ Mem. at 24) further reinforce the affirmative, mandatory duty to minimize impacts associated with vehicle use unless there is some barrier to doing so.  The Forest Service states that the phrase "the responsible official shall consider effects on the following, with the objective of minimizing" is "mandatory with respect to addressing environmental and other impacts associated with motor vehicle use of trails and areas."  70 Fed. Reg. 68264, 68281 (Nov. 9, 2005).[13]

---

[13] The agency now, however, emphasizes language in the same paragraph which states that "[a]n extreme interpretation of 'minimize' would preclude any use at all, since impacts always can be reduced further by preventing them altogether.'" FS SJ Mem. at 24-25.  This statement misses ICL's point.  To be sure, at one extreme, achieving the objective of minimizing the effects of motorized use could be tantamount to a requirement to eliminate such use.  And ICL is mindful of the fact that the Forest Service must also consider factors such as the provision of recreational opportunities, access needs, and conflicts among uses of National Forest System lands under 36 C.F.R. § 212.55(a) when developing a Travel Management Plan.  Still, well away from the extreme the agency posits in its brief is what the plain language of the regulation actually says – that the agency is required to minimize the impacts of motorized use to specific resources unless there is some identifiable reason this objective cannot be accomplished.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 11 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

ICL submits that the operative word "minimize" in the regulation must be given its plain meaning, that this meaning is not optional or synonymous with merely "reduce" to some unspecified degree, but that instead the word minimize means – "to reduce to the smallest possible amount, extent, size or degree," see The American Heritage College Dictionary (3d ed. Houghton Mifflin Co. 2000), consistent with other physical or legal limitations.[14]

> 2.   *Center for Biological Diversity v. BLM confirms that the Forest Service must explain how its travel management plan meets the minimization criteria.*

The Forest Service attempts to eat its cake and have it too when it comes to the parallels between BLM and Forest Service travel management regulations.  The agency is quick to cite cases involving BLM regulations when it believes they are favorable.  See FS SJ Mem. at 23, 28, & 31 (citing Gardner v. Bureau of Land Mgm't, 633 F. Supp. 2d 1212, 1227 (D. Or. 2009)); id. at 23, 28, 31, & 32 (citing Sierra Club v. Clark, 756 F.2d 686 (9th Cir. 1985)).  Nonetheless, the agency argues that Ctr. for Biological Diversity v. BLM, No. C06-4884-SI, slip op. (N.D. Cal. Sept. 28, 2009), is inapposite.  FS SJ Mem. at 23-24.  As explained above, however, there is no meaningful distinction between the BLM and the Forest Service regulations: both require each agency to minimize the adverse effects of motor vehicle use when designating routes for such use on the federal public lands.  In the absence of the agency's untenable legal distinction, Ctr. for Biological Diversity is persuasive authority that a failure to actually show how the minimization criteria are reflected in the particular route designations is fatal to a decision

---

[14] The Supreme Court's decision in Entergy Corp. v. Riverkeeper, Inc., 129 S. Ct. 1498, 1509 (2009) further supports ICL's argument.  There, the Court noted in the context of the Clean Water Act that "minimize" was a term that admitted of degree and was not necessarily used to refer exclusively to the greatest possible reduction, especially where the agency had articulated a rational explanation for selecting less than the maximum reduction that could be achieved.  Id. Here, the Forest Service has failed to offer a cost-benefit analysis or provide any other rational account of its particular route designation choices in order to show how the agency actually achieved the objective of minimizing resource damage.  Arguing for an interpretation of the regulation that seeks to simply remove the requirement to minimize impacts – or substituting an alternate requirement to merely reduce them – is both insufficient and legally erroneous.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

implementing the regulations and Executive Orders.  Ctr. for Biological Diversity v. BLM,
No. C06-4884 SI, slip op. at 30 (explaining that "'[m]inimize' as used in the regulation does not
refer to the number of routes, nor their overall mileage," but rather "the effects of route
designations, i.e., the BLM is required to place routes specifically to minimize 'damage' to
public resources, 'harassment' and 'disruption' of wildlife and its habitat, and minimize
'conflicts' of uses") (emphasis in original).  As discussed further below, see infra at 16-20, the
Forest Service has failed to "show its work" with respect to how its route designations in the
Salmon-Challis Travel Plan actually minimize impacts to the resources enumerated in the
regulations.

