WENDY J. OLSON
United States Attorney
JOANNE P. RODRIGUEZ
ID Bar #2996
Assistant U.S. Attorney
District of Idaho
800 Park Blvd., Ste 600
Boise, ID 83712

IGNACIA S. MORENO
Assistant Attorney General, ENRD
BRIAN M. COLLINS
TX Bar #24038827
Trial Attorney
U.S. Department of Justice, ENRD
P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 305-0428
Facsimile: (202) 305-0267
Email: brian.m.collins@usdoj.gov

ATTORNEYS FOR DEFENDANTS FRANK V. GUZMAN
AND UNITED STATES FOREST SERVICE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **IDAHO CONSERVATION LEAGUE** | ) | |
| **and THE WILDERNESS SOCIETY,** | ) | **CIV No. 10-26** |
| | ) | |
| **Plaintiffs,** | ) | **REPLY IN SUPPORT OF** |
| | ) | **DEFENDANTS' CROSS-MOTION FOR** |
| **v.** | ) | **SUMMARY JUDGMENT FILED ON** |
| | ) | **SEPTEMBER 10, 2010 (DKT. #45)** |
| **FRANK  V. GUZMAN and the U.S.** | ) | |
| **FOREST SERVICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................1

        A.    The FEIS Properly Analyzed Cumulative Impacts and Correctly Concluded that
              the Decision to Eliminate Several Hundred Miles of Motorized Trails from IRAs
              and RWAs Would Have No Cumulative Impacts on Roadless and Wilderness
              Attributes...............................................................................................................1

        B.    ICL Ignores the Evidence in the Record Indicating that the Agency Considered
              the Cumulative Impacts of Micro-Routes and Determined that They Did Not
              Present Any Significant Impacts............................................................................5

        C.    Plaintiffs' Attack on the Range of Alternatives Ignores the Purpose and Need for
              the Travel Management Plan ..................................................................................7

        D.    The Forest Service Has Fully Complied With Statutory and Regulatory
              Obligations ...........................................................................................................10

              1.    Plaintiffs' interpretation of the Forest Service regulations is untenable and
                    should be accorded no weight...................................................................10

              2.    The Forest Service properly considered impacts to relevant resources, and
                    its designations in this case fully complied with the applicable
                    regulations ................................................................................................13

              3.    The individual route designations challenged by Plaintiffs further illustrate
                    how the Forest Service complied with 36 C.F.R. §212.55(b)...................15

              4.    Executive Order 11644 is not independently enforceable .........................17

        E.    There Is No Basis for the Court to Set Aside a Minimum Road System
              Determination Because No Such Determination Has Been Made.........................19

III.    CONCLUSION....................................................................................................20

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF AUTHORITIES

### CASES

Aluli v. Brown,
   437 F. Supp. 602 (D. Haw. 1977) ...............................................................18

Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.,
   419 U.S. 281 (1974)......................................................................................7

California v. Block,
   690 F.2d 753 (9th Cir. 1982) .....................................................................8, 9

Ctr. for Biological Diversity v. BLM,
   No. C06-4884-SI, 2009 U.S. Dist. LEXIS 90016 (N.D. Cal. Sept. 28, 2009).......12, 13

Chai v. Carroll,
   48 F.3d 1331 (4th Cir. 1995) .....................................................................17

Chevron, U.S.A., Inc. v. Natural Res. Def. Council,
   467 U.S. 837 (1984)...............................................................................11, 17

Conservation Law Found. v. Clark,
   590 F. Supp. 1467 (D. Mass. 1984), *aff'd sub nom.* Conservation Law Found.
   v. Sec'y of Interior, 864 F.2d 954 (1st Cir. 1989) .......................................18

Entergy Corp v. Riverkeeper,
   129 S. Ct. 1498 (2009) .........................................................................11, 12

Facchiano Constr. Co. v. U.S. Dep't of Labor,
   987 F.2d 206 (3d Cir. 1993).......................................................................18

Friends of the Earth v. U.S. Dep't of Interior,
   478 F. Supp. 2d 11 (D.D.C. 2007) .............................................................19

Gardner v. Bureau of Land Mgmt.,
   633 F. Supp. 2d 1212 (D. Or. 2009) ..........................................................12

Jensen v. v. Williams,
   No. 2:08-cv-02016-RTD, 2009 U.S. Dist. LEXIS 36619 (W.D. Ark. Apr. 27,
   2009) .........................................................................................................18

Lands Council v. McNair,
   537 F.3d 981 (9th Cir. 2008) .......................................................................5

Lands Council v. Powell,
     395 F.3d 1019 (9th Cir. 2005) ...................................................................3

League of Wilderness Defenders-Blue Mountains Biodiversity Project v. U.S.
Forest Serv.,
     549 F.3d 1211 (9th Cir. 2008) ...............................................................3, 5

River Runners for Wilderness v. Martin,
     593 F.3d 1064 (9th Cir. 2010) ...................................................................7

Robertson v. Methow Valley Citizens Council,
     490 U.S. 332 (9th Cir. 1989) ...................................................................18

Romero-Barcelo v. Brown,
     643 F.2d 835 (1st Cir. 1981) ....................................................................18

Romero-Barcelo v. Weinberger,
     456 U.S. 305 (1982).................................................................................18

Town of Cave Creek v. F.A.A.,
     325 F.3d 320 (D.C. Cir. 2003) ...................................................................3

Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council,
     435 U.S. 519 (1978).................................................................................18

Westland Water Dist. v. U.S. Dept. of Interior,
     376 F.3d 853 (9th Cir. 2004) ...............................................................8, 10

## REGULATIONS

36 C.F.R. § 212.1 ...........................................................................................1

36 C.F.R. § 212.50 .........................................................................................9

36 C.F.R. §212.52(b)(2)............................................................................12, 13

36 C.F.R. § 212.5(b) ....................................................................................21

36 C.F.R. § 212.55 ........................................................... 10-13, 15-18, 21

40 C.F.R. §1508.7 ..........................................................................................2

43 C.F.R. § 8341.2 .......................................................................................12

43 C.F.R. § 8342.1 .......................................................................................12

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

43 Fed. Reg. 20,006 .........................................................................................................19

