# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO CONSERVATION LEAGUE and THE WILDERNESS SOCIETY, | Case No. CV 4:10-26-E-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| FRANK V. GUZMAN, Forest Supervisor of the Salmon-Challis National Forest, in his official capacity, and the U.S. FOREST SERVICE, an agency of the Department of Agriculture, | |
| Defendants. | |

Currently pending before the Court are: Plaintiffs' Motion for Summary Judgment (Docket No. 38) and Defendants' Cross-Motion for Summary Judgment (Docket No. 45). All parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docket No. 20. The Court has carefully reviewed the record, including the briefing submitted by amici curiae (Docket No. 43)[1]; has heard and considered the oral arguments of counsel; and now enters the following Memorandum Decision and Order.

---

[1] The Idaho State ATV Association, Idaho State Trail Machine Association, Idaho Recreation Council, and Blueribbon Coalition (the "Amici") submitted a joint amici curiae brief in support of Defendants' decision adopting the SCNF Travel Plan. *See* Docket No. 43.

# INTRODUCTION

Plaintiffs, the Idaho Conservation League ("ICL") and The Wilderness Society, appeal a decision of the Forest Service adopting a Travel Management Plan ("Travel Plan") for the Salmon-Challis National Forest ("SCNF" or "Forest"). Plaintiffs generally contend that the Travel Plan fails to ensure that motor vehicle use is properly sited and managed on the Forest in order to minimize adverse environmental impacts. More specifically, Plaintiffs claim that the Record of Decision ("ROD") and final environmental impact statement ("FEIS") violate the National Environmental Policy Act ("NEPA") and applicable Forest Service regulations and Executive Orders, because: (1) with regard to the Travel Plan's specific impact on the Forest's Recommended Wilderness Areas ("RWAs") and Inventories Roadless Areas ("IRAs"), the EIS does not adequately address cumulative impacts or consider a reasonable range of alternatives; (2) the decisional process did not address the Forest Service's duty to minimize adverse impacts of off-road vehicle use; and (3) the decision included a minimum road system determination that is both procedurally and substantively inadequate.

The Forest Service and Amici defend the Forest Service's decision, emphasizing that the Travel Plan drastically reduces the miles of roads and trails open to motorized use. The Forest Service and Amici also emphasize that the Forest Service has a multiple-use mandate that requires it to balance a number of competing uses of the Forest, including a range of recreational uses. The Amici support the Travel Plan, because they believe it reflects a fair compromise among diverse user groups.

The Court is mindful that the process of planning, preparing and revising a document such as this Travel Plan is an enormous undertaking. Extensive work is required of many Forest Service employee specialists, and considerable efforts are expended by those members of the public, such as the members represented by Plaintiffs and Amici, who also are involved in the process. The Court is aware that the Salmon Challis National Forest is a particularly large and diverse national forest, with over 4.3 million acres within its boundaries, that for many years was administered as two separate national forests. The SCNF includes a remarkable variety of natural wonders, irreplaceable flora, fauna, waters, and terrain, and critically important timber and mineral resources. The Forest draws an equally remarkable variety of human use. The undersigned has been a frequent visitor to the Forest, and a user of both its motorized routes and its non-motorized trails.

To review the administrative record of a decision made to implement the Travel Plan at issue here, is to review only a cross-section of the time, attention and expertise that went into the creation of the Travel Plan. Accordingly, consistent with the standard of review used by the Court in considering appeals such as this, the Court has deferred to the decisions of the Forest Service when those determinations have been reasonably drawn, consistent with the requirements of federal law. Nonetheless, the Court also must fulfill its responsibility to return such decisions to the agency when those decisions have not been made in a lawful manner or where discretion has been abused or capriciously exercised. In this case, the Travel Plan largely withstands the legal challenges made

against it.  However, certain discrete portions of the decisions incorporated by the Forest Service into the Travel Plan fall short of the required measure.  The Court must, in those circumstances, return the Travel Plan to the agency for correction of those errors.

As further explained below, the Court finds that the Travel Plan violates the 2005 Travel Management Rule and NEPA in four substantial ways.  First, the record does not support the agency's decision to exclude from its cumulative impacts analysis the combined effect of motorized routes less than one-half mile long on the wilderness values and roadless characteristics of the RWAs and IRAs.  Second, the record does not reflect that the Forest Service adequately fulfilled its duty to make final route designations that meet the 2005 Travel Management Rule's minimization requirements.  Third, the record does not reflect that the Forest Service considered Plaintiffs' site-specific comments.  Fourth, the ROD must be amended to eliminate any suggestion that the Forest Service made a minimum road system determination for the SCNF.

## BACKGROUND

### A.  Forest Service Land Management

The Forest Service manages the lands it administers under a multiple-use management framework set forth in the Multiple-Use Sustained Yield Act ("MUSYA") of 1960, 16 U.S.C.A. §§ 528-531.  MUSYA requires a careful balancing of often competing resources, including "outdoor recreation, range, timber watershed, and wildlife and fish purposes." 16 U.S.C. § 528.

In addition, forest-specific management decisions are guided by the National Forest Management Act ("NFMA"), 16 U.S.C. § 1601, *et seq.* NFMA incorporates MUSYA's multiple-use management direction, adding "wilderness" as an additional management philosophy within the multiple use framework, 16 U.S.C. § 1604(e), reflecting the passage of the Wilderness Act of 1964. 16 U.S.C. § 1311*, et seq.*

The Wilderness Act establishes the National Wilderness Preservation System. Under the Wilderness Act, the Forest Service identifies "primitive" lands in the National Forest System and make recommendations to Congress as to those lands deemed deserving of "wilderness" status. *See* 16 U.S.C. § 1132. Both RWAs and IRAs are areas the Forest Service has identified as suitable for possible wilderness designation.[2] Congress ultimately decides whether these lands obtain wilderness designation. 16 U.S.C. § 1131. Designated "wilderness" is managed under the Wilderness Act in order to preserve its wild and pristine character.

## B.    Forest Service Travel Management

There are two sources of law specific to travel management on the national forests. First, there are two related executive orders specific to Off-Road Vehicle ("ORV") travel on trails and other areas. *See* Exec. Order No. 11644, 37 Fed. Reg. 2877 (Feb. 9, 1972),

---

[2]  The Recommended Wilderness Areas (RWAs) were identified by the Forest Service, through the Challis National Forest Land and Management Plan, as suitable for wilderness designation under the Wilderness Act. *Complaint*, ¶ 13. The Inventories Roadless Areas (IRAs) were separately identified in a nation-wide, roadless review process. *Id.*; *see also State of Cal. v. Block*, 690 F.2d 753,758 (9th Cir. 1982) (describing nation-wide roadless inventories, Roadless Area Review and Evaluation ("RARE") I and RARE II).

*as amended by* Exec. Order No. 11989, 42 Fed. Reg. 26,959 (May 25, 1977) (collectively, "ORV Executive Orders").  Second, the Forest Service must comply with its own travel management regulations as revised in 2005.  *See* Travel Management; Designated Routes and Areas for Motor Vehicle Use (70 Fed. Reg. 68264 (2005)); 36 CFR Parts 212, 251, 261, and 295 ("2005 Travel Management Rule").