> 3.    *Executive Order 11644, as amended, independently requires the Forest
> Service to minimize adverse effects of motor vehicle use.*

For the reasons set forth above, the Forest Service is incorrect in arguing that its travel
management regulations are substantively different from the BLM regulations even though both
implement Executive Order 11644.  If the Court concludes, however, that the Forest Service
regulations require only consideration of impacts to forest resources, without any duty to actually
minimize those effects (a conclusion it should not reach), it should also find that the language of
Executive Order 11644 itself independently imposes on the Forest Service a requirement to
minimize the impacts of off-road vehicles on public lands.

Section 3 of Executive Order 11644 sets forth specific standards for allowing motorized
use that the Forest Service and other public land management agencies must meet:

> (1) Areas and trails shall be located to minimize damage to soil, watershed,
> vegetation, or other resources of the public lands.

> (2) Areas and trails shall be located to minimize harassment of wildlife or
> significant disruption of wildlife habitats.

> (3) Areas and trails shall be located to minimize conflicts between off-road
> vehicle use and other existing or proposed recreational uses of the same or
> neighboring public lands, and to ensure the compatibility of such uses with
> existing conditions in populated areas, taking into account noise and other factors.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Exec. Ord. 11644 at § 3 (emphasis added).  As the courts have explained, this language provides "some of the substantive legal standards against which the Secretary [of the Interior]'s actions are reviewed under the APA."  Conservation Law Found. v. Clark, 590 F. Supp. 1467, 1477 (D. Mass. 1984), aff'd 864 F.2d 954 (1st Cir. 1989).  The Court in Clark also explained that Executive Order 11644 "sets forth in unambiguous and mandatory language the criteria that are to be employed in the designation of areas and trails for the use or non-use of ORV's."  Id. at 1479 (quoting Nat'l Wildlife Fed'n v. Morton, 393 F. Supp. 1286, 1295 (D.D.C. 1975)).

Moreover, a failure to comply with the requirements of Executive Order 11644, as amended, is itself reviewable under the APA.  Conservation Law Found., 590 F. Supp. at 1477-78 (holding that Order 11644 is "invested with the status of law" and enforceable), aff'd, 864 F.2d 954, 959-60 (1st Cir. 1989); see also City of Albuquerque v. U.S. Dep't of Interior, 379 F.3d 901, 913-19 (10th Cir. 2004); City of Carmel-by-the-Sea v. U.S. Dep't of Transp., 123 F.3d 1142, 1166 (9th Cir. 1997) (holding that two executive orders relating to floodplain management and wetlands impacts, respectively, were subject to judicial review under the APA).  The Ninth Circuit panel in City of Carmel explained that agency compliance with an executive order is reviewable under the APA if: (a) the order "do[es] not preclude judicial review" and (b) "there is 'law to apply.'"  123 F.3d at 1166.  Here, neither the plain language of Executive Order 11644 nor Executive Order 11989 prohibits review.  Further, both Orders were issued "in furtherance of the purpose and policy of [NEPA]" and so provide law to apply.  See Exec. Ord. 11644; Exec. Ord. 11989.[15]

The Forest Service argues that because it has promulgated regulations implementing Executive Orders 11644 and 11989, the requirements of the Orders no longer apply.  See FS SJ

---

[15] As the courts have explained, executive orders are constitutionally invested with the status of law if they have "some basis in an act of Congress," Romero-Barcelo v. Brown, 643 F.2d 835, 844 (1st Cir. 1981) or, stated differently, if they are issued "pursuant to either a statutory mandate or delegation of authority from Congress," Indep. Meat Packers Ass'n. v. Butz, 526 F.2d 228, 234-235 (8th Cir. 1975), cert. den., 424 U.S. 966 (1976).