70 Fed. Reg. 68,264 .........................................................................................................19

70 Fed. Reg. 68,281 .........................................................................................................12

## LEGISLATIVE MATERIALS

Executive Order No. 11644 .........................................................................................12, 19

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 7.1, and the Court's Order dated October 20, 2010 (Dkt. #49), Defendants submit this Reply in Support of Defendants' Cross-Motion for Summary Judgment, and respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

## II.     ARGUMENT

### A.      The FEIS Properly Analyzed Cumulative Impacts and Correctly Concluded that the Decision to Eliminate Several Hundred Miles of Motorized Trails from IRAs and RWAs Would Have No Cumulative Impacts on Roadless and Wilderness Attributes

Plaintiffs' entire argument regarding the analysis of cumulative impacts to inventoried roadless areas ("IRAs") and recommended wilderness areas ("RWAs")  in the Final Environmental Impact Statement ("FEIS") hinges on the false premise that the Salmon Challis National Forest "(SCNF") Travel Plan is somehow adding miles of motorized trails to the SCNF. As pointed out in Defendants' Cross Motion for Summary Judgment ("MSJ"), that is not the case.  Plaintiffs seize on the term "newly authorized routes" in an attempt to persuade the Court that somehow the impacts analysis is flawed because there are new routes being added to the Forest.  The Preferred Alternative, however, is actually closing over 400 miles of motorized routes in the SCNF.  As explained in Defendants' MSJ, there are over 1,380 miles of motorized routes in IRAs across the SCNF.  Of that 1,380 miles, 783 miles are "authorized" meaning that they have been officially recognized as part of the forest transportation system.  See 36 C.F.R. § 212.1 (defining "unauthorized road or trail" as a route that is not included in a forest transportation atlas, which reflects the routes that are included in the forest transportation system).  There are an additional 597 miles of routes that are "unauthorized," i.e. they likely were created by cross-country motor vehicle use as a result of the former travel plan, which

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

allowed unrestricted cross-country motorized travel in many areas of the SCNF.  Those 597

miles of routes are "unauthorized" in the sense that they have not been included in the forest

transportation system pursuant to the travel planning process.  Those trails were open and

available for motor vehicle use, but they simply were not "authorized" for the purposes of the

regulatory definition.  The Preferred Alternative in this Travel Management Plan closes 487.6

miles of those routes to motorized use, and reclassifies the remaining 109.4 miles into the

"authorized" system of motorized routes on the Forest.  The 487.6 miles will now be off limits to

motorized travel and they will truly be unauthorized for any further motorized use under the new

Travel Management Plan.[1]

     With this background, Plaintiffs' arguments regarding cumulative impacts to roadless and

wilderness attributes miss the mark.  As defined in the NEPA regulations, cumulative impact "is

the impact on the environment which results from the <u>incremental impact of the action</u> when

added to other past, present, and reasonably foreseeable future actions...."  40 C.F.R. §1508.7

(emphasis added).  The Draft Environmental Impact Statement ("DEIS") noted that

> [m]iles of motorized routes designated for public use within Inventoried Roadless
> Areas (IRAs) and effects to Roadless Characteristics would not be adversely
> impacted by on-going activities.  No activities that would cumulatively increase

---

[1] Plaintiffs dismiss the fact that the proposed alternative prohibits motorized use of nearly 500 miles of routes and over 900,000 acres of cross-country access as not "relevant" to the cumulative impacts analysis (See Pls' Resp. at 4, Dkt. #46), but this fact is actually central to the agency's conclusions.  By analogy, a timber project that will involve tree cutting may have a significant incremental impact, but when considered in the context of 100 other timber projects that had been approved in the past three years.  However, if instead of cutting trees, the project involved replacing trees, then the incremental cumulative impact of the forest replacement project is not significant, because you are rolling back the cumulative impacts of the prior projects.  Here, as a result of open cross-country travel access under the prior SCNF travel plans, "about 2,700 miles of *known* unauthorized routes have been inventoried on the Forest."  AR 047072 (ROD at 2).  The vast majority of these routes will no longer be open to motorized travel on the SCNF as a result of this decision, and will therefore reduce rather than increase the cumulative impacts of prior travel planning projects.

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

miles of routes are occurring within IRAs, except mining operations which are allowed under the 2001 Roadless Rule.

AR 044451 (DEIS p. 3.50).  In short, the DEIS, FEIS, and Roadless Specialist Report explain that there will be no underlined incremental cumulative impact of the action on roadless and wilderness attributes when added to other past, present, and reasonably foreseeable actions, because there will be no increase in the miles of routes in IRAs, and cross-country motor vehicle use in IRAs (and throughout the SCNF) will be eliminated.  See AR046408 (FEIS p. 3.26).  By analyzing the effect of the changes to the existing baseline of authorized routes, the Forest Service properly analyzed cumulative effects for purposes of NEPA.  See Town of Cave Creek v. F.A.A., 325 F.3d 320, 328-29 (D.C. Cir. 2003) (upholding cumulative impacts analysis which calculated "how the projected aircraft noise from the project, when added to the ambient baseline, would change the baseline ambient noise levels" and concluding that "[t]his process indisputably examines both the incremental impact of the project as well as the environmental baseline.").[2]

_____

[2] Indeed, the holding in Cave Creek further illustrates why Plaintiffs' continued reliance on Lands Council v. Powell, 395 F.3d 1019 (9th Cir. 2005) is misplaced.  Site-specific projects like timber sales are fundamentally different than an agency decision to designate certain routes or close them to motor vehicle use.  The approach to analyzing cumulative impacts from the designation decision in this case is necessarily different from the approach to analyzing cumulative impacts in Lands Council because here, with respect to roadless and wilderness attributes, the description of the baseline necessarily encompasses all of the cumulative past effects of motor vehicle use of the Forest under the prior travel plans.  By contrast, in Lands Council the court explained that in the context of timber projects, the specific project such as the time, type, place, and scale of the past projects that might help evaluate the cumulative effects of past projects.  See 395 F.3d at 1028.  Here, with regard to wilderness and roadless attributes, there is no information about past actions that is not captured in the description of the aggregate cumulative effects contained in the FEIS, and the agency's analysis was proper.  See League of Wilderness Defenders-Blue Mountains Biodiversity Project v. U.S. Forest Serv., 549 F.3d 1211, 1217 (9th Cir. 2008) ("agencies can conduct an adequate cumulative effects analysis by focusing on the current aggregate effects of past actions without delving into the historical details of individual past actions") (quoting June 24, 2005 CEQ Memorandum, Guidance on Consideration of Past Actions in Cumulative Effects Analysis).