1.     ORV Executive Orders

In 1972, President Nixon issued Executive Order No. 11644 directing the land management agencies, including the Forest Service, to adopt regulations providing for administrative designation of areas and trails open and closed to motor vehicle use.  Exec. Order No. 11,644, § 3; 37 Fed. Reg. 2877 (Feb. 9, 1972).  These regulations must "direct that the designation of such areas and trails will be based upon [1] the protection of the resources of the public lands, [2] promotion of the safety of all users of those lands, and [3] minimization of conflicts among the various uses of those lands."  *Id.*  These regulations also must "require that the designation of such areas and trails shall be in accordance with" the follow "minimization criteria:"

> (1) Areas and trails shall be located to minimize damage to soil, watershed, vegetation, and other resources;
>
> (2) Areas and trails shall be located to minimize harassment of wildlife or significant disruption of wildlife habitats;
>
> (3) Areas and trails shall be located to minimize conflicts between off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing

conditions in populated areas, taking into account noise and
other factors; and

(4) Areas and trails shall not be located in officially
designated Wilderness Areas or Primitive Areas. Areas and
trails shall be located in areas of the National Park system,
Natural Areas, or National Wildlife Refuges and Game
Ranges only if the respective agency head determines that
off-road vehicle use in such locations will not adversely affect
their natural, aesthetic, or scenic values. . . .

*Id.*

In 1977, President Carter issued Executive Order No. 11989, amending Executive

Order 11644 and adding additional protections. *See* Exec. Order No. 11,989; *Utah*

*Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1130 (10th Cir. 2006). Executive

Order 11989 directs the land management agencies, including the Forest Service, to close

certain trails and other areas upon a finding that ORV use "will cause or is causing

considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or

historic resources of particular areas or trails of the public lands." *Id.* at § 2. These areas

are to stay closed until the agency "determines that such adverse effects have been

eliminated and that measures have been implemented to prevent future recurrence." *Id.*

2.     The 2005 Travel Management Rule

Before 2005, the Forest Service implemented the ORV Executive Orders through

regulations that allowed each Forest to determine the appropriate location and extent of

ORV use in the national forests within the land management planning process. *See* 36

C.F.R. § 295.2 (repealed 2005); George Cameron Coggins & Robert L. Glicksman, 3

Pub. Nat. Resources L. 2nd Ed. § 31:8 (2010).  In 2005, the Forest Service revised these regulations in a comprehensive new rule, the 2005 Travel Management Rule.

The 2005 Travel Management Rule requires each national forest to specify designated routes, vehicle types, and seasons of use for motorized travel on national forest roads, trails, and other areas.  36 C.F.R. §§ 212.50(a), 212.51(a).  Any motor vehicle use not in accordance with these designations is prohibited.  36 C.F.R. § 261.13.

The 2005 Travel Management Rule contains general and specific criteria for the Forest Service to consider in designating routes for motor vehicle use.  36 C.F.R. § 212.55.  The general criteria, applicable to roads, trails, and other areas, require that the Forest Service:

> [C]onsider effects on National Forest System natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails, and areas that would arise if the uses under consideration are designated; and the availability of resources for that maintenance and administration.

36 C.F.R. § 212.55(a).

The specific criteria, applicable to trails and other areas but not necessarily roads, generally reflect the minimization requirements from the ORV Executive Orders.  The specific criteria require that the Forest Service:

> [C]onsider effects on the following, with the objective of minimizing:
>
> (1) Damage to soil, watershed, vegetation, and other forest resources;

**MEMORANDUM DECISION AND ORDER- 8**

(2) Harassment of wildlife and significant disruption of wildlife habitats;

(3) Conflicts between motor vehicle use and existing or proposed recreational uses of National Forest System lands or neighboring Federal lands; and

(4) Conflicts among different classes of motor vehicle uses of National Forest System lands or neighboring Federal lands.

36 C.F.R. § 212.55(b). The Forest Service must also consider the "compatibility of motor vehicle use with existing conditions in populated areas, taking into account sound, emissions, and other factors." *Id.*

The 2005 Travel Management Rule also includes provisions for the Forest Service to exercise its distinct authority to close trails and other areas. Basically consistent with Executive Order 11989, the regulations allow the Forest Service to temporarily close roads, trails, or other areas when it finds that ORV use "is directly causing or will directly cause considerable adverse effects on public safety or soil, vegetation, wildlife, wildlife habitat, or cultural resources associated with that road, trail, or area." 36 C.F.R. § 212.52(b)(2).

The Forest Service's duty to designate comprehensive travel management plans is distinct from its authority to close trails and other areas. For example, the Forest Service may exercise its authority over "[t]emporary, emergency closures" without prior notice to the public. *Id.* (notice must be provided "as soon as practicable following the closure"). In contrast, the 2005 Travel Management Rule requires that the Forest Service allow

public participation in the designation of roads, trails, and other areas for motorized use in the context of developing a comprehensive travel management plan.

Executive Order 11989 also reflects the distinct nature of these procedures. Executive Order 11989 provides, "[n]otwithstanding the provisions of Section 3 of this Order," the Forest Service may close certain trails or other areas upon a finding of "considerable adverse effects." Exec. Order 11989, 42 Fed. Reg. 26959. This means that, apart from the agency's duty under Section 3 to designate a comprehensive system of trails and other areas open or closed to motorized use, the agency also has the discretion to immediately close certain trails, even if those trails are otherwise designated as appropriate for motorized use in a travel plan, provided that the motorized use is causing "considerable adverse effects."

C.      **Travel Management on the Salmon Challis National Forest**

The SCNF Travel Plan challenged in this lawsuit was developed by the Forest Service to comply with the 2005 Travel Management Rule. (AR 046274). Previous management of motorized use in the SCNF came from the Salmon National Forest Land and Resource Management Plan (1988), the Salmon National Forest Travel Plan (1988), the Challis National Forest Land and Resource Management Plan (1989), and the Challis National Forest Travel Plan (1994). (AR 046274). Under those previous plans, the Forest generally was open to motorized use unless specifically closed. The previous system included designated routes (referred to as "authorized routes") and user-created

routes (referred to as "unauthorized routes") developed in those areas open to cross-country travel.[3]

## STANDARD OF REVIEW

This is an administrative review proceeding limited to the administrative record before the agency. Consequently, the parties seek to resolve this action as a matter of law on their respective cross-motions for summary judgment brought under Federal Rule of Civil Procedure 56.

Plaintiffs challenge the SCNF Travel Plan under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 702, 706. Under the APA, the Court may overturn agency action only if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or if the agency acted in excess of its statutory jurisdiction or authority. 5 U.S.C. § 706(2)(A), (C).

Though the APA review standard is deferential, the Court must nonetheless engage in a "thorough, probing, in depth review" of the agency action, in order to fulfill its own duties under the APA. *Citizens of Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 (1971). The Court must decide whether the agency has articulated a "rational connection between the facts found and the decision made." *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1065 (9th Cir. 2004). Moreover, the Court must reject an

---

[3] The term "unauthorized" applied to these routes is somewhat confusing, as the term implies that such travel ways were not permitted under the previous guidelines. However, the so-called "unauthorized routes" refer to user-created routes that were not identified, constructed, maintained, or otherwise designated by the Forest Service. Nonetheless, these routes were not illegal; rather, they were permitted under the previous travel plan management.

agency decision if it is based on an erroneous interpretation of law or "entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *League of Wilderness Defenders v. Forest Serv.*, 549 F.3d 1211, 1215 (9th Cir. 2008) (quotations omitted).

## ANALYSIS

### I.     NEPA Analysis

The Court first considers Plaintiffs' argument that the SCNF Travel Plan ROD and FEIS violate NEPA, because, with specific regard to the RWAs and IRAs, Defendants did not properly analyze the cumulative impacts of the proposed action and the range of alternative actions considered was unreasonable.  As explained more fully below, the Court finds Plaintiff's arguments persuasive only with regard to the Forest Service's failure to explain why routes shorter than one-half mile in length, even in aggregate, were minimally-intrusive on wilderness values and roadless characteristics.

NEPA requires federal agencies to prepare an environmental impact statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).  The EIS "shall provide full and fair discussion of [the] significant environmental impacts" of the proposed action.  40 C.F.R. § 1502.1. That discussion serves two purposes:

> First, it ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts.