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Mem. at 22 (citing <u>Sierra Club v. Clark</u>, 756 F.2d 686, 690 (9th Cir. 1985), for the proposition

that "the regulations are the proper focus of Plaintiffs' claims").  However, courts that have

analyzed regulations implementing Executive Order 11644 have discussed the requirements of

the Order in addition to the regulations and indicated that the Order provides independent legal

requirements.  <u>See</u> <u>Am. Motorcyclist Ass'n v. Watt</u>, 543 F. Supp. 789 (C.D. Cal. 1984) (noting

that "both 43 C.F.R. § 8342.1 <u>and</u> E.O. 11,644 require that routes for off-road vehicles [] be

selected so as to minimize adverse environmental effects," but concluding that because the desert

conservation area plan at issue was inconsistent with BLM regulation, "it [was] unnecessary to

determine whether the provisions of E.O. 11644 would <u>also</u> justify granting the relief sought by

plaintiffs") (emphasis added).  In short, Executive Order 11644 as amended still sets an

independent and enforceable requirement for the Forest Service to minimize impacts from motor

vehicle use.[16]

      B.    <u>The Forest Service Has Not Shown How the Salmon-Challis Travel Plan Meets
the Minimization Requirements.</u>

Notwithstanding its insistence that Forest Service regulations do not require it to

minimize adverse effects from motor vehicle use, FS SJ Mem. at 23-25, the Forest Service

argues that it "complied with its obligations to consider the effects and minimize the impacts of

motorized recreation in the Forest."  <u>Id.</u> at 25.  To be sure, the agency provides examples of how

impacts from motorized use have been <u>reduced</u> as compared to the No-Action Alternative.  FS SJ

Mem. at 25-27.  This response, however, like the administrative record for the Salmon-Challis

Travel Management Plan itself, fails to explain or show how the agency's decisions have

actually <u>minimized</u> impacts from motor vehicle use pursuant to 36 C.F.R. § 212.55(b) and

---

[16] <u>Sierra Club v. Clark</u> does not suggest that Executive Orders 11644 and 11989 no longer have
independent force.  <u>But see</u> FS SJ Mem at 22 & n.10.  Instead, in that case, the district court
"declined to rule whether the [BLM] Regulation and the Executive Orders apply to the
[California Desert Conservation Plan]."  <u>Clark</u>, 756 F.3d at 689.  While the court of appeals
discussed the BLM regulation, it did not actually address the Executive Orders or indicate they
are no longer relevant.  <u>Id.</u> at 689-92.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 15 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98101*
*(206) 343-7340*

Executive Order 11644.  See Ctr. for Biological Diversity, No. C06-4884-SI, slip op. at 30 (rejecting the position that some reduction of impacts at a general scale is sufficient and noting that the BLM failed to "document analysis of [BLM's] minimization criteria").

> 1. *The APA requires the Forest Service to explain how its decision meets the minimization criteria of the travel management regulations.*

Established principles of administrative law require an agency to adequately explain its reasoning.  "[A]n agency action accompanied by an inadequate explanation constitutes arbitrary and capricious conduct."  Fed. Election Comm'n v. Rose, 806 F.2d 1081, 1088 (D.C. Cir. 1986); see also Native Ecosystems Council v. Forest Serv., 418 F.3d 953, 960 (9th Cir. 2005) ("[t]o have not acted in an arbitrary and capricious manner, the agency must present a rational connection between the facts found and the conclusions made") (internal quotations omitted).  "Whether in explaining its decision an agency has passed from the 'tolerably terse to the intolerably mute,' . . . depends on whether, as the Supreme Court has put it, the reviewing court can reasonably discern the path that the agency took in coming to its decision."  Rose, 806 F.2d at 1088 (citing Bowman Transp. v. Arkansas-Best Freight Systems, 419 U.S. 281, 286 (1974); Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C. Cir. 1971)).