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs accuse the government of trying to "divert the court's attention" by explaining that the Forest Service analyzed cumulative impacts on the environment for soils, water, wildlife, and other environmental impacts.  Pls' Resp. at 3.  It was Plaintiffs, however, who exaggerated the true scope of their cumulative impacts claims when they argued that the Forest Service's analysis "is fatally and irretrievably flawed because nowhere does it describe, discuss, or evaluate the environmental impacts of the newly authorized motorized routes in IRAs and RWAs…."  Pls' MSJ at 6 (Dkt. #38-1).  Of course, as explained in Defendants' MSJ, there are numerous detailed analyses of environmental impacts in the IRAs and RWAs in the FEIS.  See Defs' MSJ at 12-13.[3]  Plaintiffs have now narrowed their claim to challenge only the cumulative effects analysis regarding roadless attributes and wilderness character contained in Chapter 3.3 of the FEIS (AR046398-AR046408), but the sweeping language used in Plaintiffs' opening MSJ did not appear to be so limited.

In any event, the Forest Service's analysis of cumulative impacts to roadless and wilderness attributes was not limited to newly authorized routes.  In the DEIS, the Forest Service analyzed the total number of miles of designated routes within each IRA, and calculated the

---

[3] It is also worth noting that Defendants did not argue that impacts to roadless and wilderness attributes were being addressed "*sub silentio*" in the other sections of the FEIS as Plaintiff argued in its response.  Pls' Resp. at 3.  Rather, roadless attributes, "as defined in the 2001 Idaho Roadless Rule include: high quality or undisturbed soil, water, and air; sources of public drinking water; diversity of plant and animal communities; habitat for threatened, endangered, proposed, candidate, and sensitive species; primitive, semi-primitive non-motorized, and semi-primitive motorized classes of dispersed recreation; reference landscapes; natural appearing landscapes with high scenic quality; traditional cultural properties and sacred sites; and other locally identified unique characteristics."  AR044407.  Each one of those sub-components is analyzed fully for all designated routes in the corresponding subsections in Chapter 3 of the FEIS.  The overall conclusions with regard to impacts on roadless characteristics resulting from the newly authorized routes in each alternative are combined and analyzed in Chapter 3.3, and visually represented in Appendix C of the FEIS, which combines the analysis for each sub-component of roadless characteristics for newly authorized routes.  See AR046398 – 046408 (FEIS Chap. 3.3); AR046788 – 046806 (FEIS App. C).

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

route density as a ratio of miles per 1000 acres of roadless area.  AR044407-044408 (DEIS, pp. 3.6 – 3.7, explaining the methodology); AR044768-044770 (DEIS App. D comparing the total miles of motorized routes in IRAs and calculating route density).  Based on its expertise, the Forest Service concluded that this route density analysis "characterizes the mileages of roads and trails and would serve as a proxy for understanding impacts to roadless area characteristics … [and] serves as a means to compare densities between alternatives."  AR044408.  The FEIS and the Roadless Specialist Report both rely on the density analysis as part of the ultimate conclusions with regard to cumulative effects on roadless and wilderness attributes.  AR037109 – AR037110 (Roadless Specialist Report discussion of methodology); AR046398-99 (FEIS discussion of methodology).  The Forest Service's analysis and conclusions that there are no significant negative cumulative impacts to roadless and wilderness characteristics as a result of the Travel Management Plan decision are sound and fully comply with NEPA's requirements.  League of Wilderness Defenders, 549 F.3d at 1218 ("[T]he Forest Service is free to consider cumulative effects in the aggregate or to use any other procedure it deems appropriate. It is not for this court to tell the Forest Service what specific evidence to include, nor how specifically to present it."); Lands Council v. McNair, 537 F.3d 981, 993 (9th Cir. 2008) (court is "not free to impose on the agency [our] own notion of which procedures are best or most likely to further some vague, undefined public good") (internal citations and quotations omitted).

> **B.      ICL Ignores the Evidence in the Record Indicating that the Agency Considered the Cumulative Impacts of Micro-Routes and Determined that They Did Not Present Any Significant Impacts**

Plaintiffs entirely discount the evidence in the administrative record explaining how the Forest Service evaluated the potential for cumulative impacts of micro-routes and concluded that there were none.  Pls' Resp. at 6.  First, the Roadless Specialist Report explained micro-routes do

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

not present the potential for affecting roadless or wilderness values "because intrusions into roadless areas of zero to less than a half-mile were considered to be minimally intrusive and not likely to affect wilderness value" especially in light of the size of the roadless areas.  AR037109. This analysis was carried over into the FEIS in the discussion of the methodology for evaluating impacts on roadless and wilderness attributes.  AR046399 (FEIS p. 3.17).  The Forest Service's consideration of the impacts of micro-routes was not limited, however, to whether they had individual effects.   Indeed, the very documents cited by Plaintiffs illustrate that the agency considered that the micro-routes together might have a significant effect.   AR047515 (agency email contemplating potential for cumulative effect of micro-routes).   Ultimately, the agency concluded that the newly-authorized micro-routes did not cumulatively impact the roadless or wilderness attributes, especially in the context of the overall acreage of the areas.[4]   That conclusion is fully supported by the record, and the reasonableness of that conclusion is borne out by the final travel plan maps showing the locations of all of the micro-routes in IRAs and RWAs, and their inconsequential effect in light of the sheer size of the IRAs and RWAs.   AR 047058 – 063 (Final Travel Plan maps showing all routes).