> Second, it guarantees that the relevant information will be
> made available to the larger audience that may also play a role
> in both the decisionmaking process and the implementation of
> that decision.

*Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 768 (2004) (internal quotation marks,

brackets, and citation omitted).  By focusing agency and public attention on the

environmental effects of proposed agency action, "NEPA ensures that the agency will not

act on incomplete information, only to regret its decision after it is too late to correct."

*Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 371 (1989).

### A.     Cumulative Impact Analysis of Travel Plan's Effect on Inventoried Roadless and Recommended Wilderness Areas

The parties do not dispute that Defendants had a duty under NEPA to consider the

potential impacts of the Travel Plan on wilderness values and roadless characteristics in

the Forest's RWAs and IRAs.[4]  Plaintiffs contend that the Forest Service failed to meet

this duty, because it did not consider the environmental impacts of past motorized use or

the aggregate effects of motorized routes less than one-half mile in length ("micro-

routes") when evaluating the Travel Plan's cumulative impact on the wilderness values

and roadless characteristics of the SCNF's RWAs and IRAs.

---

[4]  *See Smith v. U.S. Forest Serv.*, 33 F.3d 1072, 1076-79 (9th Cir. 1994) (holding Forest Service had duty to consider effect of proposed timber sale on roadless area's wilderness potential under Washington State Wilderness Act of 1984);  *Nat'l Audobon Soc'y v. Forest Serv.*, 4 F.3d 832, 836 (9th Cir. 1993) (holding EIS flawed because Forest Service did not consider timber sales effect on roadless and undeveloped characteristics of project area under Oregon Wilderness Act) (overruled on other grounds).

**MEMORANDUM DECISION AND ORDER- 13**

### 1.    Cumulative Impacts Analysis of Past Motorized Use

The Court is satisfied that Defendants' cumulative impacts analysis of past motorized use meets NEPA requirements.  Because the Travel Plan did not create any new routes but was limited to a sub-set of routes already on the landscape, the Forest Service reasonably concluded that the Travel Plan would have no cumulative impact on wilderness values and roadless characteristics in the SCNF.

NEPA requires that the environmental impacts of a proposed action be considered in context with other past, ongoing, and reasonably foreseeable future actions.  40 C.F.R. § 1508.25(c)(3).  The regulations define a "cumulative impact" as:

> [T]he impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions.  Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

40 C.F.R. § 1508.7.

The duty to discuss cumulative impacts in an EIS is mandatory.  *City of Carmel v. Dep't of Transp.*, 123 F.3d 1142, 1160 (9th Cir. 1997).  Moreover, "an environmental impact statement must 'catalogue adequately past projects in the area' and provide a 'useful analysis of the cumulative impact of past, present, and future projects.'"  *Northwest Envtl. Advocates*, 460 F.3d 1125, 1135 (9th Cir. 2006) (citing *City of Carmel*, 123 F.3d at 1160).

When considering whether past action has a cumulative impact on a proposed

action, the agency follows guidance promulgated by the Council for Environmental

Quality ("CEQ"), the agency charged with developing regulations consistent with NEPA:

> CEQ interprets NEPA and CEQ's NEPA regulations on
> cumulative effects as requiring analysis and concise
> description of the identifiable present effects of past actions to
> the extent that they are relevant and useful in analyzing
> whether the reasonably foreseeable effects of the agency
> proposal for action and its alternatives may have a continuing,
> additive and significant relationship to those effects. . . .
> Agencies are not required to list or analyze the effects of
> individual past actions unless such information is necessary to
> describe the cumulative effect of all past actions combined.
> Agencies retain substantial discretion as to the extent of such
> inquiry and the appropriate level of explanation. *See Marsh v.
> Oregon Natural Resources Council*, 490 U.S. 360, 376-77
> (1989). Generally, agencies can conduct an adequate
> cumulative effects analysis by focusing on the current
> aggregate effects of past actions without delving into the
> historical details of individual past actions.

Guidance on Consideration of Past Action in Cumulative Effects Analysis, CEQ

Guidance, June 24, 2005 (http://ceq.hss.doe.gov/nepa/regs/Guidance_on_CE.pdf) (Last

visited February 3, 2011 and on file with the Clerk's office).

In short, in analyzing the environmental impacts of the Travel Plan, the Forest

Service was required to examine the cumulative impact of past, present, and future

motorized use on the roadless and wilderness characteristics of the RWAs and IRAs.

Plaintiffs contend that Defendants erred by limiting the analysis of environmental impacts

to the 109 miles of newly-designated routes and ignoring the environmental impacts

from: (1) on-going use of 783 miles of previously-authorized routes, and (2) on-going effects of the 487.6 miles of motorized routes closed under the Travel Plan.

The fundamental problem with Plaintiffs' argument is that the Travel Plan results in significantly less motorized use compared to the environmental baseline of motorized use in the RWAs and IRAs. This baseline includes 1,380 miles of existing motorized routes, both authorized and unauthorized, some of which the Forest Service found were "causing adverse resource impacts." (AR 046281). The Travel Plan reduces the total miles of motorized routes in the RWAs and IRAs by closing approximately 488 miles of unauthorized motorized routes.

In addition, the "new routes" are not actually new at all. Rather, of the previously-existing 1,380 motorized routes in the RWAs and IRAs, 783 were authorized, meaning they were part of the designated system, and 597 were unauthorized, meaning they were permitted but not designated under the previous SCNF travel management system. The 109 miles of "new routes" refer to a portion of the unauthorized routes that already existed and are "new" only in terms of their official designation under the Travel Plan.

Because the Travel Plan significantly reduces motorized use in the RWAs and IRAs and the designated routes consist of a sub-set of pre-existing routes, it was reasonable for the Forest Service to conclude that the Travel Plan would not result in additive or cumulative impacts to wilderness values and roadless characteristics. *See Town of Cave Creek v. F.A.A.*, 325 F.3d 320, 327-28 (D.C. Cir. 2003) (holding EIS

adequately considered cumulative impacts by considering environmental baseline combined with project's additive impact).

In addition, contrary to Plaintiffs' argument, the Administrative Record reflects that the Forest Service did not limit its cumulative impacts analysis to these newly-authorized routes. Instead, the DEIS and FEIS support the Forest Service's argument that it considered each of the Travel Plan alternatives in terms of the total designated system's impact on wilderness values and roadless characteristics as reflected in road densities.

In the DEIS, the Forest Service analyzed the total number of miles of designated routes within each RWA and IRA and calculated the motorized route density as a ratio of miles per 1000 acres of roadless area. (AR 044407- 044408; AR 044768- 044770). The Forest Service then treated the road density ratios as a proxy for understanding the impacts of each of the proposed alternatives on wilderness values and roadless characteristics. *Id.* The FEIS relies upon these density analyses as part of its ultimate conclusions regarding the Travel Plan's cumulative impacts on wilderness values and roadless attributes. (AR 046398-99).

Plaintiffs are correct in that the Preferred Action Alternative did not exist when the DEIS was developed and the FEIS is more focused upon the "new routes," presenting "a route-by-route view of the *changes* to IRAs and [RWAs], and by subsequently analyzing the impact of those *changes* on roadless and recommended wilderness values." (AR 046398) (emphasis added). Still, even though the Preferred Alternative did not exist when the DEIS was drafted, the Preferred Alternative was developed from the Revised

Proposed Action discussed in the DEIS (AR 046277). Thus, the DEIS supports both the Forest Service's argument that it considered the Travel Plan's impact on the RWAs and IRAs in light of the combined effects of the previously-designated and newly-designated routes, as well as the Forest Service's ultimate conclusion that the Travel Plan will have no cumulative impact on wilderness values and roadless characteristics.