Here, the administrative record for the Salmon-Challis Travel Plan is devoid of any explicit, let alone meaningful, discussion of how the Forest Service route designation decisions actually apply and meet the minimization criteria of the travel management regulations.  To merely state that the decisions it reached have reduced impacts to some degree in some places is insufficient to establish that the agency has discharged its duty to minimize such impacts.  See Rose, 806 F.2d at 1088; Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962).  The agency's erroneous interpretation of the travel management regulations to only require it to consider adverse impacts and reduce – but not necessarily minimize – those impacts has led to a decision that cannot rationally support a proper application of the regulations.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 16 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

2.      *The Forest Service has failed to explain its route designation decisions in light of the available evidence of resource damage from motor vehicle use.*

The Forest Service nonetheless asserts that it fully considered all of the evidence of resource damage.  See, e.g., FS SJ Mem. at 30.  Yet the agency does not point to any particular evidence in the record that reflects consideration of this information.  For example, the agency says in its brief that "[i]n response to Plaintiffs' public comments on the DEIS, the Forest Service modified its designation for [Hay Creek-Knapp Creek Trail] from the Draft EIS to the ROD."  Id. at 29.  But the Forest Service only cites generally to Appendix H in the DEIS, which lists proposed route designations under each of the proposed alternatives, and to tables in the FEIS and ROD that announce the final route designations.  Id. at 29.  Those tables offer no articulation of why the agency did or did not make a modification, or what factors and evidence it considered in doing so.  This is a particularly important omission in this instance since the specific modification the agency cites in its brief does not appear to be accurate.  Neither of the two sections of the Hay Creek-Knapp Creek Trail (Trail #4032) the agency cites, id. at 29 (citing AR046818 to AR46819 (FEIS, App. E-8 to E-9)), are designated for seasonal closure (code ATVD) as the agency claims, see AR406818 to AR406819 (FEIS, App. E-8 to E-9) (Trail #4032 designated as 2WL1 (two-wheeled use) for 12.57 miles and ATV1 (four-wheeled use) for 5.6 miles).  Moreover, even if there were a seasonal closure for this section of trail, the agency indicates it is closed from September to May which is not the season of high motorized use or the season when ICL documented resource damage to this section of the trail (July of 2008).  See AR43587 (ICL comments on Challis-Yankee Fork sections of Trail #4032 noting that it is not appropriate for motorized use at all, let alone ATV use).  Even if the agency intended to refer to the nine-mile segment of Trail #4032 on the Middle Fork District as seems likely, see AR406843 (which does include a seasonal closure (code ATVD) of part of a nine-mile trail segment), ICL's comments explained that this trail was so damaged it was unsuitable for any motorized use, see AR043597 (ICL comments on Trail #4032 stating in part, "motorized use of this trail is simply

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

not sustainable"). Likewise, the agency's other examples of alleged responses to evidence of damage, see FS SJ Mem. at 27-32, fail to point to evidence or explanation in the record that shows why the changes the agency cites are rationally calculated to address the available evidence and minimize the damage this evidence identifies.[17]

The agency again attempts to hide behind principles of deference to support an unexplained result. See FS SJ Mem. at 23, 28. In Gardner v. BLM, 633 F. Supp. 2d 1212 (D. Or. 2009) (which the agency cites), the court found the BLM's determination that there were not "considerable adverse effects" was entitled to deference because the plaintiff failed to supply any evidence to the contrary. Id. at 1226. Here, unlike Gardner, ICL has submitted extensive evidence of specific damage to resources on routes for which damage must be minimized. See ICL SJ Mem. at 16-23 (summarizing and explaining this evidence and providing illustrations of its relevance).[18] The problem is that the administrative record fails to show how the agency