Taken together, the DEIS, the Roadless Specialist Report, the FEIS and the final travel maps paint a clear picture of the rationale for the ultimate conclusion reached by the agency, and

---

[4] Notably, in the DEIS the agency did not limit its analysis to roads and trails less than a half mile in length, but analyzed the effects of all roads and trails open to motor vehicles in IRAs and RWAs and came to the same conclusion.  See AR044412-13 (DEIS analysis of the effects of the proposed alternative for the Challis Yankee Fork Range District); AR044419-20 (DEIS analysis of the effects of the proposed alternative for the Leadore Ranger District); AR044426-27(DEIS analysis of the effects of the proposed alternative for the Lost River Ranger District); AR044433 (DEIS analysis of the effects of the proposed alternative for the Middle Fork Ranger District); AR044440-41 (DEIS analysis of the effects of the proposed alternative for the North Fork Ranger District); AR044447-48 (DEIS analysis of the effects of the proposed alternative for the Salmon Cobalt Ranger District).  Based on this analysis, the DEIS concluded that "effects to wilderness attributes would not be cumulatively impacted."  AR044451 (DEIS Cumulative Effects conclusion).

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

the reasonableness of that conclusion.  Plaintiffs' argument in essence is that the Forest Service did not insert a sentence stating that "cumulatively, the micro-routes were minimally intrusive and did not affect wilderness or roadless attributes in the IRAs and RWAs."  NEPA does not require such a formulaic approach, however.  The Supreme Court has made clear that courts must uphold agency decisions even if they are of less than ideal clarity, as long as the court can reasonably discern the rationale.  Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 290 (1974) ("But we can discern in the Commission's opinion a rational basis for its treatment of the evidence, and the 'arbitrary and capricious' test does not require more.").

More recently, the Ninth Circuit upheld an agency's decision even though the FEIS and ROD did not include specific discussion explicitly pointing out the agency's conclusions.  See  River Runners for Wilderness v. Martin, 593 F.3d 1064, 1078-79 (9th Cir. 2010).  In that case, the court recognized that "[i]t is true that the FEIS and ROD do not contain a specific discussion of the amount of motorized traffic found necessary and appropriate for public use and enjoyment of the Corridor."  Id. at 1078.  Despite that shortcoming, however, the court recognized that "the absence of such a specific discussion does not necessarily require the agency's action to be overturned" because the "Park Service's consideration of the amount of motorized traffic required in the Colorado River Corridor can reasonably be discerned from the FEIS."  Id.  (citing Bowman, 419 U.S. at 285).  Ultimately, the court concluded "the question is… whether [the Park Service's decision] is reasonably supported by the Administrative Record [, and] [i]n light of the DEIS and FEIS analysis outlined above, we conclude that it is."  Id. at 1080.  So too here.

### C.   Plaintiffs' Attack on the Range of Alternatives Ignores the Purpose and Need for the Travel Management Plan

With respect to the range of alternatives, in their MSJ, Plaintiffs begrudgingly concede that the alternatives "appear to include at least a nominal range of options for designating roads,

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

trails, and areas for motorized use," but dismiss the differences among the alternatives as "superficial." Pls' MSJ at 11. In their Response, however, ICL continues to argue that the range of alternatives considered was not reasonable based on the number of miles of routes designated within certain sub-components of the SCNF. Pls' Resp. at 6-8.

As an initial matter, the purpose and need for the project frames the inquiry into whether the range of alternatives is reasonable. See Westlands Water Dist. v. U.S. Dep't of Interior, 376 F.3d 853, 868 (9th Cir. 2004). Here, the purpose and need for the decision  was to "designate a system of roads, trails, and areas open for public motor vehicle use on the SCNF" in light of recreation needs and access, management concerns, and impacts to forest resources. AR 047071-72 (ROD at 1-2). Plaintiffs ignore this fundamental point, and argue that the Forest Service was required to consider a range of alternatives that addressed a singular component of the SCNF that is of particular concern to their recreational interests – the motorized routes within IRAs. The decision at issue here was not a plan to designate routes within IRAs, but rather a decision to address travel planning for the entire SCNF. NEPA does not require that the agency develop alternatives that explore varying degrees of motorized use for particular subcomponents of the forest of particular interest to Plaintiffs, but only that it address alternatives that reasonably explore designation of motorized routes for the SCNF as a whole, taking into account the various considerations required by the governing laws and regulations.

Plaintiffs' citation to California v. Block, 690 F.2d 753 (9th Cir. 1982), highlights the importance of the purpose and need in reviewing the agency's range of alternatives. Pls' Resp. at 8. In that case, the decision at issue was the development of a Roadless Area Review and Evaluation ("RARE") programmatic plan for the entire 190 million acres of National Forest System lands to "inventor[y] all roadless areas within the National Forest System and allocate[]

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

each area to one of three planning categories: Wilderness, Further Planning, and Nonwilderness." Block, 690 F.2d at 758.  The Ninth Circuit held that the agency had not considered a reasonable range of alternatives because "[a]lthough the RARE II Final EIS poses the question whether development should occur at all, it uncritically assumes that a substantial portion of the RARE II areas should be developed and considers only those alternatives with that end result." Id. at 767.  In addition, the court questioned why the RARE II EIS "did not seriously consider an alternative that allocated more than a third of the RARE II acreage to Wilderness." Id. at 768.  In other words, even though the project decision was to allocate Forest Service roadless areas across the country to three categories, the agency analyzed alternatives that contemplated classifying only from 0 to 33 percent of the areas as wilderness.  The court rejected the scale and finality of the alternatives and how they limited future potential land uses. See id. at 767-68.