The Court is satisfied that the agency's approach to analyzing the Travel Plan's cumulative impacts on wilderness values and roadless characteristics was reasonable. Because the Travel Plan results in no new routes upon the landscape and actually reduces the total mileage available for motorized use, it was reasonable for the Forest Service to conclude that the Travel Plan would not result in any cumulative impacts on wilderness values and roadless characteristics in the RWAs and IRAs.

### 2. Analysis of Multiple, Short Motorized Routes on Roadless and Recommended Wilderness Areas

The FEIS for the SCNF Travel Plan does not evaluate the cumulative impacts of the micro-routes on wilderness values and roadless characteristics. Instead, the Forest Service contends that the micro-routes are "minimally-intrusive." The Court finds this decision was arbitrary and capricious with regard to the micro-routes' aggregate cumulative impact.

The Forest Service focused its cumulative impacts analysis on routes longer than one-half mile in length based on its determination that "intrusions into roadless areas of zero to less than a half-mile were considered to be minimally intrusive and not likely to

affect wilderness values." (AR 0463999). The decision appears to derive from the statement contained in the "Roadless and Recommended Wilderness Specialist Report." (AR 037104). The report states:

> Only routes longer than a half-mile were selected for analysis, because intrusions into roadless areas of zero to less than a half-mile were considered to be minimally-intrusive and not likely to affect wilderness values. The size of the roadless area was taken into account in this indicator, as a new half-mile long motorized trail would be more likely to impact the wilderness value of a smaller area than it would a larger area.

(AR 37109).

Based on this statement, the Court finds there was a rational basis for the Forest Service's conclusion that a single intrusion of less than a half-mile would not significantly impact wilderness values given the relative size of the roadless areas. However, the Court cannot find a rational basis in the record to support the Forest Service's conclusion that, together, these micro-routes would not significantly impact wilderness values. There may well be a rational basis for finding that the micro-routes' aggregate impact is minimally-intrusive. However, the Administrative Record here does not reflect a rational basis for the decision.

Moreover, there is evidence in the record that suggests there was no "decision" or "finding" that the micro-routes' aggregate impact was minimally-intrusive. This evidence indicates that the Forest Service intended to conduct an analysis of the micro-routes' aggregate impact, but that such an analysis never occurred.

The Administrative Record contains a series of email messages from Forest Service staff that reflect the Forest Service intended to conduct an analysis of the micro-routes' cumulative impact on the roadless character of the IRAs. The first email, dated July 6, 2009, appears to have been written in the process of preparing the "Roadless and Recommended Wilderness Specialist Report," dated August 2009. This email describes an agency author:

> Trying to figure out how best to address my oversight of the wilderness potential attributes of the roadless areas . . . . The wilderness potential of a given roadless area- its untrammeled nature, for example, may not change by motorizing a half-mile of road segment within it. When you add ten of those half-mile segments together, however, then you might begin to impact its potential in that attribute . . . . I feel I need a way to convey the fact that these segments would not individually impact an IRA, but cumulatively they might.

(AR 047515) (July 6, 2009 email, 8:42am). A responsive email states, "[Y]es[,] the cumulative result of all road segments in one roadless area should be addressed as an overall summary of whether the routes will adversely affect future consideration as potential wilderness." *Id.* (July 6, 2009 email, 10:55 am).

Later, in November 2009, after the Travel Plan decision had been appealed, an internal agency inquiry was made as to "how we arrived at [the conclusion that] '[o]nly routes longer than a half mile were selected for analysis, because intrusions into roadless areas of zero to less than a half-mile were considered minimally intrusive and not likely to affect wilderness values.'" (AR 047514) (November 12, 2009 email, 11:18 am). A responsive email states:

**MEMORANDUM DECISION AND ORDER- 20**

The ½ mile effect statement came from some work under the Upper Columbia River Basin Study. It was intended to address effects of roading on habitat effectiveness. . . .

For travel planning purposes we use the ½ mile criteria as a way to reduce the workload, not to dismiss effects. If I remember correctly you were going to lump the routes less than ½ mile and then generally describe the effect these routes would have on roadless character and wilderness attributes. The effects would be generalized since they cover many routes. But by doing so you would reduce the workload of describing effects for all routes. You would then only identify by name and number routes longer than ½ mile and describe those effects in the EIS specific to each route.

*Id.* (December 2, 2009 email, 4:00 pm).

Plaintiffs interpret this series of email messages to mean that the Forest Service intended to consider the effects of the micro-routes in a cumulative manner for each roadless area but never did so. Therefore, the "decision" to omit an aggregate analysis of the micro-routes was arbitrary and capricious, the result of an oversight rather than reasoned analysis.

In contrast, Defendants interpret this series of email messages as evidence that the Forest Service considered the possibility that the micro-routes in aggregate might have an impact on wilderness or roadless values, and the FEIS reflects that the Forest Service ultimately concluded that they did not. In particular, Defendants point to certain maps in the record and contend that the maps reflect that the micro-routes are minimally intrusive, because they are located on the outer edges of the RWAs and IRAs.

In light of the administrative record as a whole, these maps do not provide a sufficient rational basis for the agency's finding that the micro-routes were "minimally-intrusive and not likely to affect wilderness values." (AR 37109). The Court recognizes that even when an agency decision is explained "with less than ideal clarity," the decision should be upheld "if the agency's path may reasonably be discerned." *Alaska Dept. of Environmental Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004). However, the Administrative Record here does not reveal the path of agency reasoning with regard to the cumulative impacts of the micro-routes in aggregate. Instead, the record indicates that the agency intended to analyze the micro-routes' aggregate effect on wilderness values and roadless characteristics but ultimately left the issue unresolved.

Moreover, the agency's *post hoc* justifications for the decision puts the Court in the awkward position of interpreting the maps in the record to determine whether or not the micro-routes in aggregate would have an impact on wilderness values and roadless characteristics. The Court has no way of knowing whether the maps selected for analysis are representative of the RWAs and IRAs on the Forest as a whole, nor does the Court have the scientific expertise necessary to determine what the maps mean in terms of wilderness values and roadless characteristics. Simply put, the maps alone do not sufficiently reflect the path of agency reasoning.

The Administrative Record as a whole does not provide support for the agency's decision to exclude from its cumulative impacts analysis the combined effects of the

micro-routes on wilderness values and roadless characteristics in the RWAs and IRAs. Accordingly, the cumulative impacts analysis is incomplete and violates NEPA.

**B.    The Range of Alternatives in the FEIS**

Plaintiffs also argue that the decision adopting the Travel Plan violates NEPA, because the FEIS did not contain a reasonable range of alternative actions.  As explained more fully below, the Court finds the range of alternatives was sufficient in light of the Travel Plan's purpose.

An EIS must include an evaluation of alternatives to the proposed action.  42 U.S.C. § 4332(2)(C)(iii).  The agency must "[r]igorously explore and objectively evaluate all reasonable alternatives, and, for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated."  40 C.F.R. § 1502.14. The analysis of alternatives to the proposed action is  "'the heart of the environmental impact statement.'"  *Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 531 F.3d 1114, 1121 (9th Cir. 2008) (quoting 40 C.F.R. § 1502.14). "The existence of reasonable but unexamined alternatives renders an EIS inadequate."  *Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1065 (9th Cir. 1998).

"Judicial review of the range of alternatives considered by an agency is governed by a 'rule of reason' that requires an agency to set forth only those alternatives necessary to permit a 'reasoned choice.'"  *State of Cal. v. Block*, 690 F.2d 753, 761 (9th Cir. 1982) (citing *Save Lake Washington v. Frank*, 641 F.2d 1330, 1334 (9th Cir. 1981); *Life of the Land v. Brinegar*, 485 F.2d 460, 472 (9th Cir. 1973), cert. denied, 416 U.S. 961 (1974)).