---

[17] For example, the agency notes that designation for the Swauger Lake Trail was changed from "ALL1" (meaning the trail is open year-round to all vehicles less than 50 inches wide) to "2WL1" (meaning it is open to only two-wheeled vehicles year round). FS SJ Mem at 30. But again, the agency cites only Appendix H of the DEIS, which lists proposed route designations under each of the alternatives, and to the page of the ROD that reflects the ultimate designation of that route. Id. The pre-existing Salmon-Challis Forest Plan itself, as amended, however, limits the maximum motorized use of the Swauger Lakes Trail to two-wheeled vehicles (code 2WL1) because it is located in a Recommended Wilderness Area making the "ALL1" designation in the DEIS improper. See AR023094 (Forest Plan amendments, subpart 7c allows two-wheel vehicles on Swauger Lakes Trail). Thus the agency apparently is claiming credit for correcting its own mistake. More importantly, the agency never addresses whether use should be reduced below this maximum, or even eliminated altogether, on this trail because of evidence of resource damage. See AR043593 (ICL comments explaining extensive damage to this route from motorized use); see also AR043606 (ICL photo index for trail 091 (Swauger Lakes Trail) including photos 0595 to 0614 showing extensive resource damage). The story is similar for the other examples of routes discussed in the Forest Service brief: the agency cites evidence that it altered route designations, but fails to show how, based on the record, doing so is relevant to meeting its duty to minimize resource damage. See FS SJ Mem at 28-31 (discussing the Beaver Creek Trail, Winnemucca Creek Trail, and Valley Creek Trail but failing to cite evidence in the record that would explain how alterations to use of these trails even address evidence of resource damage, let alone minimize such impacts).

[18] This failure to specifically address evidence of resource damage is all the more confounding in light of the agency's repeated request for public comments about specific routes. See, e.g.,

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

actually considered this evidence, let alone how it concluded that its actions would minimize resource damage in light of the evidence as the regulations require.[19]

The Ninth Circuit has explained that an agency decision will be set aside where the agency "entirely failed to consider an important aspect of the problem."  Lands Council v. McNair, 57 F.3d 981, 987 (9th Cir. 2008) (*en banc*) (quoting Earth Island Inst. v. U.S. Forest Serv., 442 F.3d 1147, 1156 (9th Cir. 2006)).  The agency's failure to explain how its decisions minimize resource damage in light of evidence from ICL and others is arbitrary and capricious.[20]

      C.     The Court Should Affirmatively Set Aside the Minimum Road System Determination in the Salmon-Challis Travel Plan ROD.

The plain language of the Salmon-Challis Travel Plan ROD announces the determination of a minimum road system pursuant to 36 C.F.R. § 212.5(b)(1): "This travel management planning process has resulted in identification of the minimum road system necessary to meet the utilization (including recreation), protection, and administration needs of the SCNF."  AR047090

---

72 Fed. Reg. 43223, 43225 (Aug. 3, 2007) ("[t]o assist the Forest Service in identifying and considering issues and concerns on the proposed action[,]" "comments on the draft environmental impact statement should be as specific as possible" (emphasis added)); see also AR000021 (letter asking people to "make your comments as specific as possible in regards to individual trails, roads, and areas").  ICL took the agency up on this offer and made an extraordinary effort to systematically monitor trails in the Salmon-Challis National Forest and compile site-specific data for particular trails.  See Declaration of Brad Smith at ¶¶ 9-15, 18-19 (filed May 14, 2010) (Docket #26).  The agency's failure to actually address the evidence it specifically sought is inexplicable.

[19] The Forest Service does not even attempt to explain how a decision that leaves nearly every subwatershed that is at high risk of resource damage from motorized use before it adopted the Travel Plan still at high risk after it adopted the Plan, see ICL SJ Mem at 21-22 (discussing forest hydrologist report), satisfies its duty to minimize damage to this resource.  The agency's recitation of some reduction of total miles of roads in these watersheds across the Forest, FS SJ Mem. at 26-27, misses the point.  The record shows that other route designations would minimize risks in these subwatersheds, see AR031926 to AR031960 (Hydrologist Report at 38-72), but the agency has failed to explain why it failed to make these designations.