By contrast, here the Forest Service made designations of roads, trails, and areas for motor vehicle use for the entire SCNF.  See 36 C.F.R. § 212.50.[5]  With regard to the actual decision at issue, by any objective measure the FEIS contemplated a wide range of alternatives. See AR 046356-57 (FEIS at p. 2.29-2.30, Table 2-13) (summarizing the miles of motorized routes under the various alternatives); see also Defs' MSJ at 20-21 (summarizing additional

---

[5] Even focusing only on the IRAs, however, the FEIS analyzed a reasonable range of alternatives.  Plaintiffs mischaracterize the alternatives as retaining all existing routes open to motorized use in IRAs and varying only in the number of routes that are added to the existing total.  As explained in Defendants' MSJ and in this Reply, supra Sec. II.B., there are many existing routes open to motor vehicle use (that were created as a result of cross-country motor vehicle use allowed under prior travel plans), which are being closed to motor vehicle use as a result of this Travel Management Plan decision.  See AR046338-40 (FEIS at 2.12-2.13) (explaining that there are 1,594 miles of known unauthorized routes in restricted areas of existing travel plans, and 1,108 miles of known non-system routes in areas open to cross-country motorized travel).

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

measures of the range of alternatives).[6]  With regard to alternatives, "[t]he touchstone for [the Court's] inquiry is whether an EIS's selection and discussion of alternatives fosters informed decision-making and informed public participation." <u>Westlands</u>, 376 F.3d at 868.  Here, given the purpose and need for the project, by almost any Forest-wide measure the agency considered a range of alternatives that was more than adequate to inform the agency and the public. Accordingly Plaintiffs' motion with regard to the range of alternatives should be denied.

**D.    The Forest Service Has Fully Complied With Statutory and Regulatory Obligations**

**1.    Plaintiffs' interpretation of the Forest Service regulations is untenable and should be accorded no weight**

Plaintiffs argue that the Forest Service interpretation of 36 C.F.R. § 212.55(b) conflicts with the plain language of the regulations.  Plaintiffs are wrong.  Plaintiffs disregard the actual language of the definition of "objective" upon which they rely.  In this context, the dictionary defines objective as "something worked toward or striven for."  Pls' Resp. at 10 (quoting The American Heritage College Dictionary (3d ed. Houghton Mifflin Co. 2000)).  In order to support their argument, Plaintiffs provide their own gloss on that definition to define objective as a "goal to be achieved unless it cannot be accomplished."  <u>Id.</u>  Of course, the dictionary definition reveals the aspirational nature of objective as it is used in plain language and as it is used in the Forest Service regulations.  It is not something to be achieved at all costs as Plaintiffs suggest; it is something to be striven for, taking into account the Forest Service's overall mission.  The

---

[6] It is unclear what Plaintiffs are referring to in footnote 11 of their Response when they state that the acres of Forest closed to cross-country motor vehicle use are an artifact of off-route corridor widths multiplied by the miles of routes open to motor vehicle use.  Simply put, under the SCNF Travel Plan there will no longer be any acres of the Forest open to cross-country motor vehicle use.  It is possible that Plaintiffs may be referring to the measure of Motorized Influence Zone acres, which calculates the number of acres of the Forest that are within a half mile of a designated route.  In any event, the measure of the Motorized Influence Zone is just another measure to help demonstrate that the agency looked at a reasonable range of alternatives.

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Forest Service's interpretation of its regulations is therefore reasonable, and the analysis in the FEIS evidences the Forest Service's full compliance with section 212.55.

Second, Plaintiffs' proffered interpretation of the word "minimize" is functionally equivalent to the Forest Service's interpretation. "Minimize" as defined in the American Heritage Dictionary cited by Plaintiffs means "to reduce to the smallest possible amount, extent, size, or degree." Pls' Resp. at 12. Recognizing that the definition itself would lead to absurd results, Plaintiffs add their own interpretation to qualify the dictionary definition by appending the language "consistent with other physical or legal limitations." Pls' Resp. at 12. Indeed, Plaintiffs properly recognize that "the Forest Service must also consider other factors such as the provision of recreational opportunities, access needs, and conflicts among uses of the National Forest System Lands under 36 C.F.R. § 212.55(a)." Pls' Resp. at 11 n. 13. These are exactly the competing legal limitations that require the Forest Service to interpret "minimize" as something less than its strict dictionary definition by including the words "with the objective of." And that is precisely what the Forest Service did in carrying out its route designation decisions in the Travel Management Plan.

In short, the Forest Service's interpretation of its regulations conflicts only with Plaintiffs' preferred interpretation of the word objective, not the plain language of the regulations. Plaintiffs' interpretation is not due any weight in determining whether or not the agency complied with its regulations, but the Forest Service's interpretation is due deference by this Court.[7] Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984).

---

[7] Plaintiffs' citation to Entergy Corp v. Riverkeeper, only reinforces the reasonableness of the Forest Service's interpretation. 129 S. Ct. 1498, 1506 (2009). In the comments on the Travel Management regulations, commenters "stated that the final rule should retain what they characterized as the mandatory language from E.O. 11644 with respect to application of the specific criteria for trails and areas …, rather than what they viewed as the discretionary

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Finally, Plaintiffs' continued reliance on <u>Center for Biological Diversity v. BLM</u>, No. C06-4884-SI, 2009 U.S. Dist. Lexis 90016 (N.D. Cal. Sept. 28, 2009) ("<u>CBD</u>"), does not support Plaintiffs' argument.   First, as noted in Defendants' MSJ, the court's opinion in <u>CBD</u> was interpreting a BLM regulation that is very different from the Forest Service regulation implementing Executive Order 11644.[8]   <u>Compare</u> 43 C.F.R. § 8342.1 ("the authorized officer shall designate all public lands as either open, limited, or closed…<u>all designations shall be based on the protection of resources of the public lands</u>…<u>areas and trails shall be located to minimize damage</u> to soil watershed, vegetation, air or other resources…") (emphasis added) <u>with</u> 36 C.F.R. §212.55(b) ("in designating trails and areas…the responsible official <u>shall consider effects on the following, with the objective of minimizing</u>: … [d]amage to soil, watershed, vegetation…"). The decision in the <u>CBD</u> case hinged on the fact that BLM had failed to show how its

_____

language in the proposed rule." 70 Fed. Reg. 68,281 (Nov. 9, 2005).  Responding to these comments, the Forest Service recognized that the term minimize necessarily incorporates a notion of degree, and stated "an extreme interpretation of 'minimize' would preclude any use at all [and] would not reflect the full context of E.O. 11644 or other laws and policies related to multiple use of NFS lands." 70 Fed. Reg. 68,281 (Nov. 9, 2005).  The Forest Service interpretation of its regulations tracks the reasoning in the Supreme Court's <u>Entergy</u> opinion, and Plaintiffs' interpretation represents an extreme interpretation of Executive Order 11644 which the agency has properly rejected.