The "touchstone" of the Court's inquiry "is whether an EIS's selection and discussion of alternatives fosters informed decision-making and informed public participation." *Id.*

The FEIS for the Travel Plan evaluated five alternatives, including a no-action alternative:

(1)  No Action Alternative: represents the authorized management situation under the previous Travel Plans.  (AR 046281).  This alternative would maintain current management direction and would not implement the 2005 Travel Management Rule.

(2)  Designated System Routes: would open all existing designated system motorized routes while closing all unauthorized routes.  (AR 04682).

(3)  Recommended Wilderness/ Roadless Values Emphasis: would eliminate all motor vehicle traffic in the RWAs and would not designate any new roads in the IRAs, allowing for a total of 2,905 miles of motorized access routes.  (AR 04682-83).

(4)  Maximum Motorized Emphasis: offers the least restrictive opportunities for motorized recreation, designating a total of 4,351 miles of designated routes.  (AR 04683).

(5)  Preferred Alternative: a new alternative identified in the FEIS representing the Forest Service's attempt to "to balance competing public interests regarding motorized and non-motorized uses on the SCNF" and designating 3,534 miles of motorized routes.  (AR 046284).

An additional action alternative that would have eliminated all motor vehicle travel in the RWAs and IRAs was considered but dismissed from detailed analysis, because these areas include over 70 percent of the Forest and the Forest Service found that "eliminating all motor vehicle travel within IRAs [and RWAs] would *fragment the existing transportation system*." (AR 046278) (emphasis added).  Thus, the "no motorized

access" in the IRAs and RWAs served as a point of reference, rather than a seriously considered alternative. *State of Cal. v. Block*, 690 F.2d at 765.

On balance, the Court is satisfied that the range of alternatives, even though leaning toward the inclusion of more rather than less motorized access in the RWAs and IRAs, was reasonable given the purpose of the project. As stated in the FEIS, the "Purpose and Need" for the Project were "to designate a system of roads, trails, and areas open for public motor vehicle use," while balancing a host of other factors including the reduction of "impacts to forest resources." (AR 046274). Accordingly, the Forest Service looked to its current system of trails on the ground, both designated and unauthorized routes, and then had to decide what routes would be part of a rational system of motorized access into the future and under what conditions.

The impact of motorized access on the RWAs and IRAs is a critical component of this analysis, because over 70 percent of the land in the SCNF is located within an RWA or IRA. Moreover, these areas have been identified for possible inclusion in the wilderness system, because of their wilderness values and roadless characteristics, qualities typically inconsistent with motorized use.

Nevertheless, even though a critical component of the Travel Plan, motorized use in the RWAs and IRAs was not the only factor under consideration. Looking at motorized access more generally on the Forest, the Forest Service considered alternatives that ranged from a low of 2,905 miles of motorized routes (Alternative 3) to a high of

5,147 miles of motorized routes (Alternative 1). This range covers a wide variety of approaches.

In addition, the Administrative Record reflects the Forest Service's concern that closing too many motorized routes in the RWAs and IRAs would fragment the existing system. Thus, even when considering the reasonableness of the range of alternatives only with regard to motorized access in the RWAs and IRAs, the FEIS was reasonable in light of the Forest Service's concern for route connectivity.

Considering the purpose of the Travel Plan, the Court is satisfied that the range of alternatives offered by the Forest Service was reasonable. The bottom line is that the range of alternatives presented allowed for informed decision-making and meaningful public participation. *See Westlands Water Dist. v. Dept. of Interior*, 376 F.3d 853, 868 (9th Cir. 2004) (holding "[t]he EIS was not required to consider additional mid-range alternatives to comply with NEPA").

Contrary to Plaintiffs' argument, this holding is consistent with the holding in *State of Cal. v. Block*, 690 F.2d 753. In *California v. Block*, the Ninth Circuit considered a programmatic plan for roadless designations throughout the National Forest System lands. *Id.* at p. 758. Even though the project's purpose was to allocate Forest Service roadless areas across the country into three categories, the agency analyzed alternatives that contemplated a wilderness category that only included from 0 to 33 percent of the areas as wilderness. The Ninth Circuit held that the agency had not considered a reasonable range of alternatives, because the EIS "uncritically assumes that a substantial

portion of the [inventoried roadless] areas should be developed and considers only those alternatives with that end result." *Id.* at p. 767.

Relying upon this case, Plaintiffs argue that a range of alternatives that includes no more than a 43 percent closure of the existing motorized routes is similarly insufficient. However, the fact that the Forest Service did not consider an alternative that would close more than 43 percent of the motorized access on IRAs and RWAs does not *per se* render the range of alternatives unreasonable. The reasonableness of the alternatives is measured from many angles, and not simply from a purely quantitative measure of the percentage of acreage reserved for wilderness protection.

Further, the *California v. Block* case is distinct, because it involved a challenge to a nation-wide, programmatic EIS for designating wilderness. In contrast, this case deals with a forest-specific Travel Plan designating appropriate routes and conditions for motorized use. Given the Travel Plan's purpose, the designation of a rational system of motorized routes; the Forest Service's concerns regarding connectivity; and the current set of trails already on the landscape; the Court is satisfied that the range of alternatives was reasonable.

## II.     Forest Service Compliance with 2005 Travel Management Rule and ORV Executive Orders

Plaintiffs argue that the SCNF Travel Plan violates the 2005 Travel Management Rule and the ORV Executive Orders, because the Forest Service did not consider or implement minimization criteria when determining appropriate routes for off-road vehicle

use. *See* Ex. Ord. 11644, as amended by Ex. Ord. 11898, § 9; 36 C.F.R. § 212.52(b). Plaintiffs further argue that the Defendants violated these same ORV Executive Orders and regulations when they failed to close certain motorized vehicle routes that Plaintiffs contend will cause or are causing significant resource damage. *Id.*

As explained more fully below, the Court finds that the SCNF Travel Plan violates the 2005 Travel Management Rule because the decision does not adequately reflect whether or how the Forest Service applied the minimization criteria with the objective of minimizing impacts. In addition, the decision adopting the Travel Plan violates the 2005 Travel Management Rule and NEPA, because the Forest Service did not address directly the site-specific evidence submitted by Plaintiffs during the comment period. However, the Court finds that the Forest Service did not err by not immediately closing certain routes Plaintiffs contend are causing significant resource damage.

## A.  Implementing the  "Minimization Criteria" from the 2005 Travel Management Rule

In order to meet the requirements of the 2005 Travel Management Rule, the Forest Service must show that, in developing the Travel Plan, it "consider[ed] . . . with the objective of minimizing" the impacts of ORV use on each of the following: (1) damage to soil, watershed, vegetation, and other forest resources; (2) harassment of wildlife and significant disruption of wildlife habitats; (3) conflicts between motor vehicle use and existing or proposed recreational uses of National Forest System lands or neighboring Federal lands; and (4) conflicts among different classes of motor vehicle users of National

Forest System lands or neighboring Federal lands. 36 C.F.R. § 212.55(b). To ensure that the Travel Plan meets these substantive guidelines, the Court must review the record for evidence that the Forest Service: (1) considered ORV impacts in terms of the minimization criteria and (2) made efforts to minimize these impacts given the fact that ORV use is a permissible recreational use on the national forests and ORV use, like any other human activity on the forest, will have some impact on the natural environment. Here, the Administrative Record does not demonstrate whether or how Defendants implemented and incorporated the minimization criteria into the Travel Plan.

To the Forest Service's credit, the Administrative Record does support the Forest Service's contention that it met its duty to *consider* the minimization criteria, at least in the sense that the Forest Service gathered information consistent with the minimization criteria. Appendix G of the FEIS provides a description of the route criteria that were used in making route designations under the SCNF Travel Plan (the "Matrix Criteria"). (AR 046863-046867). The Forest Service explains that the Matrix Criteria were considered in each Ranger District as reflected in the "Route Designation Matrices." (AR 020313-020452).