[20] The Forest Service also has failed to identify in the FEIS or ROD any specific route for closure to motorized use in order to comply with the requirements of 36 C.F.R. § 212.52(b)(2) or Section 9 of Executive Order 11644, as amended (i.e., immediate closure to avoid considerable resource damage).  See ICL SJ Mem. at 23-24.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98101*
*(206) 343-7340*

to AR047091 (ROD at 20-21) (emphasis added).  The Forest Service now attempts to disavow this decision.  FS SJ Mem. at 33.[21]  The agency has acted arbitrarily by either: (a) making a minimum road system determination without following the public notice or substantive requirements of the agency's regulations, see ICL SJ Mem. at 25-35; or, (b) announcing that it made a minimum road system determination when it did not.  Either way, the Court should specifically set aside the portion of the Travel Plan ROD concerning the minimum road system determination and vacate and remand to the agency for a new determination in order to insure that neither the current ROD, nor the FEIS and Travel Plan, are improperly used to limit or otherwise short-circuit the procedures for making a proper minimum road system determination.

CONCLUSION

The FEIS for the Salmon-Challis Travel Plan fails to meet the cumulative impact assessment and range of alternative requirements of NEPA.  The Forest Service also has misinterpreted its own travel management regulations, disregarding mandatory requirements of both the regulations and governing Executive Orders.  Finally, the agency record fails to show how the agency addressed the requirements of the regulations and Executive Orders in light of the available evidence of resource damage.  For all of these reasons, the Court should grant ICL's motion for summary judgment, deny the Forest Service's cross-motion, and vacate and remand the FEIS, ROD, and Travel Plan to the agency.

---

[21] The agency seeks to support this claim with cites to passing references to the minimum road system determination in the FEIS and elsewhere, id. (citing AR047570), while ignoring the plain language of its own ROD.  Further, ICL specifically challenged the minimum road system decision announced in the ROD in its administrative appeal, AR047341 to AR047348 (Statement of Reasons on Appeal at 13-20), but the deciding officer made no mention of this issue in denying ICL's appeal, let alone acknowledged that the agency had not made a minimum road system determination.  See AR47367 to AR47368 (appeal denial); see also AR047405 to AR047420 (appeal denial recommendation memorandum).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 20 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Respectfully submitted this 1st day of October, 2010.


/s/  Todd D. True
TODD D. TRUE (WSB #12864)
KEVIN E. REGAN (OSB #044825)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
(206) 343-1526 *[FAX]*
ttrue@earthjustice.org
kregan@earthjustice.org

LAUREN M. RULE (IB #6863)
Advocates for the West
P.O. Box 1612
Boise, ID  83701
(208) 342-7024
(208) 342-8286 *[FAX]*
lrule@advocateswest.org

*Attorneys for Plaintiffs Idaho Conservation League
and The Wilderness Society*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY   - 21 -

*Earthjustice
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340*

CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of Washington.  I am over

18 years of age and not a party to this action.  My business address is 705 Second Avenue, Suite

203, Seattle, Washington 98104.

I HEREBY CERTIFY that on October 1, 2010, I filed the following documents

electronically through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

1.  Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment Filed
    on September 10, 2010 (Dkt. #45) and Reply in Support of Plaintiffs' Motion for
    Summary Judgment Filed on July 30, 2010 (Dkt. #38); and
2.  Plaintiffs' Statement of Facts in Dispute.

Brian Collins
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
**Street Address**:
Patrick Henry Building – Room 3607
601 D Street, N.W.
Washington, D.C.  20004
(202) 305-0428
(202) 305-0267 *[FAX]*
brian.m.collins@usdoj.gov
*Attorney for Federal Defendants*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☐ via e-mail
☒ via electronic service by Clerk

Paul A. Turcke
Carl J. Withroe
Moore Smith Buxton & Turcke, Chartered
950 W. Bannock Street, Suite 520
Boise, ID  83702
(208) 331-1800
(208) 331-1202 *[FAX]*
pat@msbtlaw.com
cjw@msbtlaw.com
*Attorneys for Amici Recreation Groups*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☐ via e-mail
☒ via electronic service by Clerk

CERTIFICATE OF SERVICE   - 1 -

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

None

I, Catherine Hamborg, declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st day of October, 2010, at Seattle, Washington.

Catherine Hamborg

CERTIFICATE OF SERVICE   - 2 -