[8] Plaintiffs accuse the Forest Service of "eat[ing] its cake and hav[ing] it too" because the agency relied on cases interpreting BLM's regulations at 46 C.F.R. § 8341.2, while at the same time arguing that Plaintiffs' reliance on another case interpreting BLM's regulations at 46 C.F.R. § 8342.1 is inapposite. Pls' Resp. at 12.  The key distinction, however, is that there is no substantive difference between 43 C.F.R. § 8341.2 and the analogous Forest Service regulation at 36 C.F.R. §212.52(b)(2), both of which address emergency closures.  Those regulations were at issue in the <u>Gardner v. Bureau of Land Management</u> case cited in Defendants' MSJ.  <u>See</u> Defs' MSJ at 23; <u>Gardner v. Bureau of Land Mgmt.</u>, 633 F. Supp. 2d 1212 (D. Or. 2009).  The <u>CBD</u> case on the other hand, construes BLM regulations (43 C.F.R. § 8342.1) that contain substantively different language than the similar Forest Service regulations at 36 C.F.R. 212.55(b).  2009 U.S. Dist. Lexis 90016 at *8-9.  As explained above, the differences in language between the regulations at issue in <u>CBD</u> and those at issue here undermine the applicability of the court's holding in <u>CBD</u> and render it inapposite to a determination of what is required under the Forest Service regulations.  <u>See</u> <u>also</u> Defs' MSJ at 23-25.

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

designations of areas and trails were located to minimize resource damage, and had failed to show how the impacts to resources were even considered in the designation of specific trails and areas. See CBD, 2009 U.S. Dist. Lexis 90016 at *48-51. That showing was required because the BLM regulations are explicit that route designations must be based on minimizing impacts to those resources. The Forest Service regulations, on the other hand, require that in making designations, the agency must consider the effects on the specific resources identified in the regulation with the objective of minimizing damage to those resources. There is, however, no mandatory requirement. As discussed above, this interpretation is consistent with Executive Order 11644 and does not dictate a particular result.

> **2. The Forest Service properly considered impacts to relevant resources, and its designations in this case fully complied with the applicable regulations**

In any event, CBD does not inform the instant dispute for the additional reason that here, contrary to Plaintiffs' assertions, the Forest Service has "shown its work" with regard to considering the factors required by 36 C.F.R. §212.55 in its route designation decisions. Appendix G of the FEIS provides the description of the criteria that were used in making route designations under the SCNF Travel Plan. AR046863 – 867 (FEIS App. G). As the Forest Service explained, "evaluation of individual routes included in the project record is consistent with Section 212.55 of the Travel Management Rule, which enumerates the criteria for designating roads, trails, and areas pursuant to the rule." AR046863. More specifically, the FEIS states that the designation "criteria seek to minimize damage to soil, watershed, vegetation and other forest resources…." Id. (listing the additional section 212.55 factors considered). Appendix G then explains the 17 criteria used by the Forest Service to incorporate the criteria specified by the travel management rule into the route evaluation process. AR046863 – 867.

**DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

For each Ranger District, the Forest Service then prepared a route matrix table showing how each of the route evaluation criteria was considered in deisgnating routes.  See AR020313-020348 (Route Matrix for Challis Yankee Fork Ranger District); AR020349-020363 (Route Matrix for Leadore Ranger District); AR020364-020395 (Route Matrix for Lost River Ranger District); AR020396-020409 (Route Matrix for Middle Fork Ranger District); AR020410-020422 (Route Matrix for North Fork Ranger District); AR020423-020452 (Route Matrix for Salmon-Cobalt Ranger District).

In response to public comments, the Forest Service explained the process by which the Deciding Official considered the effects required under 212.55 and stated "[t]o minimize damage to soil, seasonal operating periods were incorporated into the SCNF Travel Management Plan." AR 046727 (FEIS at 5.150) (explaining that designation decisions included water quality and soil erosion factors and that "[i]ndicators were chosen so that the Deciding Official could evaluate the differences between alternatives and determine which alternatives have the least potential impact to forest resources.").  Once the route designation had been completed, the Deciding Official stated in the ROD:  "I am fully satisfied that all practicable means to avoid or minimize environmental harm from the Selected Alternative have been adopted through the implementation of route designation criteria and project design features."  AR 047080 (ROD at 10).  Finally, the Deciding Official certified that "I have determined that the Forest Service has considered the effects of road and motorized trail designation on the resources identified in the 2005 Travel Management Rule based on the analysis and information contained in the FEIS and the project record."  AR047090 (ROD at 20).  Specifically addressing 212.55(b), the ROD explains that "the objective…was to provide a mix of recreational opportunity settings while minimizing effects on resources and uses listed above…General outcomes of the Selected

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Alternative include reducing adverse impacts on soils, water quality, fisheries and aquatics, wildlife, vegetation, and the spread of noxious weeds." Id.

The administrative record provides a clear explanation of how the Forest Service considered, with the objective of minimizing, the resource impacts contemplated in 36 C.F.R. §212.55(b) in the process of route designation. Evaluation criteria were developed to evaluate the factors in the regulation (FEIS Appendix G); then the actual impacts to forest resources were fully analyzed (FEIS Chapter 3); the route designation decisions were based on the evaluation criteria and the analysis of impacts (Route matrices for each Ranger District); and finally the Deciding Official reviewed the alternatives and ensured that impacts were considered in accordance with the requirements of section 212.55(b). Plaintiffs' claim that the "administrative record…is devoid of any explicit, let alone meaningful, discussion of how the Forest Service route designation decisions actually apply and meet the minimization criteria of the travel management regulations," Pls' Resp. at 16 (emphasis added), is spurious and should be denied.