The Matrix Criteria, 28 in all, do not mirror the minimization criteria from the 2005 Travel Management Rule. Nonetheless, an examination of the Matrix Criteria reflects that the Forest Service addressed the minimization criteria from the 2005 Travel Management Rule.

For example, the 2005 Travel Management Rule first requires that the Forest

Service consider damage to soil, watershed, vegetation, and other forest resources. *See*

36 C.F.R. § 212.55(b)(1).  Consistent with these requirements, the Route Designation

Matrices include information regarding watershed criteria (AR 046865), erosion potential

(AR 046866), vicinity of sensitive plants (AR 046866), and weed risk rating (AR

046866).

Second, the 2005 Travel Management Rule requires the Forest Service to consider

"[h]arassment of wildlife and significant disruption of wildlife habitats." *See* 36 C.F.R.

§ 212.55(b)(2).  The Route Designation Matrices include information regarding route

density for wildlife effects by hydrologic unit (AR 046866), and routes in riparian habitat

conservation area (AR 046865).

Third, the 2005 Travel Management Rule requires the Forest Service to consider

"[c]onflicts between motor vehicle use and existing or proposed recreational uses of

National Forest System lands or neighboring Federal lands" and "[c]onflicts among

different classes of motor vehicle uses of National Forest System lands or neighboring

Federal lands." *See* 36 C.F.R. § 212.55(b)(3), (4).  The Route Designation Matrices

include information regarding ease of enforcement (AR 046864), consistency with Forest

Plan recreation opportunity spectrum (AR 046865), user conflicts[5] (AR 046865),

connectivity with BLM routes (AR 046867), and private access issues (AR 046865).

---

[5] "User conflicts" are defined as "perceived conflicts between motorized and non-motorized recreation uses as well as different types of motorized use such as conflicts between ATV and motorcycle users."  (AR 046865).

Thus, through the Route Designation Matrices, the Forest Service has made at least a minimum showing that the minimization criteria were considered, since the Forest Service made efforts to gather the required information. Nonetheless, the missing piece necessary to meet the requirements of the 2005 Travel Management Rule is some demonstration that the minimization criteria were then implemented into the decision process consistent with the objective of minimizing their impacts.

The Route Designation Matrices are not evidence of the implementation of such criteria. (AR 020313-020452). Instead, they contain a large number of subject boxes with a variety of different checkmarks and other notations recorded. There is no way to know how or if the Forest Service used this information to select routes with the objective of minimizing impacts. Without some explanation for how this information was implemented, the Forest Service has failed to meet the regulatory requirements contained in the 2005 Travel Management Rule.

In an attempt to connect the dots, the Forest Service points to certain conclusory statements in the record. For example, the Forest Service explained that "[i]ndicators were chosen so that the Deciding Official could evaluate the differences between alternatives and determine which alternatives have the least potential impact to forest resources." (AR 046727). In addition, the ROD states that the Deciding Official was "fully satisfied that all practicable means to avoid or minimize environmental harm from the Selected Alternative have been adopted through the implementation of route designation criteria and project design features." (AR 047080).

Still, there is nothing in the record identifying how this happened and on what basis the conclusions were reached. Without some description of how the selected routes were designed "with the objective of minimizing" impacts, the Court cannot assess whether there is a "rational connection between the facts found and the decision made." *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d at 1065.

This finding is consistent with the 2009 decision from the Northern District of California. *See Ctr. for Biological Diversity v. U.S. Dept. of Interior*, --- F. Supp.2d ----, 2009 WL 7036134 (Sept. 28, 2009) ("*CBD*"). In *CBD*, the court interpreted regulations promulgated by the Bureau of Land Management ("BLM") to comply with the ORV Executive Orders and found that the BLM violated these regulations when it failed to demonstrate how the "minimization criteria" were applied in designating specific ORV routes. The Court reasoned, "'[m]inimize' as used in the regulation does not refer to the number of routes, nor their overall mileage. It refers to the effects of route designations, *i.e.* the BLM is required to place routes specifically to minimize 'damage' to public resources, 'harassment' and 'disruption' of wildlife and its habitat, and minimize 'conflicts' of uses." *Id.* at *20 (quoting 43 C.F.R. § 8342.1(a)- (c)).

Defendants attempt to distinguish the holding in *CBD,* arguing that this case has no bearing on the 2005 Travel Management Rule, because the BLM and Forest Service regulations are different. According to Defendants, while the BLM regulations may require a showing that the minimization criteria were applied, the Forest Service

regulations do not. The Court finds this interpretation of the 2005 Travel Management

Rule unreasonable.

The BLM regulations draw directly from the language from the ORV Executive

Orders and state that in designating ORV routes the BLM must minimize environmental

impacts:

> (a) Areas and trails *shall be located to minimize* damage to soil, watershed, vegetation, air, or other resources of the public lands, and to prevent impairment of wilderness suitability.
>
> (b) Areas and trails *shall be located to minimize* harassment of wildlife or significant disruption of wildlife habitats. Special attention will be given to protect endangered or threatened species and their habitats.
>
> (c) Areas and trails *shall be located to minimize* conflicts between off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors.
>
> (d) Areas and trails shall not be located in officially designated wilderness areas or primitive areas. Areas and trails shall be located in natural areas only if the authorized officer determines that off-road vehicle use in such locations will not adversely affect their natural, esthetic, scenic, or other values for which such areas are established.

43 C.F.R. § 8342.1 (emphasis added). This language is different from the 2005 Travel

Management Rule, which provides that "the responsible official shall consider effects . . .

with the objective of minimizing." 36 C.F.R. § 212.55. Based on this distinct language,

Defendants argue that the minimization criteria in the 2005 Travel Management Rule are goals but not substantive guidelines.

Ordinarily, an agency's interpretation of its own regulation is entitled to substantial deference. *Idaho Dept. of Health and Welfare v. United States Dept. of Energy*, 959 F.2d 149, 152 (9th Cir. 1992). However, the Court need not defer if the agency's interpretation is not reasonable. *Western States Petroleum Ass'n v. E.P.A.*, 87 F.3d 280, 283 (9th Cir. 1996).

Here, the Court finds Defendants' interpretation of the 2005 Travel Management Rule is not reasonable. The different language used in the Forest Service and BLM regulations constitute a distinction without real, practical difference. Not only are both agencies bound by the plain language of the ORV Executive Orders, but both contemplate the same result: the land management agencies will consider the impacts of ORV use and, in selecting appropriate routes, will attempt to minimize these impacts.

This outcome is the same, whether the language directs that the agency "minimize" the impacts or consider the impacts "with the objective of minimizing." The language "with the objective of minimizing" means that the whole goal or purpose of the exercise is to select routes in order to minimize impacts in light of the agency's other duties.[6] Simply listing the criteria and noting that they were considered is not sufficient to meet

---

[6] The definition of "objective" is "something toward which effort is directed: an aim, goal, or end of action." Webster's 3d New Int'l Dict. (1993).

this standard. Instead, the Forest Service must explain how the minimization criteria were applied in the route designation decisions.

The Forest Service is charged with considering the effects of motorized use on certain criteria. In addition, the Forest Service is charged with selecting routes "with the objective of minimizing" these effects. How the Forest Service determines to do this in light of its other obligations is up to the Forest Service. The Court simply reviews the record to ensure that this objective has been applied in the selection of specific routes.

In the instant case, there is no evidence reflecting how the Forest Service applied the minimization criteria. Accordingly, the decision is in error.