### 3. The individual route designations challenged by Plaintiffs further illustrate how the Forest Service complied with 36 C.F.R. §212.55(b)

Plaintiffs wrongly assert that for Trail #4032 "the specific modification the agency cites in its brief does not appear to be accurate." See Pls' Resp. at 17. Trail 4032 is 28.5 miles long and crosses parts of the Middle Fork Ranger District (9.3 miles) and the Challis Yankee Fork Ranger District (19.2 miles). As explained in Defendants' MSJ, on the Middle Fork segment of Trail 4032, the Revised Proposed Action in the DEIS proposed designating the entire 9.3 mile Middle Fork section of Trail 4032 as "ATV1," or open to all-terrain vehicles ("ATVs") year round. See AR046843 (FEIS App. E, p. E.33, comparing the Revised Proposed Action in the DEIS with Alternative 5 in the FEIS. In the FEIS and ROD, the Forest Service determined that seasonal and vehicle class restrictions were appropriate. Thus, for the 9.3 miles of Trail 4032 in

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

the Middle Fork Ranger District, the Forest Service changed the designation so that 5.53 miles were designated as "ATVD" (open only May 22 to September 30 for ATVs) and 4.87 miles were designated as "2WL1" (open year round but only to two-wheel vehicles).  See AR046843; AR047128 (ROD at 58, showing final designation for Middle Fork section of 4032).  The route matrix for the Middle Fork Ranger District shows how the route designation criteria were considered in the change in designation for Trail 4032.  AR020397.[9]

With regard to the Challis-Yankee Fork section of Trail 4032, it appears that this is the section of Trail 4032 Plaintiffs were reviewing in concluding that there was no seasonal restriction imposed on Trail 4032.  See Pls' Resp. at 17.[10]  For the Challis Yankee Fork section of Trail 4032, there is no seasonal use restriction, but the Forest Service did limit the types of vehicles permitted on the trail.  For 12.57 miles of the 21-mile section of the Challis Yankee Fork section of Trail 4032, the Forest Service closed access to ATVs and limited the trail to two-wheel vehicles.  See AR020321 (noting that "tread on this portion of trail does not support ATV use.  Select Alt. 3" and limiting the designation to two-wheel vehicles).[11]

---

[9] The route matrix appears to reflect the selection of vehicle class restrictions, but not seasonal restrictions.  AR020397.  However, the agency clearly decided to impose seasonal restrictions after further consideration as reflected in the ROD.  See AR047128 (ROD at 58).

[10] This section of Trail 4032 was discussed in Defendants' MSJ at page 30.  Defendants did not state that there were seasonal restrictions imposed on the Challis Yankee Fork portions of Trail 4032.  See Defs' MSJ at 30.

[11] The route matrices, FEIS, and ROD provide similar detail regarding consideration of effects pursuant to 36 C.F.R. §212.55(b) for all of the other trails addressed in Defendants' MSJ.  See, e.g., AR020397; AR 047128 (ROD at 58) (route designation criteria for Middle Fork trails 4033 and 4035.03, both of which were subject to seasonal restrictions (open May 22 – September 30 only) and vehicle class restrictions (open to two-wheel vehicles only)).  Finally, with regard to the Swauger Lakes Trail, Plaintiffs are correct that the existing Salmon-Challis Travel Plan limits the Swauger Lakes Trail to two-wheel vehicle use.  The Forest Service is not "claiming credit for correcting its own mistake," as Plaintiffs allege.  Pls' Resp. at 18, n. 17.  Rather, in the DEIS, the Swauger Lakes Trail was proposed to be converted to ATV use year round, with a proposed

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs contend that even though the Forest Service imposed seasonal and vehicle class restrictions and vehicle restrictions on trail 4032 in the Middle Fork District, those restrictions were insufficient because in Plaintiffs' estimation the "trail was so damaged it was unsuitable for any motorized use."  Pls' Resp. at 17 (citing ICL comments at AR043597).  This contention is the archetypal example of Plaintiffs attempting to substitute their judgment for that of the agency on a determination that is clearly within the Forest Service's expertise.  The Forest Service received ICL's comments and responded to them, and even imposed vehicle class and seasonal restrictions that at least in part address ICL's concerns.  AR020313-020452 (route matrices showing route designation rationales).  Under Plaintiffs' view of the law, however, once the Forest Service received ICL's comments, the agency had no choice but to shut down every trail that ICL demanded or the agency would be in violation of the law.  It is well established however, that it is the agency's conclusions that are due deference in this situation unless those conclusions are arbitrary and capricious.  Chevron, 467 U.S. at 844.  Plaintiffs have provided no evidence to call into question the agency's conclusions.  They have, at most, questioned whether the record contains adequate explanation of the agency's conclusions with regard to 36 C.F.R. §212.55(b).  As explained above, however, the record contains the necessary explanation.

### 4.     Executive Order 11644 is not independently enforceable

Plaintiffs' claims under Executive Order ("EO") 11644, as amended by Executive Order 11989, are not actionable because executive orders are not generally enforceable by private parties. See, e.g. Chai v. Carroll, 48 F.3d 1331, 1338-39 (4th Cir. 1995); Facchiano Constr. Co.

---

Forest Plan amendment that would have modified the existing two-wheel restriction.  AR 044309.  After considering public comments indicating that the Swauger Lakes trail was not suitable for ATV use (see, e.g., AR010738 – Idaho Department of Parks and Recreation comments on Swauger Lakes Trail proposed designation), the Forest Service decided to retain the two-wheel vehicle restriction.  AR010738; AR 020382.

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

v. U.S. Dep't of Labor, 987 F.2d 206, 210 (3d Cir. 1993).  More specifically, other courts have held that EO 11644 does not give rise to a duty that can be enforced in a civil suit. See Jensen v. v. Williams, No. 2:08-cv-02016-RTD, 2009 U.S. Dist. Lexis 36619 at *11 (W.D. Ark. Apr. 27, 2009) (citing Friends of the Earth v. U.S. Dep't of Interior, 478 F. Supp. 2d 11, 27-28 (D.D.C. 2007)).