**B.    Adequacy of Defendants' Response to Plaintiffs' Site-Specific Comments**

Reflecting the importance of site-specific information to the Travel Plan decision, the Forest Service from the outset has requested site-specific comments from the public. Beginning in April 2006 when "preliminary public involvement was initiated," the Forest Service asked the public "to provide input about specific routes they wanted to remain open and/or those routes that may be in conflict with other desired conditions sought by the public on Forest Service Lands." 72 Fed. Reg. 43224 (Aug. 3, 2007) ("Notice of intent to prepare an Environmental Impact Statement"). In addition, the forms used to solicit public input requested site-specific information. *See* AR000023-24 (Forest Service form stating "[p]lease be as specific as possible with your comments. Include the route number, route name, and/or area where possible"); AR000021 (Forest Service letter

stating "make your comments as specific as possible in regards to individual trails, roads, and areas").

In response, Plaintiffs gathered site-specific information and submitted this information, including photographs, to the Forest Service in the public comment period. Plaintiffs argue that this evidence shows that the Forest Service did not make route decisions that minimized resource damage and, in the face of this evidence, the Forest Service was obligated to close certain routes as directed by Executive Order 11989 and 36 C.F.R. § 212.52(b).

As explained more fully below, the Court does not find that this evidence demonstrates a failure by the Forest Service to apply minimization criteria, nor does it find that this evidence mandates particular route closures. Nonetheless, the Forest Service's failure to demonstrate how it considered this evidence that it requested renders the decision arbitrary and capricious and a violation of NEPA. The Forest Service has discretion to make determinations in the face of conflicting evidence, so long as it provides a rational basis for its decision. The fundamental problem here is that the Forest Service did not address Plaintiffs' comments. Therefore, the decision lacks the rational basis required.

### 1.    Plaintiffs' Site-Specific Comments

In the administrative notice and comment process, Plaintiffs submitted over a thousand pages of material for the Forest Service to consider. (AR 042621- 043585; AR 043586-043615). Plaintiffs' comments include fourteen pages of narrative, a spreadsheet

listing site-specific concerns, and hundreds of photographs Plaintiffs refer to as "monitoring data." *Id.* Plaintiffs contend that the Forest Service did not respond to their site-specific comments.

As outlined in Plaintiffs' briefing, Plaintiffs rely on these comments to challenge Defendants' decisions concerning five motorized routes:

1. On the Middle Fork Ranger District, at least two segments of the Hay Creek-Knapp Creek Trail (No. 4032) is designated open to vehicles less than 50 inches in width. Plaintiffs contend this designation is in error, because: (1) there are locations along the trail where drainage is inadequate and rutting, erosion, and sediment delivery to Knapp Creek and its tributaries are occurring at significant levels and (2) the puncheon at one stream crossing is seriously degraded and the stream bank has serious rutting, erosion, and sediment delivery problems at Knapp Creek. *Memorandum in Support of Plaintiffs' Motion for Summary Judgment*, p. 17 (Dkt. No. 38).

2. There is a designated loop system consisting of Beaver Creek Trail (No. 4033) and Winnemucca Creek Trail (No. 4035.03) for motorized use by two-wheeled vehicles. Plaintiffs contend this designation is in error, because the Beaver Creek ORV trail repeatedly criss-crosses the stream causing trail widening, rutting, erosion, sediment delivery, and diversion of the stream from its native channel. In addition, the Winnemucca Creek trail is similarly unsustainable as it has become significantly rutted, eroded, and is contributing to water quality and fish habitat concerns. *Id.* at p. 18.

3. Trail Number 4032 on the Challis-Yankee Fork District is designated open to vehicles less than 50 inches in width. Plaintiffs contend this is in error, because one segment of the trail "goes straight up a steep hill with highly erosive soils," and the use of four wheelers up the steep grade has caused significant rutting and erosion on the slope. *Id.* at p. 19.

4. Valley Creek Trail (No. 4039) on the Challis-Yankee Fork District is also designated for use by vehicles less than 50 inches in width forms a motorized loop with the Hay Creek-Knapp Creek Trail. Plaintiffs argue this designation is in error, because the water table in this area is high and there

are unaddressed drainage problems causing rutting, erosion, pooling of water, and diversion of the stream down a trail.  *Id.*

5.  Swauger Lakes Trail (No. 4091) in the Borah Peaks Recommended Wilderness Area is designated for continued motorized use by two-wheeled vehicles.  Plaintiffs contend this motorized trail, located within an RWA is causing significant damage to the area's wilderness character.  *Id.* at 20.

Plaintiffs rely upon these comments as evidence that the Travel Plan did not minimize impacts.  They also argue that this evidence mandates trail closure.

### 2.  Forest Service Obligations to Consider Evidence in Record

Plaintiffs site-specific comments do not establish as a matter of law that the Travel Plan does not minimize impacts.  However, here again, the Administrative Record does not reflect that the Forest Service addressed this evidence, and, as a result, the decision adopting the Travel Plan is arbitrary and capricious and a violation of NEPA.

"[P]ublic scrutiny [is] essential to implementing NEPA," 40 C.F.R. § 1500.1(b).  Thus, the Forest Service is required to "assess and consider ... both individually and collectively" the public comments received during the NEPA process and to respond to them in the FEIS.  *Id.* § 1503.4(a).

That is not to say that the agency must respond to each comment specifically.  Not all comments merit individual discussion by the agency.  *See* 40 C.F.R. § 1503.4(b).  As the Sixth Circuit aptly describes:

> [A]n administrative agency need not respond to every comment, but it must respond in a reasoned manner to the comments received, to explain how the agency resolved any significant problems raised by the comments, and to show how that resolution led the agency to the ultimate rule.

*Navistar Int'l Trans. Corp. v. EPA*, 941 F.2d 1339, 1359 (6th Cir.1991) (quotation omitted).  In many instances, the agency meets this standard by summarizing the types or categories of comments, as the Forest Service did here (AR 046705 -046742).

Further, although agencies have wide discretion in assessing scientific evidence, they must "take a hard look at the issues and respond[ ] to reasonable opposing viewpoints." *Earth Island Institute v. U.S. Forest Serv.*, 351 F.3d 1291, 1301 (9th Cir. 2003).  "Because analysis of scientific data requires a high level of technical expertise, courts must defer to the informed discretion of the responsible federal agencies." *Id*. "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own experts, even if a court may find contrary views more persuasive." *Id.*

In the instant case, there is no indication from the Administrative Record that Defendants considered Plaintiffs' site-specific concerns and supporting photographic evidence.  Defendants argue that the site-specific comments were considered as reflected in the agency's substantive decisions. *Defendants' Response and Cross-Motion for Summary Judgment*, pp. 28-31 (Dkt. No. 44).  However, Defendants do not point to any reasoned discussion in the record that would reflect how the agency considered, evaluated, or rejected Plaintiffs' concerns.  Moreover, the generalized or categorical responses to the comments  (AR 046705 -046742) do not address the site-specific concerns raised by Plaintiffs.

**MEMORANDUM DECISION AND ORDER- 39**

The Court cannot defer to the agency in situations where, as here, the agency does not address conflicting evidence in the Administrative Record. "Courts must independently review the record in order to satisfy themselves that the agency has made a reasoned decision based on its evaluation of the evidence." *Earth Island Institute*, 351 F.3d at 1301. If an agency fails to make a reasoned decision based on an evaluation of the evidence, the Court must conclude that the agency has acted arbitrarily and capriciously. *Id.*

On this record, the Court concludes that Plaintiffs have acted arbitrarily and capriciously by failing to address Plaintiffs' site-specific concerns. The Forest Service cannot meet its obligations under the 2005 Travel Management Rule or NEPA without some explanation of how it considered Plaintiffs' site-specific evidence of what appear to be significant environmental effects occasioned by motorized use.

### 3.    Forest Service Duty to Close Trails

Plaintiffs argue that their site-specific comments triggered the Forest Service's duty under 36 C.F.R. § 212.52(b) and Executive Order 11989 to close certain trails, because the evidence submitted demonstrates that off-road vehicles are causing "considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands" Exec. Order 11989. However, Plaintiffs seek to compel the Forest Service to take action that it is not compelled to take, and this court is without authority to mandate such action.