Although the court in Conservation Law Foundation v. Clark, 590 F. Supp. 1467, 1477 (D. Mass. 1984), aff'd sub nom. Conservation Law Found. v. Secretary of Interior, 864 F.2d 954 (1st Cir. 1989), held that Executive Order 11644 had the force of law and was enforceable by the plaintiffs under the APA, that case was wrongly decided, factually distinguishable, and should not be followed.  The district court in Conservation Law Foundation improperly relied on Romero-Barcelo v. Brown, 643 F.2d 835, 859 & n.50 (1st Cir. 1981), and Aluli v. Brown, 437 F. Supp. 602, 609 (D. Haw. 1977), characterizing these two cases as involving "executive orders based on NEPA." Conservation Law Found., 590 F. Supp. at 1477.  However, Romero-Barcelo and Aluli both involved EO 11593 that was based on both NEPA and the National Historic Preservation Act.  In contrast, EO 11644, is based only on NEPA, which is a procedural statute. Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, 435 U.S. 519, 558 (1978) (NEPA's mandate is "essentially procedural. . . . [i]t is to insure a fully informed and well-considered decision.").  As a result, the Conservation Law Foundation court mistakenly looked to inapposite case law when determining that Executive Order 11644 was privately enforceable. Conservation Law Foundation's reliance on Romero-Barcelo v. Brown was also misplaced because the Supreme Court in Romero-Barcelo v. Weinberger, 456 U.S. 305 (1982), reversed the First Circuit's decision in Brown.  Thus, this Court should not look to Conservation Law Foundation in determining whether Executive Order 11644 is privately enforceable.

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Moreover, even if this Court were to find that EO 11644 is enforceable, Plaintiffs have not even alleged a violation of any relevant provision of the Order.  The provision Plaintiffs seek to enforce, section 3(a), states only that "each respective agency head shall develop and issue regulations…to provide for administrative designation of the specific areas and trails on public lands [where motorized use will be permitted]."  Exec. Order 11644 sec. 3(a) (emphasis added).  The Order goes on to state: "Those regulations shall direct that the designation of such areas and trails will be based upon the protection of the resources of the public lands…."  Id. (emphasis added).  Finally "[t]he regulations shall further require that the designation of such areas and trails shall be in accordance with the following: (1) areas and trails shall be located to minimize damage to soil, watershed, vegetation, or other resources of the public lands…[listing the other required factors to consider]."  Id. (emphasis added).  Accordingly, the only enforceable obligation arguably imposed by EO 11644 is the promulgation of regulations as directed by the Order.[12]  There can be no dispute that the Forest Service promulgated the required regulations long ago (43 Fed. Reg. 20006 (May 10, 1978) (implementing 36 C.F.R. Part 295, which was replaced by the travel management rule)), and Plaintiffs have not raised a specific challenge to those regulations.  So irrespective of whether EO 11644 is independently enforceable, Plaintiffs have brought no claim that is properly justiciable in this lawsuit.

**E.      There Is No Basis for the Court to Set Aside a Minimum Road System Determination Because No Such Determination Has Been Made.**

Plaintiffs do not contest that MRS was made, they only point to language in the "Other Laws" section which has been adequately explained in Defendants' MSJ.  There is no "decision" to set aside, because as discussed in Defendants' MSJ, the agency has not undertaken the

---

[12] Moreover, assuming the provisions in Executive Order 11644 regarding the content of the regulations were legally enforceable, the travel management rule is entirely consistent with those provisions.  See generally 70 Fed. Reg. 68264 - 291 (Nov. 9, 2005).

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

minimum road system analysis.  See Defs' MSJ at 32-24.  The ROD contains many pages of text that do not necessarily constitute actual "decisions" that can be challenged under the auspices of the APA.  No such decision regarding the minimum road system has in fact been contemplated or carried out.  See AR046297-298 (FEIS 1.5 – 1.6) (detailing decisions to be made); AR047570; AR047576-047588 (explaining that minimum road system determination has not yet been started).  There is therefore no decision regarding the minimum road system to set aside; Plaintiffs' claim is not ripe, and should therefore be dismissed.

## III.    CONCLUSION

        Contrary to Plaintiffs' allegations, the facts in the administrative record demonstrate that the Forest Service's selected range of alternatives was reasonable in light of the purpose and need for the project and that its analysis of effects fully complied with NEPA's requirements. Moreover, the Forest Service properly considered with the objective of minimizing impacts to forest resources and other criteria required under 36 C.F.R. § 212.55(b).  Finally, Defendants have not made a minimum road system determination pursuant to 36 C.F.R. § 212.5(b). Accordingly, Plaintiffs' Motion for Summary Judgment should be denied as to all counts, Defendants' Motion for Summary Judgment should be granted, and the Court should enter judgment on behalf of Defendants as to all of Plaintiffs' claims.

Dated:  October 27, 2010

                                        IGNACIA S. MORENO
                                        Assistant Attorney General
                                        Environment & Natural Resources Div.

                                        /s/  Brian Collins
                                        BRIAN M. COLLINS (TX Bar #24038827)
                                        Trial Attorney
                                        U.S. Department of Justice

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Environment & Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 305-0428
Facsimile: (202) 305-0267
Email: brian.m.collins@usdoj.gov

WENDY J. OLSON
United States Attorney
JOANNE P. RODRIGUEZ
ID Bar #2996
Assistant U.S. Attorney
District of Idaho
800 Park Blvd., Ste 600
Boise, ID 83712

ATTORNEYS FOR DEFENDANTS

**DEFENDANTS' REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2010, I caused a copy of the foregoing Defendants'

Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary

Judgment to be served through the Court's CM/ECF System on the following attorneys for

Plaintiffs:


Todd True
Kevin Regan
Earthjustice
705 Second Ave., Suite 203
Seattle, WA 98104
(206)343-7340
ttrue@earthjustice.org
kregan@earthjustice.org

Lauren M. Rule
Advocates for the West
PO Box 1612
Boise, ID 83701
(208)342-7024
lrule@advocateswest.org


<u>/s/  Brian Collins</u>
Brian M. Collins
Attorney for Defendants


**DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY JUDGMENT**