As a preliminary matter, the agency's duties regarding the designation of trails are separate from the agency's discretion to close certain trails to address considerable adverse effects.  *See Sierra Club v. Clark*, 756 F.2d 686, 689-90 (9th Cir. 1985) (applying BLM regulations promulgated consistent with ORV Executive Orders and finding separate duties to close versus designate trails and other areas).  With regard to designating an appropriate travel plan, the regulations contemplate a thoughtful, deliberate process allowing for public input and requiring consideration of certain criteria. In contrast, the Forest Service has considerably more discretion in terms of temporary, emergency closures and may act initially without public comment upon a finding that ORV use is "directly causing or will directly cause considerable adverse effects."  36 C.F.R. § 212.52(b)(2).  This standard itself allows the agency a great deal of discretion as a considerable range of evidence and opinion would be permissible in a finding of "considerable adverse effects."

Given the separate procedures applicable to travel plan development versus emergency closure, Plaintiffs' comments submitted in the context of a travel plan do not necessarily compel agency action under 36 C.F.R. § 212.52(b).   Moreover, because the agency does not have a discrete, nondiscretionary duty to close trails under 36 C.F.R. § 212.52(b), the Court lacks jurisdiction to compel such action.

The APA provides that the court shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The United States Supreme Court has reasoned that such a remedy is allowed "only to compel an agency to perform a

ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (quotations omitted). In other words, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Id.*

Neither Executive Order 11989 nor 36 C.F.R. § 212.52 creates a mandatory duty for the Forest Service to close trails. Rather, the Forest Service enjoys a great deal of discretion in this regard and need not act unless it determines that the use of off-road vehicles will cause or is causing considerable adverse effects. *See Gardner v. U.S. Bureau of Land* Management, 633 F. Sup. 2d 1212 (D. Or. 2009) (holding agency's duty to close trails and other areas depends upon a finding of "considerable adverse effects"). *See also Sierra Club v. Clark*, 756 F.2d 686, 690 (9th Cir. 1985) (upholding agency's determination regarding "considerable" nature of adverse effects). Because the Forest Service has not determined that ORV use will cause or is causing considerable adverse effects, the Court cannot compel the agency to close the trails as Plaintiffs argue.

The Court has reviewed Plaintiffs' evidence of apparent damage to the SCNF that Plaintiffs contend is tied to mechanized vehicle use. It is significant evidence, deserving of attention. Nonetheless, the Court will not step into the shoes of the agency and interpret this evidence to command a finding that motor vehicle use is causing or will cause "considerable adverse effects on public safety or soil, vegetation, wildlife, widlife

habitat, or cultural resources." 36 C.F.R. § 212.52. Only the Forest Service can decide when to exercise this discretion.

## III. Minimum Road System Determination

The 2005 Travel Management Rule requires that the Forest Service "identify the minimum road system needed for safe and efficient travel and for administration, utilization, and protection of National Forest System lands." 36 C.F.R. § 212.5(b)(1). The minimum road system is:

> the road system determined to be needed to meet resource and other management objectives adopted in the relevant land and resource management plan . . . to meet applicable statutory and regulatory requirements, to reflect long-term funding expectations, [and] to ensure that the identified system minimizes adverse environmental impacts associated with road construction, reconstruction, decommissioning, and maintenance.

*Id.*

Plaintiffs claim that the Forest Service identified a minimum road system in its decision adopting the Travel Plan. Indeed, the ROD states, "This travel management planning process has resulted in identification of the minimum road system necessary to meet the utilization (including recreation), protection, and administrative needs of the SCNF." (AR 047090). However, the Forest Service claims that it did not make a minimum road system determination. *Defendants' Response and Cross-Motion for Summary Judgment,* p. 32 (Docket No. 44). In fact, the Forest Service has disavowed, in its briefing and the argument of this case, any *intention* to create such a minimum road

system, and there is no dispute that the Forest Service could not properly designate a minimum road system, because it did not follow the requisite public notice requirements.

However, in the byzantine world of federal environmental and administrative law, such an assurance is of little currency, particularly when measured against the express statement in the ROD to the contrary. Plaintiffs are entitled to relief to ensure that they will not be precluded from bringing a future challenge to the appropriateness of a present or proposed minimum road system.

In short, the Court must set aside that portion of the Travel Plan ROD concerning the minimum road system. On remand, the Forest Service must ensure that any reference to the minimum road system clearly indicates that such a determination was not within the scope of this particular Travel Plan decision.

## CONCLUSION

The Court is well-aware of its role in the administrative review process and its appropriate sphere in the separate branches of federal governmental power. In this regard, the Court defers to agency action that reflects a reasonable application of the law and a rational application of the facts. Thus, in the instant case, the Court upholds the Forest Service's determinations concerning the cumulative impact of past motorized use and the range of action alternatives proposed, because the Administrative Record supports the agency's determinations.

Nonetheless, where the agency has fallen short of its regulatory obligations or the record is insufficient to demonstrate a rational connection between facts and decision

making, there is no place for judicial deference.  Such is the case here with regard to the agency's consideration of the possible cumulative impacts of the micro-routes in aggregate, the agency's application of the minimization criteria, and the agency's consideration of  Plaintiffs' well-supported concerns regarding route-specific environmental impacts.

In sum, the Court finds that the Forest Service's decision adopting a Travel Plan for the SCNF is arbitrary and capricious, because the Administrative Record does not reflect that the Forest Service: (1) considered the possible cumulative impact of routes less than one half-mile long on the RWAs and IRAs; (2) chose routes with the objective of minimizing effects; or (3) considered the site-specific concerns Plaintiffs raised in the comment process.  In addition, the ROD must be amended to clarify that it does not include a minimum road system determination.

## REMEDY

Typically, when the Court finds an agency action not in accordance with the law, it is deemed invalid and the agency returns to the pre-decision status quo.  *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).  In the instance case, the pre-decision status quo for travel management on the SCNF is not a tenable option, because the pre-decision travel management system is not in compliance with the 2005 Travel Management Rule. Accordingly, the parties agreed at the hearing on the cross-motions for summary judgment that the Court should allow additional briefing with regard to an  appropriate remedy.  The Court will do just that, but only after providing the parties with an

opportunity to seek agreement upon an appropriate remedy. Accordingly, the Court will set this matter for a telephonic status conference on March 17, 2011 at 1:30 p.m. Mountain Daylight Time (MDT). At that time, the parties will advise the Court as to whether they have reached an agreement or would prefer to set a briefing schedule and hearing on the remedy issue.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED:

1.    Plaintiffs' Motion for Summary Judgment is GRANTED in part and Defendants' Motion for Summary Judgment is DENIED in part to the extent that the Court finds:

    a.    The decision adopting the Salmon Challis National Forest Travel Plan violates the National Environmental Policy Act by failing to consider the cumulative impacts of multiple short motorized routes on wilderness values and roadless characteristics in the recommended wilderness areas and inventoried roadless areas and by failing to address Plaintiffs' site-specific comments;

    b.    The decision adopting the Salmon Challis National Forest Travel Plan violates the 2005 Travel Management Rule by failing to demonstrate how the Forest Service applied the minimization criteria to the route designation decisions; and

c.    The Record of Decision is in error to the extent it reflects that

              a Minimum Road System Determination was made.

2.    Defendants' Motion for Summary Judgment is GRANTED in part and

      Plaintiff's DENIED in part to the extent that the Court finds the decision

      adopting the Salmon Challis National Forest Travel Plan otherwise lawful.

3.    The Court will hold a telephonic status conference on March 17, 2011 at

      1:30 p.m. Mountain Daylight Time (MDT).  Plaintiffs shall initiate the call

      to 334-1495.

DATED:  **February 4, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge